Roberta S. Savage (SBN 202940)
221 G Street, Suite 207
Davis, CA 95616
tel (530) 753-4497
fax (530) 753-4498

Attorney for
A.B.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B., a minor, By and Through W.F.B., His Guardian Ad Litem, | CASE NO.  07-4738 PJH |
| Plaintiff, | PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| v. | |
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT, | Date:   June 25, 2008 |
| Defendant. | Time:  9:00 a.m. |
| _____/ | Ctrm:  3 |

TABLE OF CONTENTS

I.      INTRODUCTION ........................................................ 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY .................... 2

        A.    Development of AB's IEP in Second through Fifth Grades ................. 2

              1.    SFUSD Developed the Second Grade IEP in 2003; Mom's Input Ignored;
                    AB's Behavior Declines ........................................ 2

              2.    SFUSD Conducted an Incomplete and Faulty Triennial IEP in Third Grade,
                    Continuing to Ignore AB's Mother ............................ 4

              3.    SFUSD's IEPs for Fourth and Fifth Grades Were Similarly Flawed
                    ............................................................. 4

        B.    AB's Mother Filed For a Due Process Hearing, Requesting Reimbursement for
              Services She Paid for Because of SFUSD's Repeated Failure to Provide a FAPE
              ............................................................. 5

        C.    The ALJ Found a Myriad of Procedural Violations, but Stopped Short of Finding a
              Pervasive Denial of FAPE ........................................ 5

III.    LEGAL ANALYSIS ..................................................... 6

        A.    Standard of Review ............................................. 6

              1.    Summary Judgment is the Proper Vehicle for Resolving this Matter
                    ............................................................. 6

                    a.    A Modified De Novo Standard of Review Applies to IDEA Claims
                          ..................................................... 7

              2.    The ALJ Decision is Jumbled, Incomplete, and Often Unsupported ..... 7

              3.    Procedural Violations Related to AB's Second Grade IEP do not Fall Outside
                    of the Statute of Limitations ................................... 8

              4.    The ALJ Misapplied the Harmless Error Standard ................. 9

              5.    AB's Mother was Denied Meaningful Participation ............... 10

              6.    AB Lost Educational Opportunity/Benefits ...................... 11

        B.    Under the IDEA, a District Must Provide a Free Appropriate Public Education
              ............................................................. 12

              1.    Procedural Requirements for a FAPE ......................... 13

        C.    SFUSD Denied AB a FAPE by Failing to Provide Prior Written Notice for Its
              Refusals to Initiate Assessments, Changes in Placement, and Make Changes in
              Response to His Mother's Requests ................................ 14

//

D.   SFUSD Denied AB a FAPE by Failing to Make a Clear Offer of Placement for Services During the Extended School Year (ESY) and not providing Prior Written Notice (PWN) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

E.   SFUSD Denied AB a FAPE by Failing to Assess AB's Educational Needs . . . . 17

    1.   SFUSD is Required to Assess AB in All Areas of Suspected Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    2.   SFUSD Failed to Properly Assess AB . . . . . . . . . . . . . . . . . . . . . . . . . 18

        a.   SFUSD Failed to Conduct a Functional Behavioral Assessment (FBA) as Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        b.   SFUSD Failed to Conduct Neuropsychological or Psycho-educational Assessments as Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        c.   SFUSD Failed to Conduct Speech, Language and Social Skills Assessments as Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        d.   SFUSD Failed to Conduct Occupational Therapy (OT)/Sensory-Motor Skills Assessments as Required . . . . . . . . . . . . . . . . . . . 21

        e.   SFUSD Failed to Conduct Auditory Processing Assessments as Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

F.   SFUSD Denied AB a FAPE by Failing to Develop Appropriate Goals . . . . . . . 22

    1.   SFUSD is Required to Develop Appropriate Goals Under the IDEA, and could not do So Because It did not Properly Assess AB . . . . . . . . . . . 22

    2.   SFUSD Failed to Develop Appropriate Baselines and Goals for AB in Second through Fifth Grade . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

G.   SFUSD Denied AB a FAPE by Failing to Provide Appropriate Programs . . . . . 26

    1.   SFUSD is Required to Provide Appropriate Programs Under the IDEA, and could not do So Because It did not Properly Assess AB or Develop Appropriate Goals for Him . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    2.   SFUSD Failed to Provide Appropriate Programs for AB in Second through Fifth Grade . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

H.   AB's Mother is Entitled to Reimbursement for the Expenses Incurred for Placements and Services She Procured Because of SFUSD's Failure to Provide a FAPE to AB . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    1.   AB's Mother is Entitled to Reimbursement for Summer Quest Camp and other ESY Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    2.   AB's Mother is Entitled to Reimbursement for Supplemental Services During the School Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

TABLE OF AUTHORITIES

**CASES**

*Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001) . . . . . . . 9-12, 17, 18, 28

*Bend-Lapine Sch. District v. K.H.*, 43 Indiv. Disab. Educ. L. Rptr. 191 (D.C. Ore. 2005) . . 22-26

*Burlington Northern Inc. v. Weyerhaeuser Co.*, 719 F.2d. 304, 307 (9th Cir. 1983) . . . . . . . . . 7

*Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884 (9th Cir. 1995) . . . . . . . . . . . . . . . 7

*Florence County Sch. Dist. Four v. Carter* 510 U.S. 7, 13-14 (1993) . . . . . . . . . . . . . . . . . . . 27

*Gregory K. v. Longview School Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987) . . . . . . . . . . . . . . 7

*Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982) . . . . . . . . . . . . . 7, 12-13, 26

*Kirby v. Cabell Cty Bd. Of Educ.*, 46 Indiv. Disab. Educ. L. Rptr 156 (S.D. W.Va 2006) . . . . . 22

*McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 818 (1991) . . . . . . . . . . . . . . 7

*Ojai Unified School Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 7

*Prinzi v. Keydrill Co.*, 738 F.2d 707 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*School Committee of Burlington v. Department of Educ.* (1996) 471 U.S. 359, 369-71 . . . . . . . 27

*Student W. v. Puyallup Sch. Dist.,* 31 F.3d 1489, 1496 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . 27

*Transworld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F2d 676, 684 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Union Sch. Dist. v. Smith,* 15 F.3d 1519, 1526 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 13, 15

**FEDERAL STATUTES**

20 U.S.C. § 1400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

20 U.S.C. § 1400(c)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20 U.S.C. § 1412(a)(10(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

20 U.S.C. § 1412(a)(10)(C)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

20 U.S.C. § 1414(a)(2)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

20 U.S.C. § 1414(d)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22

20 U.S.C. § 1414(d)(3)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

20 U.S.C. § 1415 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20 U.S.C. § 1415 (b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20 U.S.C. § 1415(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

20 U.S.C. § 1415 (c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20 U.S.C. § 1415(f)(3)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

20 U.S.C. § 1415(i)(2)(C)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

20 U.S.C. §1415(k)(1)(D) &(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**FEDERAL REGULATIONS**

34 C.F.R. § 300.34(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

34 C.F.R. § 300.148(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

34 C.F.R. § 300.346(a)(2)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

34 C.F.R. § 300.347(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22

34 C.F.R. § 300.403(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

34 C.F.R. § 300.502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

34 C.F.R. § 300.503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

34 C.F.R. § 300.520(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**FEDERAL RULES**

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**CALIFORNIA CODES**

Cal. Educ. Code § 48915.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal Educ. Code § 56176 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Cal. Educ. Code § 56320(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Educ. Code § 56320(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Educ. Code § 56321(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Educ. Code §56329(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Educ. Code § 56341.1(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Educ. Code § 54345 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Educ. Code § 56345(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Educ. Code § 56381(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Cal. Educ. Code § 56464(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Educ. Code, § 56500.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Educ. Code § 56505(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**CALIFORNIA REGULATIONS**

Cal. Code Regs. §5.3001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

Cal. Code Regs §5.3025 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

Cal. Code. Regs. § 5.3043. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff AB, a student in the San Francisco Unified School District ("SFUSD"), submits this memorandum in support of his motion for summary judgment.

I.     INTRODUCTION

AB is a child eligible for special education as autistic-like.  From second grade on, AB's mother requested assessments be done, suggested educational goals and alternate programs as part of the "Individualized Education Plan" ("IEP") process.  While nominally she was a part of her son's IEP process, in reality she was denied meaningful participation.  SFUSD failed repeatedly to properly assess, set goals and provide programs for AB.  Cumulatively, SFUSD's pattern of ignoring AB's mother and failing to meet its obligations to AB rises to a pervasive denial of a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Improvement Act ("IDEA") 20 U.S.C. § 1400 *et seq*.

Proper assessment and parental involvement are the cornerstones of the IEP process.  Without a proper assessment, it is impossible for a school district to provide a FAPE, because the child's particular needs are unknown.  It is impossible to know the child's starting point, or to measure his improvement.  Without meaningful parental involvement, those who know the child best are shut out of important decisions that can make or break a child's future independence.

SFUSD failed time and again to properly assess AB cognitively, behaviorally, communicatively, and more.  These assessments are common, appropriate and essential for children with autism.  Without proper behavioral, sensory-motor, speech and neurological assessments, the IEP team could not know AB's baseline levels, deficits or strengths any given year.  Without a baseline, the IEP team could not measure improvement and could not set appropriate goals for AB.  The natural consequence of the failure to assess was SFUSD's failure to provide AB with a FAPE.

AB's mother tried to focus SFUSD's attention on her child's educational needs.  She went to IEP meetings.  She constantly tried to communicate with SFUSD.  She requested assessments, suggested goals, suggested programs.  Simply put, SFUSD ignored her efforts.  Often her written suggestions were stapled to the back of an IEP report, but clearly no one gave them due

consideration. AB's mother privately obtained assessments and services to supplement his program.

The fact that SFUSD failed to properly assess AB is not in dispute. The ALJ agreed that SFUSD did not conduct certain assessments that it should have. The ALJ agreed that some assessments were done improperly. Despite finding years' worth of faulty or missing assessments,[1] however, the ALJ stopped short of finding any significant denial of FAPE. The ALJ evaluated each of SFUSD's violations individually, finding many to be harmless. In many instances, she found that AB was not denied any educational opportunity. The ALJ failed to consider whether AB's mother was denied meaningful participation in the process or the effect of the cumulative violations. Plaintiff brings this motion because looking at SFUSD's pervasive failure to assess AB, in addition to SFUSD's failure to provide AB's mother with the opportunity to meaningfully participate in the IEP process, gives rise to a pervasive denial of FAPE that is still causing harm to AB to this day.

The ALJ's failure to examine the whole picture – years of SFUSD's continual failure to assess AB, SFUSD's resulting inability to craft appropriate goals and programs, and SFUSD shutting out AB's mother from the IEP process, renders her decision flawed. Accordingly, Plaintiff requests that the Court find that SFUSD denied him a FAPE from second through fifth grade and that appropriate relief be ordered in the form of reimbursement for private services.

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.    *Development of AB's IEP in Second through Fifth Grades*

Eligible as "Autistic-like," AB has received special education and related services since preschool. 2389.[2] During all regular school years, AB resided within the jurisdictional boundaries of SFUSD and attended Alamo Elementary School, a public elementary school. 2389.

1.    **SFUSD Developed the Second Grade IEP in 2003; Mom's Input Ignored; AB's Behavior Declines** [3]

SFUSD held an IEP meeting on March 26, 2003 to prepare for AB's second grade year. 3351-65. AB's second grade IEP provided vague goals that were purportedly designed to address

---

[1] Attached to this brief as Appendix A is a summary chart of the ALJ's findings.
[2] The Administrative Record has been consecutively page numbered for ease of reference. This is a 5 digit numbering at the bottom corner of each page. AB will cite only to the specific page number, unless citation to a particular paragraph of the Decision or transcript line is necessary.
[3] A breakdown of each grade by year is included at 3132.

his need to work on independent work skills, social interaction and communication. 3354-58. His IEP also identified a limited special education program of services including, *inter alia*, a vague promise of an integrated playgroup "as school district funding and staffing permit." 3364. The speech and language services offered were identified as "Direct/consult/push-in/pull-out" for 90 minutes each week. 3359. Extended School Year ("ESY") services were not defined. 3359.

AB's mother tried to contribute to this vague and incomplete IEP her list of concerns, including his difficulties with peer interactions, focusing in class, and refusal to work. 2785-90. However, SFUSD's IEP was not modified in response to this input. *Compare* 3351-65 *with* 2785-90.

AB's behavior worsened significantly during second grade. By the end of the year his classroom teacher reported that "[t]here has not been a day since December that he has not caused at least one major disruption during class." 3568. Concerned with AB's behavioral slide, AB's mother requested a functional analysis assessment in January 2005. 2395 ¶25. AB's mother contacted his teachers and suggested possible interventions. 2794-97, 2803-16, 2820-21. Rather than assess his behaviors, SFUSD recommended that AB enroll in a special day class, not a regular education class, for third grade. 3341, 3344, 3568.

AB's mother supplemented SFUSD's services with after school privately funded programs, specifically music therapy and speech and language therapy.[4] She privately obtained a neuropsychological assessment by Vincent Nunno, Ph.D., in part to address SFUSD's stated intention to enroll AB in a special day class for third grade. 3126, 3129, 3425-35. Dr. Nunno recommended that AB remain in a general education class with a trained aide, participate in an occupational therapy program, and receive daily speech and language therapy. 3434-35. AB's mother provided this report to SFUSD in June 2004, as it was unavailable at the May 2004 IEP. 3126, 3129. Dr. Nunno's report was thereafter not reviewed by an IEP team, nor was it translated at that time into educational recommendations.[5] 2398-99; 1937:23-1938:9; 1147:24- 1148:3.

---

[4] A complete breakdown of all costs, which includes dates of services for music therapy, speech and language therapy, social skills program, Interactive Metronome therapy is found at 2975-83.
[5] The ALJ found that such a translation happened, but there is no support in the record for this finding. Although Dr. Mills' job at SFUSD included translating outside assessments into educational terms for IEP teams, Dr. Mills actually testified that the first time she recalled reviewing Dr. Nunno's assessment was in preparation for the hearing and that she had never

For the 2004 ESY, AB's mother provided proper notice and privately placed him in Quest Therapeutic Camps ("Quest") and other supplemental services, for which she requested reimbursement from SFUSD. 2824. SFUSD never responded to her request for reimbursement.

## 2. SFUSD Conducted an Incomplete and Faulty Triennial IEP in Third Grade, Continuing to Ignore AB's Mother

By all accounts, AB's behavior improved by the time he returned to Alamo in the Fall 2004. Nonetheless, he still required a full time aide, and needed time out of the classroom. 1161:6-17; 2422 ¶ 145. Ms. Blood-Walker reported that during third grade AB engaged in "tantrums, cries, lays on ground" due to his inability to cope, as well as, sleeping in class, becoming defiant and ignoring directions, and a "low tolerance for frustration." 3387. It is difficult to compare AB's daily inappropriate behaviors between second and third grade because the written plans are inconsistent in defining the behaviors and no functional analysis assessment was completed. 3307, 3323.

AB's mother provided SFUSD with various information about the services AB received which she believed benefitted AB. 2827-31, 3206-24. AB's mother continued supplementing his program with a social skills program, music therapy, Quest and speech and language therapy. 2975-83. She requested further assessments at the end of the year. 3199-200, 3279. There is no evidence in the record that any of her input was ever considered seriously.

The only offer of placement for summer 2005 ESY program was a nonspecific special day class at Lafayette Elementary School. 3271. At the hearing, the SFUSD staff could not identify any more specific details of the program. 1169:7- 1170:23. AB's mother gave notice that she was again placing AB in Quest with additional services for the 2005 summer. 3203.

## 3. SFUSD's IEPs for Fourth and Fifth Grades Were Similarly Flawed

In preparation for AB's fourth grade year, SFUSD conducted AB's triennial assessment including several IEP meetings in the Spring of 2005. 3270-318. As with the prior years, AB's mother presented her input to the team. 3311-18. She again identified as concerns AB's problems with peer interactions and following directions. 3312. While SFUSD conducted speech and language and occupational therapy evaluations, the ALJ found them flawed. 2443 ¶¶31, 32; 3415-20, 3436-39.

attended an IEP for AB. 1874:25- 1876:16; 1937:23-1938:9.

In addition to having incomplete or missing assessments, AB's fourth grade IEP included vague, unmeasurable baselines and goals. 3285-90. The IEP did not include occupational therapy, or daily speech and language therapy as recommended by Dr. Nunno. 3270-318, 3435.

AB's mother requested a neuropsychological evaluation in May 2005. 2990-93. In June 2005, SFUSD agreed to conduct a behavior and psycho-educational assessment. 3199-200. AB's mother privately contracted with Tina Guterman, Ph.D. to assess AB in 2005, but did not present the assessment to SFUSD until the due process hearing. 2869-91, 3088-92.[6]

SFUSD conducted the behavior assessment in Fall 2005. This assessment was determined to be untimely and inappropriate. 2444 ¶34. The psycho-educational assessment was never conducted. 2442-43 ¶28.

The same problems that existed in the prior years' IEPs existed for the fifth grade IEP. The assessments forming the baseline for the IEP were either non-existent or improper. The goals and baselines were vague and ambiguous as written. The services offered were incomplete and improper. The District again offered a special day class to AB for the 2006 summer and his mother again gave notice of private services. 2900-01, 3258.

Because AB's IEP process was flawed throughout, and AB's mother's input was largely ignored throughout, she had little choice but to file for a due process hearing on October 6, 2006.

B.    *AB's Mother Filed For a Due Process Hearing, Requesting Reimbursement for Services She Paid for Because of SFUSD's Repeated Failure to Provide a FAPE*

AB's mother filed for a due process hearing, requesting reimbursement for all of the services she provided to AB in the second through fifth grade, approximately $137,000. 2647, 2710-14. The second amended complaint was filed on November 6, 2006, and included challenges to SFUSD's assessments, goals, services, program, ESY offer, and failure to provide prior written notice during the same period. 2633-47.

C.    *The ALJ Found a Myriad of Procedural Violations, but Stopped Short of Finding a Pervasive Denial of FAPE*

The ALJ found for Plaintiff on many issues and found for SFUSD on others. Appendix A

---

[6]In June 2005, SFUSD was aware of Dr. Guterman's involvement because she attempted an observation of AB at Alamo. 2870, 3199-200.

1    summarizes her decision – what Plaintiff requested, when she found a denial of FAPE, and when she

2    awarded damages or found harmless errors.  The ALJ found in the second and third grades that

3    SFUSD failed to adequately assess AB's behavioral needs. 2442 ¶ 25-26; 2444 ¶ 35; 2445 ¶¶ 41-42.

4    She awarded reimbursement for his summer program at Quest and Dr. Nunno's assessment.  The

5    ALJ found the speech and language and occupational therapy assessments that were conducted in

6    Spring 2005 were inappropriate. 2443 ¶¶ 29, 31-32.  She awarded assessments in both areas, which

7    neither party requested.  *Id*.  She found that some of the communication goals were flawed, but

8    awarded nothing for the error.  2444 ¶37.  She found that the change in speech and language therapy

9    was inappropriate as part of AB's fourth grade IEP and awarded 17.5 hours of reimbursement for

10   Ms. Fung's services.  2445 ¶40.  She found that in fifth grade the behavioral assessment was

11   inappropriate and untimely and that no psycho-educational assessment was conducted.  2442-42 ¶

12   28; 2444 ¶ 34.  These errors were determined to be harmless and went without a remedy.  She found

13   violations with the ESY offer and Prior Written Notice ("PWN")  yet awarded no remedy as they

14   were deemed harmless.  2446-47 ¶¶ 48-50.

15           In this motion, AB challenges the findings of harmless error, findings of no error at all, and

16   the invocation of the statute of limitations. These aspects of the ALJ's decision were not supported

17   by the law or facts. While AB alleged below a denial of FAPE based on AB's academic program,

18   AB is not challenging that aspect to the ALJ's decision. AB is requesting that Court find a denial of

19   FAPE in each year – from second through fifth, and reimbursement for all privately paid services.

20   III.   LEGAL ANALYSIS

21           A.   *Standard of Review*

22                1.    **Summary Judgment is the Proper Vehicle for Resolving this Matter**

23           If a matter is to be tried to the bench, a summary judgment is appropriate if the underlying

24   evidence is undisputed and the record persuades the court that a trial would add nothing to its ability

25   to decide the issue. *Transworld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F2d 676, 684

26   (9th Cir. 1990). In the present action, the parties had an opportunity to try the matter to an

27   independent fact finder.  The parties had an opportunity to present any witnesses and evidence that

28

1   they desired.  As the record on appeal shows, numerous witnesses testified at the underlying hearing

2   and multiple volumes of evidence were presented.  No additional evidence is necessary.  An actual

3   trial will not add anything to the Court's ability to decide the issues at hand.  This matter is properly

4   addressed through this motion for summary judgment.

5           A summary judgment may be granted if the Court finds that there is no genuine issue as to

6   any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

7   Summary judgment may even be granted where there are mixed questions of law and fact. Where

8   the underlying facts are undisputed and the question before the Court is whether the facts meet the

9   statutory standards, summary judgment is appropriate. *McDermott Int'l, Inc. v. Wilander,* 498 U.S.

10  337, 111 S.Ct. 807, 818 (1991). Summary judgments are also appropriate where the court instead

11  of a jury normally decides the matter. *Prinzi v. Keydrill Co.*, 738 F.2d 707 (5th Cir. 1984).

12          a.      A Modified De Novo Standard of Review Applies to IDEA Claims

13          Under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq,*

14  the determination of whether a school district offered a FAPE is a mixed question of law and fact,

15  subject to *de novo* review. *Gregory K. v. Longview School Dist.*, 811 F.2d 1307, 1310 (9th Cir.

16  1987). The Court reviews the state hearing officer's findings of fact for clear error. *Id.*  "A finding

17  of fact is deemed clearly erroneous when, although there is evidence to support it, the reviewing

18  court is left with a definite and firm conviction that a mistake has been made." *Id.*, *quoting*

19  *Burlington Northern Inc. v. Weyerhaeuser Co.*, 719 F.2d. 304, 307 (9th Cir. 1983).

20          Under the IDEA, a trial court must receive and fully review the administrative record, hear

21  additional evidence at the request of a party, and grant such relief as the court deems appropriate,

22  based on a preponderance of the evidence. *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S.

23  176 (1982); *Ojai Unified School Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993) *Capistrano Unified*

24  *Sch. Dist. v. Wartenberg*, 59 F.3d 884 (9th Cir. 1995).

25          2.      **The ALJ Decision is Jumbled, Incomplete, and Often Unsupported**

26          In this instance, the ALJ failed to demonstrate impartiality by delivering an opinion that,

27  while impressively long, did not consider all of the relevant facts and law.  Sprinkled throughout the

28

Decision's "Findings of Fact" are contentions,[7] statements of law,[8] and mixed findings of fact and law, all labeled as "facts." [9] The Decision includes findings without legal or factual support.[10] This jumbled reasoning results in incomplete and unsupported legal conclusions, making it difficult to follow the reasoning behind many of the ALJ's true findings.

The ALJ's mislabeled "findings of fact" and related conclusions of law warrant no deference from this Court. Rather, given the Administrative Record as a whole, the Court should find that a mistake has been committed and reverse the decision to the extent requested in this Motion. In particular, the ALJ's misapplication of the statute of limitations and her misuse of the harmless error standard warrant reversal because they presume facts and law that do not exist.

### 3. Procedural Violations Related to AB's Second Grade IEP do not Fall Outside of the Statute of Limitations

The ALJ refused to consider alleged procedural violations concerning the 2003-04 school year (second grade), asserting that they fall outside of the applicable statute of limitations. 2444 ¶ 35; 2446 ¶¶46, 47. This holding is in error. The ALJ did not cite, and Plaintiff is not aware of, any statute, regulation or case that supports this proposition. 2436-38 ¶¶ 2-11.

AB's request for a due process hearing had to be filed within three years from when he knew or had reason to know the facts underlying his claims. Cal. Educ. Code §56505(l) was recently amended to reduce that to two years.

The ALJ's decision presumes a bright line rule that the date the IEP is signed is automatically the date of discovery for a procedural violation. This is an improper characterization of the statute of limitations. If that were the case, many legitimate claims would be precluded. In AB's case, the ALJ refused to consider whether SFUSD's offer of integrated playgroups and speech and language therapy in the March 2003 IEP violated the clear written offer requirement or whether the annual

---

[7] *See, e.g.*,2389-436 ¶¶ 4-6, 12, 14-18, 22, 23, 25-26, 28-38, 40, 42-43, 45, 48-50.

[8] *See, e.g.*, 2389-436 ¶¶ 4-7, 64, 85, 87, 94, 163, 164, 167, 178, 188, &201.

[9] *See, e.g.*, 2389-436 ¶¶ 34-35, 37-38, 42, & 47.

[10] *See, e.g.* 2399 ¶ 39 (finding SFUSD's Supervisor translated Dr. Nunno's report when she stated she had only recently reviewed the report) 2446 ¶ 46 (statute of limitations bars certain claims) 2447 ¶ 50 (finding that prior written notice was included in IEPs), 2426 ¶ 168 (finding that Starr King was the 2004 ESY placement).

goals were measurable as written. 2412 ¶98; 2426 ¶¶ 165-66.  The problem with the ALJ's interpretation of the statute of limitations is that the effect of these violations would not be discovered until reviewing AB's program to determine whether the offered services were provided or whether he met the goals.  For example, it is impossible to determine at the time of the IEP whether an offer of an integrated play group when funding or staff are available was provided, because it does not specify what will be provided.  The same is true of an offer of speech and language services that includes various possible presentations without an indication of what level of service would actually be provided. 3359.  In these situations it would be impossible to enforce the implementation of the offered services.[11]

An IDEA claim should be timely if it concerns an IEP that is operative within (in this case) three years of the date of filing.  In this instance, AB filed his claims on October 6, 2006.  The procedural violations related to his second grade year fell within the three year statute of limitations, at least for the period of October 6, 2003 to the end of the year.  Therefore, to the extent that there are any procedural flaws with the operative IEP in that time period, his claim is timely.

### 4.    The ALJ Misapplied the Harmless Error Standard

The ALJ correctly acknowledged that not every procedural violation rises to denial of a FAPE.  Purely technical violations will not render an IEP invalid.  20 U.S.C. § 1415(f)(3)(E); *Amanda J. v. Clark County Sch. Dist*., 267 F.3d 877, 892 (9th Cir. 2001).  However, the pervasive procedural violations that occurred in AB's case are a denial of FAPE.  Procedural violations rise to a denial of FAPE under several different scenarios:  (a) loss of educational opportunity, (b) seriously infringing on the parents' opportunity to participate in the IEP formulation process, or (c) causing a deprivation of educational benefits.  *Id.*

The ALJ found that the bulk of the errors committed by SFUSD were harmless. 2387-448, Findings of Fact ¶¶ 35, 42, 93, 177, 182, 185; Legal Conclusions ¶¶ 26, 28, 34, 48, 49 & 50.  The Decision leaves the question unanswered: *how many errors may a district commit before the cumulative effect is a denial of FAPE?*  AB lost educational opportunity, his mother's participation

---

[11]The propriety of the annual goals and services is discussed in full, *infra Section F & G.*

in the IEP process was infringed upon *and* AB was deprived of untold educational benefits, forcing his mother to seek out extra-curricular opportunities as best she could. The finding that AB did not lose educational opportunity begs the question: *how could the ALJ know if AB lost educational opportunities if appropriate assessments were never completed*?

### 5.    **AB's Mother was Denied Meaningful Participation**

In *Amanda J.*, the school district was taken to task for failing to provide parents the results of assessments, because it precluded the opportunity for early intervention with Amanda's autism:

> This is a situation where District had information in its records, which, it disclosed, would have changed the educational approach used for Amanda, increasing the amount of individualized speech therapy and possibly beginning the D.T.T. program much sooner. This is a particularly troubling violation, where, as here, the parents had no other source of information available to them. *No one will ever know the extent to which this failure to act upon early detection of the possibility of autism has seriously impaired Amanda's ability to fully develop the skills to receive education and to fully participate as a member of the community.*
>
> A FAPE, as required by the IDEA, must be tailored to the unique needs of each individual child. Each child has different needs, different skills, and a different time frame for effective treatment. Autism is a developmental disorder; those affected by autism exhibit significant deficiencies in communication skills, social interaction, and motor control. Early intervention can lead to positive outcomes, particularly when children are placed in highly structured, specialized, and individualized programs. These programs often must address a wide range of skills, ranging from academic to social to functional living skills, depending on the severity of the particular child's condition.
>
> We hold that, by failing to disclose Amanda's full records to her parents once they were requested, in violation of 20 U.S.C. § 1415(b)(1)(A), the District denied Amanda a FAPE. *Amanda J.* at 893-94 (*emphasis added*).

SFUSD is required to ensure that a parent is a meaningful participant in the IEP process. 20 U.S.C. § 1400(c)(5)(B). "Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA. An IEP which addresses the unique needs of the child cannot be developed if those people who are most familiar with the child's needs are not involved or fully informed." *Amanda J.* at 892. Preventing "full and effective parental participation" "driv[es] a stake into the very heart of the [IDEA]" *Id.* at 893 (citations omitted).

Here, AB's mother was denied meaningful participation in several ways.[12] SFUSD failed

---

[12]  "Meaningful participation" arises in two contexts in the IDEA analysis. First, it can be a stand alone violation of the IDEA. *Amanda J.* at 893-94. Meaningful participation is also a prong for finding that the violation was not harmless. *Id.* at 892. The ALJ, without any legal authority or factual support, found that Plaintiff waived the "meaningful participation" argument for his

1    to respond to her numerous requests for services, requests for information about programs,

2    assessments, goals and objectives. [13]   She made these requests orally and in writing.   The record

3    demonstrates that SFUSD largely ignored AB's mother's written requests.  2781-90; 2830-1; 2836-

4    60; 2892-3; 3095-129; 3206-26; 3231.  SFUSD claims that she was not ignored, and the ALJ agreed,

5    without any citation to the record.  2428, fn 24.  This finding is in error.

6        Consistent with *Amanda J.*, assessments are a critical tool for parents' involvement with the

7    IEP process.  While it is true that, unlike with AB, Amanda J. had not yet been diagnosed with

8    autism, the scenarios share a similar parental lack of shared information.  *Unlike* with *Amanda J.*,

9    here the lack of information was more fundamental:  SFUSD either shared faulty information or

10   failed to conduct agreed upon assessment.  If it is a denial of FAPE not to share assessment results,

11   then it is a denial of FAPE to share faulty information *and* not conduct agreed upon assessments.

12       Here, AB's mother requested several assessments that SFUSD never properly conducted.

13   Contrary to the ALJ's findings, this is not harmless error, it is a *de facto* denial of FAPE.  SFUSD's

14   flawed information  negatively impacts AB's mother's ability to participate and limited AB's

15   educational opportunities by not properly assessing his needs.

16            6.    **AB Lost Educational Opportunity/Benefits**

17       Just as with *Amanda J.*, AB lost the opportunity for early intervention, and no one will know

18   the extent to which he has been impaired from SFUSD's failures.  Failure to assess is a bell that

19   cannot be unrung.   The ALJ construed AB's failure to identify loss of educational

20   opportunity/benefits as a failure to meet AB's burden to prove a denial of FAPE.  That no one will

21   ─────────────────────

     allegation of a separate IDEA violation by not raising it in his Complaint *See* 2428, fn. 24.  A
22   complaint should include a description of the problems, facts relating to those problems and a
     proposed remedy.  20 U.S.C. § 1415 (b).  The Complaint does allege facts supporting a
23   contention that AB's mother was denied full participation in the IEP process.  2710-14.  Even if
     the ALJ correctly refused to consider AB's stand-alone "meaningful participation" IDEA claim,
24   to the extent that the Decision relies on harmless error to deny AB relief.  The ALJ, in effect,
     opened the door to consideration of whether his mother meaningfully participated in the IEP
25   process.  AB is entitled to an opportunity to refute the ALJ's erred finding of harmless error with
     evidence that AB's mother was, in fact, denied a meaningful opportunity to participate in the IEP
26   process because of the allegedly harmless errors the ALJ found.
     [13] AB's mother was not passive when it came to her attempts to be involved in the IEP process,
27   but that does not mean her participation was meaningful. Time and again AB's mother brought
     important information to SFUSD, only to have it summarily ignored, or attached to an IEP
28   without any due consideration.  2781-90, 2853-60, 3099-103.

1    ever know what opportunities were lost, however, is not a failure of AB's parent to meet her burden

2    to *show* a denial of FAPE, it *IS* a denial of FAPE under *Amanda J.*

3        A particularly poignant example of the harm caused by SFUSD's failure to assess is its

4    failure to conduct a proper behavior assessment, described in full in section B *infra*.  Behavior

5    assessments are used to develop behavior plans to target inappropriate behaviors by replacing them

6    with appropriate behaviors.  Cal. Code Regs. §§5.3001 & 3052.  As a result of behavioral

7    assessments, it can be recommended that a student be provided several types of services, including

8    in-class behavioral support, staff training, and home behavioral programs.  2890-91.

9        AB had a history of significant behavior problems at Alamo, yet, he never had an appropriate

10   behavioral assessment.  In second grade, AB's mother begged for a behavioral assessment because

11   of AB's daily disruptive behavior.  SFUSD did not complete one.  Finally, in third grade SFUSD

12   agreed to assess, but only after mother again requested it.  3199

13       When it came time to do the assessment, the administrator could not complete it due to AB's

14   disruptive behavior. 3389.  Years later, there is no way to know what a formal behavioral assessment

15   would have found, and what services should have or would have been provided, or AB's resulting

16   progress from those services.  An appropriate assessment would have been the baseline for a plan

17   in second or third grade, as well as a guide for the future.

18       The ALJ found that SFUSD's inappropriate assessment of AB's behavior, while a procedural

19   error under the IDEA, was a harmless error. 2409-11.  Under *Amanda J.*, however, SFUSD's failure

20   to conduct appropriate behavioral assessments is a denial of FAPE because the window of

21   opportunity to intervene with appropriate programs for an autistic child like AB is so narrow.  This

22   loss of educational opportunity and its benefits to AB is immeasurable.  A failure to assess is a denial

23   of FAPE, especially for an autistic child.

24       B.    *Under the IDEA, a District Must Provide a Free Appropriate Public Education*

25       The United States Supreme Court outlined the level of instruction and services that a school

26   district must provide a student with a disability under the IDEA. *Hendrick Hudson Central School*

27   *District v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034 (1982). A student's IEP must be reasonably

28

calculated to provide the student with some educational benefit. *Id*. at 200.  In other words, each child is entitled to a Free Appropriate Public Education, or "FAPE." The Court determines whether the student was offered or received FAPE by reviewing the record for procedural violations and the substantive appropriateness of the offered program, placement and services. If either procedural  or substantive violations occurred, then the offer of placement does not qualify as a FAPE.

This motion focuses primarily on SFUSD's procedural violations under the IDEA rising to a denial of FAPE.

### 1.    Procedural Requirements for a FAPE

An IEP must contain (1) a statement of the child's present levels of educational performance, (2) a statement of measurable annual goals, (3) a statement of the extent to which a child will not participate in a regular classroom with nondisabled children, (4) a statement of the special education and related services to be provided, and (5) a statement of how the child's progress toward the annual goals will be measured.  20 U.S.C. § 1414(d)(1)(A)(i); 34 C.F.R. § 300.347(a); Cal. Educ. Code § 54345.  A district must make a formal written offer in the IEP that clearly identifies the proposed program. *Union Sch. Dist. v. Smith,* 15 F.3d 1519, 1526 (9th Cir. 1994).  Related services or designated instruction and services (DIS) means transportation and such developmental, corrective and other supportive services as are required to assist a child with a disability to benefit from special education.  Cal. Educ. Code § 56464(a); 34 C.F.R. § 300.34(a).

Plaintiff alleges that SFUSD denied AB a FAPE by not meeting most, if not all of the above procedural requirements for an IEP.  Specifically, in grades two through five, SFUSD failed to include in AB's IEP (1) appropriate assessment data, thereby failing to provide a statement of  AB's present levels of educational performance, *infra at E*, (2) failed to provide measurable annual goals or a statement of how the child's progress toward the annual goals will be measured, *infra at F*, (3) failed to provide a clear statement of the special education and related services to be provided, *infra at D*, (4) failed to provide appropriate services, *infra at G*, or (5) prior written notice of the refusal to provide services or reimburse, *infra at C.  See* Appendix A, attached hereto.

//

C.    *SFUSD Denied AB a FAPE by Failing to Provide Prior Written Notice for Its Refusals to Initiate Assessments, Changes in Placement, and Make Changes in Response to His Mother's Requests*

SFUSD is required to provide written notice ("PWN") to the parents of the child whenever the local educational agency proposes to initiate or change, or refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a FAPE to the child. 20 U.S.C. § 1415(b)(3); Cal. Educ. Code, § 56500.4. PWN must include a description of the action proposed or refused by the district, an explanation, a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the notice and advisement of procedural rights, a description of other options considered by the IEP team and the reason why hey were rejected, and a description of the relevant factors.

For the summers of 2004, 2005 & 2006 AB's mother provided written notice of her intention to send AB to Quest and provide other services rather than the vague special day class AB was assigned. In acknowledging that SFUSD had not provided PWN, The ALJ decided none was required because services were either denied the year before or the information was contained within the IEP, and therefore no additional response was required. 2429-30 ¶¶ 180-85.

The ALJ reimbursed AB's mother for Quest in 2004 under another finding, but otherwise refused to reimburse AB's mother for her summer expenses. 2446 ¶ 48. This finding is in error because the prior written notice requirement is statutorily mandated; SFUSD did not meet its notice requirement. If SFUSD's obligation were discretionary, as the ALJ's finding makes it, it would eviscerate the notice requirement. Even if the ESY placement were discussed at the IEP, evidence of written notice of all components is required. 34 C.F.R. §300.503.

The issue addressed by the PWN requirement for the ESY is not the one posed by the ALJ, namely whether the special day class offered by SFUSD to AB was appropriate. 2447. The issue is whether SFUSD provided sufficient notice to AB's mother to *determine* whether the special day class was appropriate, and whether, based upon that information, she needed to incur the cost of the private summer placement to replace an inappropriate placement. SFUSD was required to tell AB's mother that it would not pay for the summer services she contracted for, and to give her the reason

1   why. AB's mother took on the expense of a summer private placement because, without complete

2   information from SFUSD, she could not make a completely informed decision, which under the

3   IDEA she is entitled to. As the mother of an autistic child, she was motivated to make the best

4   decision she could. Missing critical information from SFUSD, the only logical choice to make was

5   a private summer placement, as she could not risk AB losing ground over the summer. The IDEA

6   is designed to prevent parents from having to make these decisions. AB's mother should not

7   shoulder the cost of having made such decisions when she did so because of SFUSD's failures.

8          D.     *SFUSD Denied AB a FAPE by Failing to Make a Clear Offer of Placement for Services During the Extended School Year (ESY) and not providing Prior Written*

9                   *Notice (PWN)*

10  Extended school years (ESY) services must be provided if the IEP team determines, on an

11  individual basis, that the services are necessary for a child to receive FAPE. Cal. Educ. Code §

12  56345(b)(3). ESY services are provided to students who have disabilities that are likely to continue

13  indefinitely or for a prolonged period, and interruption of the student's education programming may

14  cause regression, when coupled with limited recoupment capacity, rendering it impossible or

15  unlikely that the student will attain the level of self-sufficiency and independence that would

16  otherwise be expected in view of the disability. Cal. Code. Regs. § 5.3043.

17  SFUSD is required to make a clear written offer of placement and services *Union*, 15 F.3d

18  at 1526. The purpose of making such an offer is to put the family on notice of what to consider. *Id*.

19  It also assists the parties in understanding the offer if litigation ensues. *Id.*

20  During all years, SFUSD agreed that AB required ESY services. 2843, 3119, 3258. Although

21  the ALJ found that SFUSD's offers were sufficiently clear, the record does not support this finding.

22  For the 2004 ESY placement, the ALJ incorrectly stated that the ESY offer was for a special day

23  class at Starr King. 2426, ¶ 168. The IEP reference to Starr King cannot be in connection with the

24  ESY as the IEP specifically states "[AB] would be mainstreamed for academics." 3124. This was in

25  reference to AB's third grade year as SFUSD was recommending that he enroll in a special day class

26  with mainstreaming for academics. This conclusion is consistent with Priya Sodhi's testimony

27  concerning the IEP team discussion of the Starr King placement. 1265:6- 1268:18. This ambiguity

28

demonstrates that SFUSD failed to make a clear written offer of placement for the 2004 ESY.

During the 2005 ESY SFUSD included the location of the school site, specifically Lafayette Elementary School. 2427 ¶171.  When questioned, AB's then-current inclusion teacher, Ashley Emling, was unable to provide a single detail about the offer for example, who the teacher would have been or how many students would have been in the class. 1169:7- 1170:23. If his teacher was not able to provide basic details about the class, how is it possible that the offer has sufficient specificity for AB's mother to understand it?

For the 2006 ESY, the IEP fails to include a clear statement of the placement.  3258.  The only statement of the location of the ESY placement was in a letter sent to AB's mother, after she gave her notice to unilaterally provide him with services.  2900-01, 3195.  The ALJ found this a violation, but deemed it harmless.  2427-28, ¶ 174-77; 2446, ¶ 48; 2447, ¶ 50.

For the 2004, 2005 & 2006 ESY SFUSD's failed to provide a clear written offer of the particular placement and failed to provide PWN regarding the placement and AB's mother request for services.  The ALJ found this combination of errors harmless. 2446-47, ¶ 49-51.  The ALJ stated that PWN was not required in 2005 and 2006 as SFUSD had refused to change the ESY in 2004. *Id.* This is flawed reasoning because (1) the same services were not always requested each summer and (2) a student's individual needs must be considered anew each year. The  ALJ excused PWN by stating that the information was contained in the relevant IEP and excused the clear written offer by claiming AB's mother understood. A review of the Spring 2004 IEPs [3095-3129] shows that there is no reference to the action refused or proposed by SFUSD, an explanation for the action, alternatives considered, or factors considered in taking the action and that the offer is not sufficiently clear.[14] 20 U.S.C. § 1415 ( c)(1).

The ALJ's forgiveness of SFUSD's significant procedural violations committed permits SFUSD to benefit from its own failures by not ordering reimbursement for AB's private summer services.  The ALJ's finding of no error or harmless error should be reversed.

---

[14]The same lack of detail is apparent from the 2005 IEP [3270-318] and the 2006 IEP [3246-69].

1    E.    *SFUSD Denied AB a FAPE by Failing to Assess AB's Educational Needs*

2        1.    **SFUSD is Required to Assess AB in All Areas of Suspected Disability**

3        SFUSD must assess a student in all areas of suspected disability.  Cal. Educ. Code §

4    56320(f).  No single procedure may be used as the sole criterion for determining whether the student

5    has a disability or an appropriate educational program.  20 U.S.C. § 1414(a)(2)(3); Cal. Educ. Code

6    §56320(e) & (f).  A reassessment of a student shall occur if the district determines that the

7    educational or related services needs warrant a reassessment, or if the parents or teacher request a

8    reassessment.  Cal. Educ. Code § 56381(a)(1).  A reassessment of a student shall occur not more

9    frequently than once per year, unless the parents and the district agree otherwise, and shall occur at

10   least once every three years, unless the parents and the district agree in writing that it is not

11   necessary.  Cal. Ed Code § 56381(a)(2).  The personnel administering an assessment must be

12   knowledgeable about the assessment tools and the student's disability.

13       The assessment plan must be given to the parent within 15 days of the request or referral for

14   assessment.  Cal. Ed Code § 56321(a).  The school district has 60 days from receipt of the signed

15   assessment plan within which to complete the assessment and convene an IEP meeting to discuss

16   the assessment results.  If a parent disagrees with an assessment, the parent has the right to obtain,

17   at public expense, an independent educational evaluation under certain circumstances.  Cal. Educ.

18   Code §56329(b); 34 C.F.R. § 300.502.  A parent's involvement with requesting an assessment and

19   developing an appropriate IEP is essential to meeting the goals of the IDEA.

20       In *Amanda J*, the Ninth Circuit found that a school district denied an autistic child FAPE

21   when the parent requested assessments, assessments were performed, and the results were not

22   provided to the parent in violation of the procedural requirements of the IDEA requiring meaningful

23   parental participation.  *Amanda J.* at 894.  Here, the procedural violation was even more egregious

24   – here proper *assessments were not even performed*.  AB's mother was left to seek assessments on

25   her own.  As much as AB's mother pushed to have SFUSD conduct these assessments, her requests

26   were largely ignored.  As with *Amanda J.*, AB's parent was unable to meaningfully participate in the

27   IEP process, *de facto* denying AB a FAPE.  *Id.* ("These procedural violations, which prevented

28

1   Amanda's parents from learning critical medical information about their child, rendered the

2   accomplishment of the IDEA's goals – and the achievement of a FAPE – impossible.")

3                  2.    **SFUSD Failed to Properly Assess AB** [15]

4   As an autistic child, appropriate assessments for AB include: academic performance, social

5   and emotional status, motor abilities, language and communication skills. *Id.*; *see also* 2888-90.

6                  a.    SFUSD Failed to Conduct a Functional Behavioral Assessment
                         (FBA) as Required

7   An IEP team must assess a student's behavior when either the student's behavior interferes

8   with his or other's learning, or when a district intends to use certain types of discipline with an

9   eligible student. 20 U.S.C. §§ 1414(d)(3)(B)(i), 1415(k)(1)(D) &(F); 34 C.F.R. §§ 300.346(a)(2)(i),

10  300.520(b); Cal. Educ. Code §§ 56341.1(b)(1), 48915.5. A functional behavioral assessment

11  ("FBA") should occur when the IEP team determines that other instructional or behavioral

12  approaches in the IEP have been ineffective.[16] The FBA should involve District personnel with

13  documented training in behavior analysis. Cal. Code Regs. §§ 5.3001(e)l 3052(a)(1).

14  AB had a baseline behavior services plan ("BSP") in place from kindergarten to address

15  temper tantrums. 2391 ¶ 8. In second grade, the IEP team created a new BSP to address AB's

16  escalating negative behaviors. 2793-97. AB's mother requested, *inter alia*, an FBA several times

17  between January and April 2004. 2392-93 ¶ 15; 2395 ¶ 25. SFUSD offered another BSP for AB,

18  rather than conducting an FBA. 3325. The ALJ found that SFUSD failed to meet its obligation to

19  do a behavioral assessment in the second grade. 2395-96 ¶ 26.

20  In the third grade, AB continued to be disruptive in class, but not to the same extent he was

21  in second grade. 2396-97 ¶ 32. The March 2005 IEP states that AB no longer manifested

22  ───────────────

23  [15] AB also presented claims regarding SFUSD's failure to assess his academic weaknesses.
    While these claims have merit, for the sake of brevity, AB is reserving this argument for his
    Reply.

24  [16] A behavior intervention plan (BIP) should be developed if a student "exhibits a serious
    behavior problem that significantly interferes with the implementation of the goals and objectives
25  of the student's IEP." Cal. Code. Regs., 5.3001(f). The BIP becomes part of the IEP. A BIP
    must contain a summary of the results of a functional analysis assessment or functional
26  behavioral assessment (FBA), objective and measurable descriptions of the targeted maladaptive
    behaviors and the replacement positive behaviors, a schedule for recording the frequency of the
27  use of the interventions, phasing or fade out criteria, and specific dates for periodic review,
    among other information. Cal. Code Regs. §§5.3001(f) & 3052.

28

1  maladaptive behaviors to justify an FBA [2397 ¶34] – but it is unclear how this conclusion could be

2  reached since both BSPs identified daily inappropriate behaviors.  3307, 3323.  SFUSD agreed at

3  the end of third grade to conduct an FBA.  3199-200.

4      SFUSD finally attempted to conduct an FBA in October 2005.  The ALJ found that this

5  assessment was "untimely, incomplete and inappropriate."  2411 ¶93.  The ALJ found, *inter alia*,

6  that SFUSD did not complete its observations of AB because he was so disruptive in the classroom

7  as to require removal.  2410-11 ¶ 91; 3389.  Regardless of the fact that SFUSD could not complete

8  an FBA *because of* AB's behavior problems, ironically SFUSD maintains that AB's behavior

9  problems were not bad enough to warrant an assessment.

10      The ALJ found the entire lack of a behavior assessment as harmless error, except for a

11  portion of second grade, because no loss of educational benefit could be shown.  As discussed *supra*,

12  this finding of harmless error is improper under *Amanda J*.  It is impossible to know what

13  educational opportunity was lost.  SFUSD did not create accurate baseline measurements and as a

14  result could not write proper goals.

          b.     SFUSD Failed to Conduct Neuropsychological or Psycho-educational
                   Assessments as Required

17      SFUSD never conducted its own neuropsychological or psycho-educational assessments of

18  AB and ignored the assessment AB's mother procured on her own.  She hired Dr. Nunno to conduct

19  a neuropsychological assessment of AB in part to address her fear that SFUSD intended to place AB

20  in a special day class.  2394 ¶ 21.  At the May 18, 2004 IEP team meeting, AB's mother verbally

21  reported on Dr. Nunno's assessment, including his recommendation for an inclusion program in a

22  general education classroom because of AB's cognitive abilities, and a full time aide for AB's

23  autistic and maladaptive behaviors.  *Id.*  SFUSD did not implement the bulk of Dr. Nunno's

24  recommendations.  3434-35.

25      The Decision states that Dr. Pamela Mills, SFUSD's Director and Program Administrator

26  "translated Dr. Nunno's clinical medical evaluation into educational information."  2398-99 ¶39.

27  This finding is not supported by the record.  Dr. Mills testified that she did not recall seeing Dr.

1  Nunno's evaluation prior to preparing for the hearing. 1937:23 -1938:6.   SFUSD did not consider

2  Dr. Nunno's evaluation as the basis for any contemporaneous decision-making.

3      On May 6, 2005, AB's mother asked SFUSD to conduct its own neuropsychological

4  assessment. 2399 ¶ 40. At the May 25, 2005 IEP meeting, SFUSD verbally agreed to conduct a

5  psycho-educational assessment.   2399 ¶¶ 40-41.   SFUSD has never conducted either a

6  neuropsychological or psycho-educational assessment to date. 2399 ¶ 42.

7      SFUSD's failure to conduct a psycho-educational assessment after agreeing to do so is a

8  procedural violation of the IDEA. The ALJ concluded that this error was harmless because the

9  student did not establish any loss of educational benefit. 2399 ¶ 42.  However, considering that

10 SFUSD did not properly consider the one evaluation that was conducted, did not implement the

11 findings of that evaluation, did not offer any counter evaluation as the basis for its decision not to

12 implement the findings of that evaluation, this violation is not harmless.  SFUSD and AB's mother

13 had no way to know whether the choice of placement and programs, to the extent it differed from

14 Dr. Nunno's recommendations, were appropriate. Dr. Nunno found that there would be educational

15 benefit to providing daily speech and language therapy and occupational therapy three times per

16 week. 3434-35.  SFUSD did not provide them.  Based upon Dr. Nunno's assessment, AB lost

17 educational benefit.[17]

18          c.    SFUSD Failed to Conduct Speech, Language and Social Skills
              Assessments as Required
19

20      The ALJ partially agreed with Plaintiff that SFUSD did not properly assess AB's speech,

21 language and social skills throughout the second through fifth grade. The ALJ only ordered that a

22 new assessment be conducted – a "remedy" that does nothing to address prior harm caused by its

23 failure to assess AB's speech and language when required. 2401¶ 47; 2406-07 ¶¶ 72-75 .[18]

24 _____
   [17]Dr. Guterman's assessment supports a finding that AB lost educational opportunity.  2890

25 [18] The only assessment the ALJ found flawed was the "triennial review" that included a speech
   and language assessment in March 2005 (third grade).  2401 ¶ 47. The ALJ found that the
26 assessment was inappropriate because AB's birth date was incorrectly stated on the assessment,
   calling into question whether the scoring results were wrong.  AB's autism was never mentioned
27 in the report, leading to a material mistake in the evaluation of AB's verbal abilities.  2401¶ 47;
   2406-07 ¶¶ 72-75, SFUSD's only speech and language assessment was irreparably flawed
28 resulting in a reduction in speech services.

Based on SFUSD's failure to assess speech and language, SFUSD decreased the speech and language services offered to AB. AB's mother supplemented speech and language services. AB's mother should be compensated for these expenses, consistent with Dr. Nunno's recommendations.

The ALJ found that the 2005 speech and language assessment was flawed including the pragmatic language portion of it. Pragmatic language are the language skills attached to social skills. As Dr. Guterman's report highlights, social skills and pragmatic language skills are intertwined. 2889. The finding that AB's pragmatic language skills were not properly assessed is inconsistent with a finding that his social skills were properly assessed. 2403-04 ¶¶ 59-63; 2407 ¶ 75.

In addition, the ALJ found that SFUSD was "aware of [AB's] unique needs in the area of social skills and addressed them." 2403 ¶ 61. However, SFUSD could not have known what AB's needs were, let alone address them, without a proper assessment. AB's mother supplemented SFUSD's efforts with private social skills therapy because his deficits are part of his core deficits as a child with autism, which she believed went unaddressed by SFUSD. 2404 ¶ 62.

          d.    <u>SFUSD Failed to Conduct Occupational Therapy (OT)/Sensory-Motor Skills Assessments as Required</u>

Likewise, the ALJ found that the only OT assessment SFUSD conducted for AB between his second and fifth grades occurred as part of SFUSD's flawed triennial review in March, 2005 (third grade). 2401-02 ¶ 52, 2407-08 ¶¶ 76-80. The problem with the ALJ's decision is, like with the speech and language assessment, instead of awarding reimbursement for the expenses incurred for services AB's mother paid for to supplement SFUSD's programs, the ALJ only ordered a new assessment. 2443 ¶ 29. A new assessment, years after the fact, is no remedy for the harm done at the time. SFUSD may argue that whatever supplemental programs AB's mother spent money on were not necessary. AB's mother was providing services that she could relying on the information she had – namely Dr. Nunno's 2004 evaluation  recommending occupational therapy. 3434-35.

          e.    <u>SFUSD Failed to Conduct Auditory Processing Assessments as Required as Part of AB's Triennial Assessment</u>

SFUSD did not properly assess AB's auditory processing needs as part of his Spring 2005 triennial assessment. SFUSD's assessment found that AB scored significantly below average on the

auditory assessment, showing AB had difficulty processing and retaining verbal information. 2408-08 ¶82. The ALJ found that AB did not present any evidence of changes, incidents or information in AB's auditory processing needs that would put SFUSD on notice that additional assessments were required. 2403 ¶58. The ALJ found that SFUSD's 2005 assessment when paired with Dr. Nunno's 2004 assessment sufficiently assessed this area of need. 2408-09 ¶¶82-84. As shown in Section b, *supra,* SFUSD did not consider Dr. Nunno's assessment contemporaneously in its decision-making, so it was improper to pair his assessment with SFUSD's to make it whole.

Dr. Guterman was critical of the assessment for several reasons. For example, she objected to the lack of discussion in the report about how AB's auditory perceptual skill appeared in his day-to-day functioning within the classroom. She also objected to the lack of discussion about the discrepancy between AB's cognitive abilities and his low scores. 2877-78. The ALJ found Dr. Guterman persuasive in other areas but refused to rely on her for this point.[19] 2407 ¶ 75; 2408 ¶ 79.

SFUSD's 2005 auditory processing assessment of AB, on its own, was insufficient, and pairing it with Dr. Nunno's report after-the-fact cannot save it.

F.    *SFUSD Denied AB a FAPE by Failing to Develop Appropriate Goals*

1.    **SFUSD is Required to Develop Appropriate Goals Under the IDEA, and could not do So Because It did not Properly Assess AB**

An IEP must contain a statement of measurable *annual* goals and how the child's progress toward the annual goals will be measured. 20 U.S.C. § 1414(d)(1)(A)(i); 34 C.F.R. § 300.347(a); Cal. Educ. Code § 56345. *See Kirby v. Cabell Cty Bd. Of Educ.,* 46 Indiv. Disab. Educ. Law. Rptr. 156 (S.D. W.Va 2006) (failure to develop measurable baselines and goals "goes to the heart of the IEP; the child's level of academic achievement and functional performance is the foundation on which the IEP must be built. Without a clear identification of [student's] present levels, the IEP cannot set measurable goals, evaluate the child's progress, and determine which educational and related services are needed."); *Bend-Lapine Sch. District v. K.H.*, 43 Indiv. Disab. Educ. Law. Rptr. 191 (D.C. Ore. 2005).

---

[19] Why the ALJ relied on Dr. Guterman's criticism for some assessments but not others is unclear.

Every year AB was entitled to properly drafted, measurable goals that addressed his changing educational needs. They should have been based on solid baseline assessments, and updated every year. Goals should be written so that any individual knows where the student began and where the team expects the student to be at bench mark periods and at the end of the year. SFUSD's IEPs for AB from second through fifth grade fell far from this mark.

The ALJ found that (1) the second grade goals fell outside of the statute of limitations, and (2) with the exception of the behavioral goals in second grade and the communications goals in fourth grade, all of the goals provided adequate baseline information and were measurable. 2444 ¶ 35-38. As stated above, the statute of limitations finding was in error. The ALJ's finding of measurable goals does not reflect the actual language of the goals.

### 2.    SFUSD Failed to Develop Appropriate Baselines and Goals for AB in Second through Fifth Grade

*Bend-Lapine* provides examples of how not to write IEP goals. In *Bend-Lapine*, the child was not autistic, so her IEP was dramatically different than AB's, but the requirements that annual goals be measurable remains the same. The *Bend-Lapine* child's baseline information was similarly vague to AB's:

> [H]er behaviors 'resulted in short term suspensions,' K.H. had been physically and verbally aggressive, and K.H. 'had been involved in some sexual harassment incidents.' It was further noted that K.H. had difficulty maintaining friendships, verified by the behavioral inventory, and that people 'don't always enjoy K.H.'s company.' Finally, K.H.'s 'inappropriate behaviors interfere with her success in the classroom both socially and academically.'
> *Bend-Lapine* at 7.

The Court found that this statement was insufficient to determine an accurate baseline of K.H.'s behaviors, and failed to provide any measurable level of problematic behaviors. *Id*.

The flawed goals in *Bend-Lapine* are remarkably similar to those prepared for AB. AB's goals include the following statements:

**2003 goals**

"understands whole class schedule, not always able to refer to it to stay on task," [3355], "difficulty interacting with peers" [3356], "difficulty w/ sentence structure, grammar, staying on-topic" [3357], and "difficulty understanding appropriate reactions (verbal), attention following rules, and turn-taking skills" [3358]

**2004 goals**

"using visual schedules" and "successfully using" [3331], "difficulty interacting with peers" [3332], "sometimes communicates with others, exhibits negative behavior" [3333], "difficulty with transitions, attention/focus, and following speech rules" [3334] and "difficulty following complex directions" [3335]

**2005 goals**

"needs significant adult support and frequent prompting and forced choice to answer the question" [3285], "needs significant adult support to complete any writing task that is not of interest" [3286], "needs significant adult support to complete math word problems" [3287], "tends to chase, tease, make faces at peers and does not feel what other people feel and what they think of him or read social cues in others" [3288], "mild to mod expressive language delay" [3289] and "has difficulty interacting with peers, understanding their [Point of View]" [3290]

**2006 goals [arguably the most clearly drafted goals]**

"[AB] can write 1 paragraph with minimal assistance" [3253], "[AB] can attend for 5 minutes with adult support" [3255], "[AB] shows confusion with identifying the possible meaning of facial expressions and with use of varying vocal intonation" [3256] and "[AB] needs help with listening to speaker and with taking conversational turns appropriately" [3257]

Like the goals in *Bend-Lapine* these are not measurable. Particularly concerning was that at the hearing "each witness who testified about [Goal 3] had a different interpretation of the goal and the accompanying behavioral expectations." *Id.* Similar testimony was procured in AB's hearing as his various full inclusion teachers were unable to identify specific measurements for the goals. 1157:10- 1159:14; 1434:21- 1442:7; 1596:10- 1598:11.

In addition to deficient baselines, SFUSD drafted insufficient goals for AB. Again, *Bend-Lapine* is instructive, providing examples of improper goals strikingly similar to AB's:

(1) 'K.H. will exhibit appropriate work ethic and behaviors in school and home settings independently 90% of the time;' (2) 'K.H. will use age appropriate social sexual behavior 100% of the time as measured by behavioral referrals and observations;' and (3) K.H. will apply decision, along and problem solving techniques in school and home settings 90% of the time.' (sic) *Id.*

The Court found that goals one and three were not measurable and did not comply with the IDEA. *Id.* Again, AB's goals include statements similar to the flawed ones in *Bend-Lapine*, specifically,

**2003 goals**

"[AB] will improve expressive language skills towards a more age-appropriate level" [3357], "[AB] will improve social language skills towards a more age-appropriate level" [3358]

**2004 goals**

"Given outdoor and indoor play opportunities [AB] will use socially and age-appropriate behaviors to interact with peers" [3332], "[AB] will communicate for self-help purposes with peers, teachers, paraprofessionals and other professionals" [3333], "[AB] will improve his behavior during speech/language sessions to help optimize his learning of language-based lessons" [3334], "[AB] will improve his ability to follow complex verbal directives towards a level that will allow him to follow classroom directions more/appropriate accurately" [3335]

**2005 goals**

"given outdoor and indoor play/social opportunities, [AB] will use socially and age-appropriate behaviors to interact with peers" [3288], "[AB] will improve expressive and Receptive communication" [3289] and "[AB] will identify and describe feelings and then appropriate expression of those feelings in structured play" [3290]

**2006 goals**

"[AB] will accurately identify and use paralinguistic behaviors for himself with others" [3256], "[AB] will demonstrate appropriate pragmatic skills for interacting with others during conversations" [3257]

Most of these goals include a measurement such as 4 out of 5 opportunities. Given the lack of clarity concerning what will be measured, the mere designation of 4 out of 5 opportunities does not cure the flaw as it did not in *Bend-Lapine*.

The annual goals or short-term objectives contain a significant amount of vague terms, such as "improve," "age-appropriate," or "appropriate." These terms are subjective. What may be considered appropriate for one person is not appropriate for another. The purpose of annual goals is to tailor a program to that particular student's needs. Without a measurable baseline or annual goals, it is not clear for AB what it means to "improve" or to have "appropriate" behaviors. Consistent with the finding in *Bend-Lapine*, the lack of specific measurable baseline levels and annual goals is a denial of FAPE.

In addition to being impermissibly vague, the goals were not complete or appropriate. AB's mother suggested several goals, none of which were seriously considered for inclusion in the IEP. For example, often requested further goals to address AB's social skills, language skills, behavior

2785-90, 3099-100, 3311-12. AB's mom also identified the areas she was mainly concerned about including social skills, behavior and AB's social cognitive issues. 2785, 3099, 3311. SFUSD failed to adequately address these needs in his goals.

From second through fourth grade, AB had a different regular education teacher, full inclusion teacher and speech and language therapist. Having clearly measurable goals that anyone working with AB could implement, without ever having met him before, was essential. As in *Bend-Lapine*, the failure to provide measurable goals is a denial of FAPE.

G.    *SFUSD Denied AB a FAPE by Failing to Provide Appropriate Programs*

1.    **SFUSD is Required to Provide Appropriate Programs Under the IDEA, and could not do So Because It did not Properly Assess AB or Develop Appropriate Goals for Him**

School districts are required to provide an educational "basic floor of opportunity" that consists of access to specialized instruction and related services individually designed to provide educational benefit to the student. *Rowley*, 458 U.S. at 201. The IEP SFUSD developed had to be reasonably calculated to enable AB to receive educational benefit. *Id.* at 207.

Here, the yearly IEPs were not "reasonably calculated." From second grade on, assessment information was incomplete. The basic information required to set reasonably calculated goals was not there. Therefore, the basic goals required to provide reasonably calculated services were not there. AB does not dispute that SFUSD had no obligation to provide him a perfect program, but the program provided was not reasonable.

2.    **SFUSD Failed to Provide Appropriate Programs for AB in Second through Fifth Grade**

The ALJ found that AB did not establish that the services SFUSD provided were not appropriate – in effect asking AB to prove a negative. SFUSD itself is the reason why there is no evidence to prove the appropriateness of its services. SFUSD failed to conduct assessments, creating a dearth of data as to what the proper baselines and goals should be. Without proper baselines and goals, of course AB cannot show what the appropriate programs should have been.

What the parties do know is what services Dr. Nunno and Dr. Guterman recommended for AB. Dr. Nunno's report recommend occupational therapy as part of AB's educational program in

the second grade based upon deficits including poor bilateral coordination and poor balance, lack

of coordination and lack of orientation to his "body in space." 3435. SFUSD did not provide it.

Instead, mom provided music therapy and Interactive Metronome therapy. 2865, 2905-08, 2979,

2983. Dr. Nunno recommended daily speech and language therapy. 3435. SFUSD did not clearly

articulate its offer of Integrated Playgroups or speech therapy for AB's second grade and did not

provide daily speech therapy thereafter. 3258, 3302, 3336, 3362, 3364. Mom provided Ms. Fung's

services and Ms. Baudry's services to address these deficiencies. 2861-64, 2976-78, 2982. Had

SFUSD considered Dr. Nunno's report, AB may not have required the supplemental services..

H.    *AB's Mother is Entitled to Reimbursement for the Expenses Incurred for Placements and Services She Procured Because of SFUSD's Failure to Provide a FAPE to AB*

When a district fails to provide FAPE to a student with a disability, the student is entitled to

relief that is "appropriate" in light of the purposes of the IDEA. *School Committee of Burlington v.*

*Department of Educ.* (1996) 471 U.S. 359, 369-71; 20 U.S.C. § 1415(i)(2)(C)(3). Compensatory

education is a form of equitable relief that may be granted for the denial of FAPE. *Student W. v.*

*Puyallup Sch. Dist.* (9th Cir. 1994) 31 F.3d 1489, 1496. Compensatory education accrues when the

district knows, or should know, that a student is receiving an inappropriate education. *Id.* at 1497.

Parents may be entitled to reimbursement for the costs of placement or services they have

procured for their child when the school district has failed to provide a FAPE, and the private

placement or services were appropriate under the IDEA and replaced services that the district failed

to provide. 20 U.S.C. § 1412(a)(10(C); *Burlington, supra,* 471 U.S. at 369-71. Parents may receive

reimbursement for their unilateral placement if the placement met the child's needs and provided the

child with educational benefit. *Florence County Sch. Dist. Four v. Carter* (1993) 510 U.S. 7, 13-14.

If the parent removes a child from pubic school to place the child in a private program, then the

parent's reimbursement may be denied or reduced if the parent did not first give notice of the

parent's intent to remove the child. 20 U.S.C. § 1412(a)(10)(C)(iii); 34 C.F.R. § 300.403(d) (1999);

34 C.F.R. § 300.148(d) (2006); Cal. Educ. Code § 56176. The parent must provide such notice at

the most recent IEP meeting that the parents attended prior to removal or by written notice ten

business days prior to the removal of the child from public school. *Id.* Relevant here, there is no

comparable notice requirement where the student remains in the public school and his parent supplements his program with private services. Here, AB was never removed from his public school program during the school year, and therefore the notice requirement does not apply.

As *Amanda J.* illustrates, the ALJ's remedy of choice – new assessments at this late date – does not compensate for SFUSD's early and recurring failure to assess. Autism is a behavioral disorder that requires early and ongoing intervention. Missed assessments and resulting services cannot be made up later by new assessments. While it may be impossible to fully remedy the harm caused to AB by the repeated denials of FAPE, he is seeking the only remedy he can: compensation for the services his mother paid for out of pocket that arose from SFUSD's failure to assess. The ALJ's award of new assessments – something it should be doing anyway – is no remedy at all for its past failures.

### 1. AB's Mother is Entitled to Reimbursement for Summer Quest Camp and other ESY Services

During the 2004, 2005 & 2006 summer months AB's mother unilaterally placed him in a private camp and provided other private services. In those instances no one disputes that she provided the requisite notice. AB's mother requests, and is entitled to, reimbursement for the summer services and the supplemental services.

No one disputes that AB required an ESY placement in second through fifth grade. SFUSD offered AB placement in a special day class. SFUSD provided no specificity about the type of class – the educational level of the children in the class, the disabilities the children in the class had, or whether it was an appropriate program for AB. *See supra, D.* AB's mother complied with her notice requirement, and provided notice to SFUSD that she would be sending AB to a different program and would seek reimbursement for Interactive Metronome therapy, music therapy, Lindamood-Bell Learning Processes, speech and language therapy, and Quest Camp. 2824, 3203, 3258. The ALJ acknowledged that SFUSD failed to provide the requisite written notices of refusal in response to AB's mother's notice. 2447.

AB benefitted from Quest Camp. 2431-33, 2866-67, 2972-74, 2984-86. He also benefitted from music therapy with Susan Rancer [2865, 3130-31], speech and language therapy with Floria

Fung [2863-64, 2987], the Lindamood-Bell Learning Processes services [2958-71], Interactive Metronome therapy [2905-08, 2988-89], and the social skills program with Dominique Baudry [2861-62, 3093-94].

SFUSD denied AB a FAPE for the 2004, 2005 & 2006 ESY by failing to make a clear written offer of placement and also failing to provide his mother with the necessary PWN. Therefore, AB's mother is entitled to reimbursement.

### 2. AB's Mother is Entitled to Reimbursement for Supplemental Services During the School Year

AB's mother supplemented his educational program throughout the school years because what SFUSD provided was patently inadequate. Her supplemental program included music therapy, speech and language therapy, social skills intervention, Interactive Metronome therapy, Quest after school program and Lindamood-Bell Learning Processes. As shown above, AB benefitted from these services. These programs were reasonable given the two comprehensive assessments she had available to her at the time, namely Dr. Nunno's 2004 assessment and Dr. Guterman's 2005 assessment. 2869-91, 3425-35.

Given SFUSD's pervasive failure to appropriately assess AB's educational needs, failure to develop appropriate annual goals, and from there, failure to provide an appropriate program, his mother should be reimbursed for the supplemental services that provided AB with some benefit.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court find that SFUSD denied AB a FAPE from Second through Fifth grade, and award AB's mother reimbursement for the private services she contracted for during that period.

Respectfully Submitted,

ROBERTA S. SAVAGE
Attorney for Plaintiff A.B.

Dated: April 16, 2008                    By: _____
                                              Roberta S. Savage

A.B. v. San Francisco Unified School District, Case No. 07-4738
Appendix A: Table of violations alleged and found

| | 2003-2004<br>2nd grade | 2004-2005<br>3rd grade | 2005-2006<br>4th grade | 2006-2007<br>5th grade |
|---|---|---|---|---|
| **Assessments** | | | | |
| behavior | **AWARDED**<br>**[2442,¶25]** | **HARMLESS**<br>**[2442, ¶26]** | **HARMLESS**<br>**[2444, ¶34]** | ALLEGED |
| occupational therapy, including sensory | ALLEGED | ALLEGED | **AWARDED**<br>**[2443, ¶ 29, 32]** | **AWARDED**<br>**[2443, ¶29, 32]** |
| speech and language therapy, social skills | ALLEGED | ALLEGED | **AWARDED**<br>**[2443, ¶31]** | ALLEGED |
| auditory processing | | | ALLEGED | ALLEGED |
| academic | | ALLEGED | ALLEGED | ALLEGED |
| neuropsychological or psycho-educational | **AWARDED**<br>**[2442 ¶ 25]** | **HARMLESS**<br>**[2442-43, ¶ 28]** | **HARMLESS**<br>**[2442-43, ¶ 28]** | |
| **Annual goals** | | | | |
| all areas or measurable | **PARTIAL**<br>**[2444, ¶35]** | ALLEGED | **PARTIAL**<br>**[2444, ¶37]** | ALLEGED |
| **Services** | | | | |
| social skills program | ALLEGED | ALLEGED | ALLEGED | ALLEGED |
| speech and language therapy | ALLEGED | | **AWARDED**<br>**[2445, ¶40]** | |
| music therapy | ALLEGED | ALLEGED | ALLEGED | ALLEGED |
| academic skills | | ALLEGED | ALLEGED | ALLEGED |
| occupational therapy | ALLEGED | ALLEGED | ALLEGED | ALLEGED |
| 1:1 aide/behavioral support | **AWARDED**<br>**[2445, ¶41, 42]** | | | |
| **Separate Violations** | | | | |
| extended school year | ALLEGED | ALLEGED | **HARMLESS**<br>**[2446, ¶48]** | |
| prior written notice | **HARMLESS**<br>**[2446-47,¶ 49]** | **HARMLESS**<br>**[2447, ¶50]** | **HARMLESS**<br>**[2447, ¶50]** | |