1  Lenore Silverman, SBN 146112
   lsilverman@fagenfriedman.com
2  Kimberly A. Smith, SBN 176659
   ksmith@fagenfriedman.com
3  FAGEN FRIEDMAN & FULFROST, LLP
   6300 Wilshire Boulevard, Suite 1700
4  Los Angeles, California  90048
   Phone: 323-330-6300
5  Fax: 323-330-6311

6  Attorneys for Defendant, SAN FRANCISCO
   UNIFIED SCHOOL DISTRICT
7

*(margin, left side: Fagen Friedman & Fulfrost, LLP — 6300 Wilshire Boulevard, Suite 1700 — Los Angeles, California  90048 — Main: 323-330-6300 • Fax: 323-330-6311)*

8              **UNITED STATES DISTRICT COURT**

9     **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10

11  A.B., a minor, By and Through W.F.B., His        CASE NO. C 07-4738 (PJH)
    Guardian Ad Litem,
12                                                   **DEFENDANT SAN FRANCISCO**
                   Plaintiff,                        **UNIFIED SCHOOL DISTRICT'S**
13                                                   **MOTION FOR SUMMARY JUDGMENT**
           vs.
14                                                   Date:      June 25, 2008
    SAN FRANCISCO UNIFIED SCHOOL                     Time:      9:00 a.m.
15  DISTRICT,                                        Crtrm.:    3

16                 Defendant.                        *Filed Concurrently With:*

17                                                   1.  Proposed Order

18

19  / / /

20  / / /

21  / / /

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3  NOTICE OF HEARING (Civil L.R. 7-2(b)(2)..................................................................1

4  RELIEF SOUGHT (Civil L.R. 7-2(b)(3) .....................................................................1

5  I.     INTRODUCTION ...............................................................................................2

6  II.    STANDARD OF REVIEW ................................................................................3

7         A.     Legal Standard ........................................................................................3

8         B.     Burden of Proof and Persuasion .............................................................3

9  III.   STATEMENT OF FACTS .................................................................................4

10        A.     Plaintiff's Eligibility for Special Education ...........................................4

11        B.     Kindergarten (2001-2002) ......................................................................4

12        C.     First Grade (2002-2003) .........................................................................5

13        D.     Second Grade (2003-2004) .....................................................................5

14        E.     ESY 2004.................................................................................................6

15        F.     Third Grade (2004-2005) ........................................................................6

16        G.     ESY 2005.................................................................................................7

17        H.     Fourth Grade (2005-2006) ......................................................................7

18        I.     ESY 2006..................................................................................................8

19        J.     Fifth Grade (2006-2007).........................................................................8

20        K.     Due Process Proceeding ..........................................................................8

21  IV.   LEGAL ANALYSIS ..........................................................................................9

22        A.     The Individuals With Disabilities in Education Act ...............................9

23        B.     All Claims Related to Actions Taken Prior to October 6, 2003 Are Barred
                 By The Applicable Statute of Limitations.............................................10

24
          C.     The District Did not Fail to Assess Student Student's Behavioral Needs
25               (Issue 1A) ..............................................................................................10

26               1.     The 2003-2004 School Year (Second Grade). ...........................11

27               2.     The 2004-2005 School Year (Third Grade). ..............................11

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

3.    The 2005-2006 and 2006-2007 School Years (Fourth and Fifth Grades)..................................................................................11

D.    The District Did Not Fail to Assess Student's Communication, Sensory and Motor, Attention Reading and Academic, Auditory Processing and Social Skills Needs (Issue 1C) ..............................................................12

1.    Communication Needs – Second, Fourth and Fifth Grade School Years .......................................................................................12

2.    Sensory and Motor Needs - Second, Fourth and Fifth Grade School Years .......................................................................................13

3.    Attention, Reading, and Academic Needs - Third, Fourth and Fifth Grade School Years .................................................................13

4.    Auditory Processing Needs - Fourth and Firth Grade School Years...........14

5.    Social Skills Needs – All Years .............................................................14

E.    The District Conducted an Appropriate Auditory Processing Assessment of Plaintiff (Issue 2)..................................................................................14

F.    The District Developed Requisite Annual Goals in the Areas of Communication, Sensory and Motor, Attention, Reading, Academics, Auditory Processing and Social Skills (Issue 4A) ...................................15

G.    The District provided Plaintiff with Appropriate DIS, Services and Supports of Social Skills Training, Speech and Language Therapy, Behavioral Support, A Trained Aide, Occupational Therapy, Music Therapy and Academic Skills Intervention (Issue 4B)....................................................16

H.    The District Made a Clear Written Offer of Placement For Plaintiff's Speech and Language Therapy and Integrated Play Groups in Second Grade and for ESY's 2004, 2005 and 2006 (Issue 4C) .......................................17

1.    Speech and Language and Integrated Play Groups. ...............................18

2.    The ESY Programs ...............................................................................19

(a)    ESY 2004.......................................................................19

(b)    ESY 2005.......................................................................20

(c)    ESY 2006.......................................................................20

I.    The District Did Not Fail To Provide Prior Written Notice of Refusals to Assess or to Initiate or Change Placement (Issue 4D) .............................21

1.    ESY Placements at Quest Camp .............................................................21

2.    2005 Request for a Neuropsychological Assessment...............................22

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

V.    PLAINTIFF OBTAINED AN ADEQUATE AND APPROPRIATE REMEDY IN THE DUE PROCESS PROCEEDING ...........................................................................22

    A.    The Legal Standard for Parental Reimbursement and Fashioning Relief for Denials of FAPE. ........................................................................................22

        1.    Plaintiff Was Entitled to Reimbursement for One Summer Only of Quest Therapeutic Camp Due to the District's Untimely Behavioral Assessment. ..........................................................................................23

        2.    Plaintiff Was Entitled to Reimbursement for Seventeen (17) Hours of Private Speech and Language Therapy ..........................................24

        3.    Plaintiff Is Not Entitled to Reimbursement for Social and Play Skills Therapy ................................................................................................25

        4.    Plaintiff Is Not Entitled to Reimbursement for Ben Kaufman's Behavior Consultation ...............................................................................25

        5.    Plaintiff Was Not Entitled To Reimbursement for Academic Services Received from Lindamood-Bell ..............................................26

        6.    Plaintiff Was Not Entitled to Reimbursement for Music Therapy ..............27

        7.    Plaintiff Was Not Entitled to Reimbursement for Interactive Metronome Occupational Therapy ..............................................................27

    B.    The ALJ Applied the Correct Standard As to When a Parent is Entitled to an Independent Educational Evaluation at Public Expense....................................28

        1.    The District Is Not Required to Reimburse Plaintiff for His Private Occupational Therapy Evaluation ..............................................................29

        2.    The District Is Not Required to Reimburse Plaintiff for The Neuropsychological Assessment by Dr. Tina Guterman.............................29

VI.    CONCLUSION ........................................................................................................30

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**

**Page**

CASES

*Amanda J. v. Clark County Sch. Dist.,* 267 F.2d 877 (9th Cir. 2001)......................................... 15, 26

*B.B. v. Hawaii Dept. of Educ.,* 483 F.Supp. 1042 (D. Hawai'i 2006) ........................................... 16

*Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley ("Rowley"),* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).................................................................... 3, 9-10, 23, 27

*B.R. v. San Ramon Valley Unif. Sch. Dist.,* 2007 WL 72632 (N.D.Cal. January 25, 2007)............ 17

*Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884 (9th Cir. 1995).................................... 3

*Clyde K. v. Puyllup Sch. Dist. No. 3,* 35 F.3d 1396 (9th Cir. 1994) ............................................. 4

*County of San Diego v. Cal. Special Educ. Hearing Office,* 93 F.3d 1458 (9th Cir. 1996).............. 9

*Florence County Sch. Dist. v. Carter,* 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993)........... 23

*French v. Omaha Public Schools,* 766 F.Supp. 765 (Neb. 1991)..................................................... 15

*G.W. v. New Haven Unif. School Dist.,* 2006 W.L. 2237749 at *1 (N.D. Cal. 2006) ................ 4, 10

*Gregory K. v. Longview Sch. Dist.,* 811 F.2d 1307 (9th Cir. 1987)............................................. 3, 10

*J.H. v. Henrico County School Board,* 326 F.3d 560 (4th Cir. 2003).......................................... 19

*Kerkham v. McKenzie,* 862 F.2d 884 (D.C. Cir. 1988) ................................................................ 23

*McQueen v. Colorado Springs School District No. 11,* 419 F.Supp.2d 1303 (D. Colo. 2006)................................................................................................................................... 19

*Miller v. San Mateo-Foster City Unif. Sch. Dist.,* 318 F.Supp.2d 851 (N.D. Cal. 2004)................. 4

*N.R. ex rel. BR. v. San Ramon Valley Unified Sch. Dist.,* 2007 WL 726232, *16 (N.D.Cal. January 25, 2007) ................................................................................................................. 17

*Sch. Comm. of Burlington v. Dep't of Educ. of Mass.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d (1985)..................................................................................................................... 22

*Schaffer v. West,* 546 U.S. 49, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005) ...................................... 3

*Union Sch. Dist. v. Smith,* 15 F.3d 1519, 1524 (9th Cir. 1994)................................................... 17

*Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119 (2d Cir. 1998) ..................................... 23

*Zoltanski v. F.A.A.,* 372 F.3d 1195 (10th Cir. 2004).............................................................. 15, 26

/ / /

/ / /

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

**FEDERAL STATUTES, REGULATIONS AND RULES**

20 U.S.C. §1400(d) ...................................................................................................... 9

20 U.S.C. §1401(9) ...................................................................................................... 9

20 U.S.C. §1401(26) .................................................................................................. 16

20 U.S.C. §1414(a)(2) ........................................................................................... 12, 13

20 U.S.C. §1414(a)(3) ........................................................................................... 12, 13

20 U.S.C. §1412(a)(10)(C)(iii) ............................................................................. 23, 24

20 U.S.C. §1414(d)(1)(A)(i)(II) ................................................................................ 15

20 U.S.C. §1414(d)(3)(B)(i) ...................................................................................... 10

20 U.S.C. §1415(b)(3) ............................................................................................... 21

20 U.S.C. §1415(b)(3)(A) .......................................................................................... 17

20 U.S.C. §1415(c)(1) ............................................................................................... 21

20 U.S.C. §1415(e)(2) ............................................................................................... 22

20 U.S.C. §1415(f)(3)(E) ............................................................................... 11, 20, 22

20 U.S.C. §1415(i)(2)(C) ............................................................................................. 3

20 U.S.C. §1415(k)(1)(D) .......................................................................................... 11

34 C.F.R. §300.106(a)(2) ........................................................................................... 19

34 C.F.R. §300.106(b)(1)(i) ....................................................................................... 19

34 C.F.R. §300.106(b)(1)(ii) ...................................................................................... 19

34 C.F.R. §300.148(d) ......................................................................................... 23, 24

34 C.F.R. §300.309(a)(2) ........................................................................................... 19

34 C.F.R. §300.309(b)(1)(i) ....................................................................................... 19

34 C.F.R. §300.346(a)(2)(i) ....................................................................................... 10

34 C.F.R. §300.502 ............................................................................................. 28, 29

34 C.F.R. §300.502(b)(2) ........................................................................................... 28

34 C.F.R. §300.502(e) ............................................................................................... 28

34 C.F.R. §300.507(a)(2) ........................................................................................... 11

34 C.F.R. §300.520(B)(1)(i) ....................................................................................... 10

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   34 C.F.R. §300.533(c) ................................................................................................ 12

2   34 C.F.R. §300.541 .................................................................................................... 15

3   FED.R.CIV.PROC. 56(c) ............................................................................................... 3

4

5   **STATE STATUTES, REGULATIONS AND RULES**

6   Cal.Educ.Code §56176 ......................................................................................... 23, 24

7   Cal.Educ.Code §56320(e) .......................................................................................... 12

8   Cal.Educ.Code §56320(f) ........................................................................................... 12

9   Cal.Educ.Code §56329 ............................................................................................... 28

10   Cal.Educ.Code §56341.1(b)(1) .................................................................................. 10

11   Cal.Educ.Code §56345(a)(2) ..................................................................................... 15

12   Cal.Educ.Code §56363(a) .......................................................................................... 16

13   Cal.Educ.Code §56381(a)(1) ................................................................................ 11, 12

14   Cal.Educ.Code §56381(a)(2) ..................................................................................... 12

15   Cal.Educ.Code §56381(d) .......................................................................................... 12

16   Cal.Educ.Code §56500.4 ........................................................................................... 21

17   Cal.Educ.Code §56505(f) .......................................................................................... 11

18   Cal.Educ.Code §56505(l) .......................................................................................... 10

19   Cal.Educ.Code §56505(n) ......................................................................................... 10

20

21

22

23

24

25

26

27

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

1

**NOTICE OF HEARING (Civil L.R. 7-2(b)(2)**

2    PLEASE TAKE NOTICE that on June 25, 2008, or as soon thereafter as this matter may

3    be heard, in Department 3 of the above-entitled Court, located at 450 Golden Gate Avenue, San

4    Francisco, California 94102, before the Honorable Phyllis J. Hamilton, defendant San Francisco

5    Unified School District ("District") will and hereby does move pursuant to Federal Rule of Civil

6    Procedure 56 for summary judgment as to Plaintiff's complaint on the grounds that no genuine

7    issues of material fact exist and that the District is entitled to judgment in its favor as a matter of

8    law.

9    **RELIEF SOUGHT (Civil L.R. 7-2(b)(3)**

10    The District seeks full affirmation by this Court of the June 18, 2007 decision by

11    Administrative Law Judge Deidre L. Johnson in the administrative case titled *Student v. San*

12    *Francisco Unified School District,* OAH Case No. N2006100345.

13

14    DATED: April 16, 2008                    FAGEN FRIEDMAN & FULFROST, LLP

15

16                                             By:  /s/ Kimberly A. Smith
                                                    Kimberly A. Smith
17                                                  Attorneys for Defendant, SAN FRANCISCO
                                                    UNIFIED SCHOOL DISTRICT
18

19

20

21

22

23

24

25

26

27

28

*Fagen Friedman & Fulfrost, LLP*
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

3    **I.    INTRODUCTION**

4        This action is an appeal from an administrative special education "due process" proceeding

5    before the Special Education Division of the California Office of Administrative Hearings

6    ("OAH"), pursuant to the Individuals with Disabilities Education Act ("IDEA").  Plaintiff A.B.

7    ("Plaintiff" or "Student"), now twelve years old, resides within the District where he attended Mt.

8    Alamo Elementary from kindergarten through his fifth grade year (2006-2007).  [AR 2389 (¶ 1).]

9    At all times, Alex was identified as a student qualified to receive special education and related

10    services based on autistic-like behavior.  [AR 2390 (¶ 2).]  In the underlying due process

11    proceeding, Plaintiff alleged that the District failed to offer a free, appropriate public education

12    ("FAPE") as mandated by the IDEA and related California law during his second, third, fourth and

13    fifth grade school years, and respective extended school years.  [AR 2336-2367.]  Plaintiff further

14    sought reimbursement for various assessments, services and related transportation costs, totaling

15    approximately $125,000.  [AR 2341-2342; 2345-2347; 2350-2352; 2355-2364.[1]]

16        On June 18, 2007, administrative law judge ("ALJ") Deidre Johnson issued a decision

17    finding that Plaintiff had prevailed or partially prevailed on several issues, while the District

18    prevailed on all remaining issues.  [AR 2387-2449.]  ALJ Johnson further awarded Plaintiff and

19    his mother ("Mother") reimbursement of $8,925.00 plus some related mileage expenses.  By their

20    appeal, Plaintiff seeks reversal of the ALJ's decision on all issues and sub-issues which were

21    favorable to the District and full reimbursement of the assessments, services and related

22    transportation provided to Plaintiff during the subject time period.

23    / / /

24    / / /

25    _____

26    [1] In Plaintiff's Clarified Statement of Issues, filed just prior to hearing, he itemizes each item of
    reimbursement by school year.  Amounts for mileage claimed were estimated as Plaintiff did not
27    present evidence of exact mileage calculations or claimed rates.

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California  90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

## II.     STANDARD OF REVIEW

### A.     Legal Standard

The Federal Rules of Civil Procedure provide for summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.PROC. 56(c).  In an appeal from the decision an administrative agency regarding the rights of students with disabilities, the court receives the records of the administrative proceedings, as the "facts" of the case, which it court must then review and, based on the preponderance of the evidence, grant such relief as it determines is appropriate.  20 U.S.C. § 1415(i)(2)(C).

When reviewing an administrative decision in an IDEA case, courts must give "due weight" to the decision of the ALJ, who is the best position to assess the credibility of witnesses. Importantly, no court must substitute its own judgment with respect to any issue of educational policy.  *Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley ("Rowley")*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).  While a court has discretion to determine the amount of deference to give, it should accord greater deference to the administrative findings when the ALJ engages in a thorough and careful analysis of the issues.  *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994); *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987).  A court should also give substantial weight to the decision when it evinces careful and impartial consideration of all of the evidence and demonstrates the ALJ's sensitivity to the complexity of the issues presented.  *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996); *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995) [increased deference should be given to findings that are "thorough and careful."].

In the present case, ALJ Johnson issued a detailed, sixty-two (62) page decision which carefully set forth two hundred and fourteen (214) factual findings and fifty-one (51) legal conclusions.  Under the *Rowley* standard, such factual findings should be given great deference by this Court.

### B.     Burden of Proof and Persuasion

At the administrative level, a petitioning party has the burden of proof.  *Schaffer v. West*, 546 U.S. 49, 126 S.Ct. 528, 537, 163 L.Ed.2d 387 (2005).  The party then challenging an

1    administrative decision in federal district court bears the burden of persuasion.  *G.W. v. New*

2    *Haven Unif. School Dist.*, 2006 W.L. 2237749 at *1 (N.D. Cal. 2006), *citing Clyde K. v. Puyllup*

3    *Sch. Dist. No. 3*, 35 F.3d 1396, 1399 (9th Cir. 1994).  It is axiomatic that "[t]he party challenging

4    the [administrative-level special education] decision bears the burden of persuasion on its claim"

5    in federal district court.  *Miller v. San Mateo-Foster City Unif. Sch. Dist.*, 318 F.Supp.2d 851, 859

6    (N.D. Cal. 2004), *citing Clyde K.,* 35 F.3d at 1399 (9th Cir. 1994).  In this case, most of the issues

7    were resolved in favor of the District at the administrative level.  Moreover, the District brings no

8    challenge to the issues on which it failed to prevail.  Thus, Plaintiff bears the burden of persuasion

9    in this matter, just as he had the burden of proof below.

10

11   **III.    STATEMENT OF FACTS**

12          The following is a summary of the relevant facts in this case as supported by the

13   administrative record and specific factual findings of the ALJ.

14          **A.    Plaintiff's Eligibility for Special Education**

15          Plaintiff was born in January, 1996 and began kindergarten at Alamo Elementary School in

16   the District.  He attended Alamo through the 2006-2007 school year, which was his fifth and last

17   grade at Alamo.  [AR 2389 (¶ 1).]  During all relevant time periods, Plaintiff was eligible for

18   special education and related services under the category of autistic-like.  [AR 2390 (¶ 2).]

19          **B.    Kindergarten (2001-2002)**

20          During his kindergarten year (2001-2002), Plaintiff was placed in a general education

21   classroom pursuant to an individualized education plan ("IEP") that included a behavior support

22   plan (BSP) to address temper tantrums.[2]  [AR 2391 (¶ 8)]  In February 2002, the District

23   performed a triennial assessment of Plaintiff which included a psycho-educational assessment and

24   a speech and language assessment.  [AR 2400 (¶44); 2404-2405 (¶66); 2406 (¶70), 3442-3468.]

25   _____

26   [2] Information regarding Plaintiff's kindergarten and first grade years is offered as background
27   only.  The ALJ determined that the applicable statute of limitations barred any claims preceding
     October 6, 2003 (date).  [AR 2388 (n. 3).]

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

*Fagen Friedman & Fulfrost, LLP*
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

**C.    First Grade (2002-2003)**

On March 26, 2003, Plaintiff's IEP team met for his annual review.  He received a new IEP with a BSP to address Plaintiff's refusal to do school work and tantrumming.  [AR 2391 (¶ 9); 3351-3365.]

**D.    Second Grade (2003-2004)**

During second grade, Plaintiff was taught by general education teacher Dorothy Williams with assistance from special education teacher Michelle Wong.  [AR 409:20-23; 411:19-412:10; 1419:12-21; 2391 (¶10)]  During this school year, District staff grew concerned that Plaintiff's negative behavior was escalating.  [AR 2391-2392 (¶11).]  In February, 2004, the IEP team revised Plaintiff's BSP and agreed to have a behaviorist observe Plaintiff and revise his BSP.  [AR 2391-2392 (¶15); 2794-2797.]  At the March 16, 2004, IEP team meeting, Plaintiff's mother ("Mother") presented a document titled "Mother's Thoughts and Suggestions" which the team advised it would review and then reconvene to discuss.  [AR 2394 (¶20); 3095-3098, 3099-3103.]

In April 2004, Mother had Plaintiff assessed by a neuropsychologist, Vincent J. Nunno Ph.D.[3]  [AR 2394 (¶21); 3425-3435.]

On May 5, 2004, the team reconvened and finalized Plaintiff's IEP.  [AR 2394 (¶23); 3326-3344.]  At this meeting, the District recommended that Plaintiff be transferred to a special day class for disabled students, rather than attend in the general education classroom.  [AR 1413:4-22; 3341-3342.]  Mother expressed her concerns.  [AR 3341-3342.]  Finally, the District offered Plaintiff a summer special education classroom.  [1245:5-1246:4; 1247:2-1247:8; 1248:21-1249:10; 1253:316; 1270:10- 01272:7; AR 2426 (¶ 168).]

The IEP team reconvened on May 18, 2004, and at which time Mother advised of Dr. Nunno's assessment results.  The team also agreed to make no change in placement.  [AR 3129.]  Finally, Mother advised that Plaintiff would be attending Quest Camp for the summer.  [AR 2394

---

[3] Mother first advised the District of Dr. Nunno's informal findings at the May 19, 2004 IEP.  [AR 3325.]  Dr. Nunno's formal report was completed on May 27, 2004 and provided to the District on June 7, 2004.  [AR 163:15-164:7; 3425-3435.]

1 (¶20-22); 3319-3325.]

2      During the 2003-2004 school year, Plaintiff was receiving private speech and language

3 therapy and private music therapy.  [AR 2341-2342.]  Plaintiff did not give the District notice of

4 these services or seek reimbursement other than by his request for due process.

5      **E.**    **ESY 2004**

6      On June 9, 2004, Mother formally advised the District of her plans to send Plaintiff to

7 Quest Camp.  She also expressed her intent to seek reimbursement for the screening costs,

8 program costs, and related transportation.  [AR 2824.]

9      **F.**    **Third Grade (2004-2005)**

10      On March 23, 2005, the IEP team met to conduct Plaintiff's triennial IEP.  Goals and

11 objectives were written in the areas of social perspective taking, communication – receptive

12 language and communication – pragmatics.  Several draft goals in the areas of reading

13 comprehension, writing and organization and focus, math – computation of whole numbers, and

14 social interaction were also prepared but not originally included.  [AR 3157-3175; 3191.]

15 Plaintiff's mother presented the District with a written response to the IEP which requested that

16 additional goals be included.  [AR 3311-3318.]  A revised draft IEP was then sent to Plaintiff's

17 mother on April 4, 2005, which included all goals.  [AR 3191.]

18      The team then reconvened on May 6, 2005.  At that meeting, Plaintiff's mother made

19 several requests and provided a list of questions for autistic children which was attached to the

20 addendum IEP.  [AR 3184-3190.]  The team then agreed to reconvene on May 25, 2005 to discuss

21 goals and objectives, DIS (designated instruction and services) and the need for an FBA

22 (functional behavior assessment).  [AR 3186.]

23      On May 25, 2005, Mother provided a slightly different list of questions which was

24 attached.  [AR 3271-3277.]  The team also agreed that the all goals and objectives discussed at the

25 March 23, 2005 IEP should be included.  [AR 3157-3175; 3194; 3271-3277.]  Finally, the team

26 offered Mother an ESY program for 4 hours a day, 4 days a week in a special day class.  [AR

27 3271-3272.]

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    During the 2004-2005 school year, Plaintiff was receiving private speech and language

2   therapy, private music therapy, private play therapy and participated in a Quest Camp after school

3   program. [AR 2345-2347.] Plaintiff did not give the District notice of these services or seek

4   reimbursement other than by his request for due process.

5    **G.    ESY 2005**

6    On May 18, 2005, Mother sent a letter to the District giving notice of placement at Quest

7   Camp from June 27 to August 19, 2005, an after school program at Lindamood-Bell from May 25

8   to June 24, 2005 and speech therapy with Ms. Fung for May, June, July and August, 2005. She

9   advised that she would seek reimbursement for these services. [AR 3203.]

10    **H.    Fourth Grade (2005-2006)**

11    On November 21, 2005, the District completed a functional behavioral assessment of

12   Plaintiff. [AR 3387-3341.]

13    On March 9, 2006, the IEP team met for Plaintiff's annual IEP. [AR 3249-3269.] The IEP

14   identified Plaintiff's present levels of performance and included six goals, with specific short-term

15   objectives written in the areas of comprehension and analysis of grade-level appropriate text,

16   writing-organization and focus, mathematical reasoning, attention, pragmatics – paralinguistic

17   behaviors and pragmatics – interaction skills. [AR 3250-3257.] The IEP provided that Plaintiff

18   would continue in a general education classroom with an aide and would receive consultation OT

19   services, direct and consultation speech and language services and various other supports and

20   modifications to assist him in attaining his goals and progressing in the general curriculum. [AR

21   3258-3259.] Finally, the IEP included a BSP which indicated occasional interfering behaviors of

22   mild to moderate intensity with no temper tantrums or disruptive behavior. The BSP included

23   strategies for reinforcing improving behaviors. [AR 2398 (¶36); 3252-3269.]

24    On May 2, 2006, the IEP team convened and prepared an addendum to Plaintiff's IEP

25   which modified his BSP and speech and language services and provided that Plaintiff could have

26   an extra set of classroom textbooks for home preparation. [AR 3246-3248.]

27    During the 2005-2006 school year, Plaintiff was receiving private speech and language

28   therapy, private music therapy, private metronome therapy and private tutoring at Lindamood

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  Bell.  [AR 2345-2347.]  Plaintiff did not give the District notice of these services or seek

2  reimbursement other than by his request for due process.

3  **I.    ESY 2006**

4     On June 8, 2006 , Mother wrote the District advising of placement at Quest Camp from

5  June 26 to August 18, 2006; Lindamood Bell for June and August, and music therapy for June,

6  July and August.  She advised that she would seek reimbursement from the District.  [AR 2900-

7  2901.]

8  **J.    Fifth Grade (2006-2007)**

9     Plaintiff entered the fifth grade with the IEP in place as described above.  He then filed for

10  due process on November 22, 2006.  [AR 2387.]  No updates to the IEP occurred during this time.

11  Also, during this time, Plaintiff continued to receive private services from Lindamood Bell and

12  Quest Camp and participated in private music and metronome therapy, without providing notice to

13  the District or a request for reimbursement.  [AR 2355-2356.]

14  **K.    Due Process Proceeding**

15     On October 6, 2005, Plaintiff filed a request for due process with the Office of

16  Administrative Hearings ("OAH").  [AR 2710-2715.]  On January 9, 2007, OAH ordered Plaintiff

17  to prepare a Clarification of Issues for Hearing which was submitted on January 12, 2007.  [AR

18  2586-2588; AR 2336-2367.]  A haring was held on February 27 and 28, 2007, March 1, 2, 5, 6 and

19  7, 2007 and April 11 and 12, 2007 before ALJ Johnson who decided the following issues that are

20  now the subject of this appeal:

21     1.[4]  Did District fail to assess Student in all areas related to his suspected disability of
         autistic-like behavior for the 2003-2004 school year (second grade), the 2004-2005

22         school year (third grade), the 2005-2006 school year (fourth grade), and the 2006-2007
         school year (fifth grade) as follows:

23

24     A.  Failure to assess Student's behavior needs (all years), including failure to conduct a
         functional behavior analysis assessment for the ….. 2004-2005 school years?

25     * * *

26  _____

27  [4] Only those issues on which the District prevailed are listed here.  The District is not appealing
any findings against it.

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  C. Failure to assess Student's communication, sensory and motor needs (all years except the 2004-2005 school years [sic], attention, reading, and academic weaknesses (all years except the 2003-2004 school year), auditory processing needs (all years except the 2003-2004 and 2004-2005 school years), and social skills needs (all years)?

4  2. [Was the] District's auditory processing assessments appropriate?

5  4. Did District deny Student a free appropriate public education (FAPE) for the 2003-2004 school year (second grade), 2004-2004 school year (third grade,) the 2005-2006 school year (fourth grade), and the 2006-2007 school year (fifth grade), by failing to provide him with appropriate education and related services to address his unique needs related to autism as follow:

8  A. Failure to develop requisite annual goals in the following areas of need: communication, sensory and motor, attention, reading, academic weakness, auditory processing, and social skills (all years)?

10  B. Failure to offer or provide an IEP that included appropriate designated instruction, services and supports, as follows: social skills training, speech and language therapy, behavior support, a trained aide, occupational therapy, and music therapy (all years), and academic skills intervention (all years except 2003-2004)?

13  C. Failure to make a clear written offer of placement for speech and language therapy (2003-2004 school year), integrated play groups (2003-2004 school year) and the 2004, 2005 and 2006 extended school years (ESY)?

15  D. Failure to provide prior written notice of District's refusals to initiate assessments or to initiate or make changes to Student's placement in response to Parent's requests (all years)?

17  [AR 2388-2389.]

18  Plaintiff now seeks to have all issues previously decided in favor of the District reversed in

19  his favor.

20

21  IV.    LEGAL ANALYSIS

22        A.        The Individuals With Disabilities in Education Act

23        The IDEA guarantees children with disabilities the right to a FAPE.  20 U.S.C. § 1400(d).

24  A FAPE consists of special education and related services that meet state educational standards

25  and conform to the child's IEP, at no cost to the parents and student.  20 U.S.C. § 1401(9).  The

26  IDEA does not require school districts to give special education students the best education

27  available or to provide services and instruction to maximize their potential.  *Rowley*, 458 U.S. at

28  198-200.   Rather, the IDEA only requires school districts to provide a "basic floor of opportunity"

9  C 07-4738 (PJH)
DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  that includes access to specialized instruction and services that are individually designed for the

2  student and provide educational benefit.  *Id.* at 201.  As long as a school district provides a student

3  with a FAPE, it can select the methodology for its program and services.  *Id.* at 208.  If the

4  District's program was designed to meet the student's unique needs, provide some educational

5  benefit, comport with the IEP, and offered in the least restrictive environment, the District offered

6  a FAPE, even if the parents' preferred program may have resulted in greater benefit.  *Rowley*, 458

7  U.S. at 207-208; *Gregory K.*, 811 F.2d at 1314.

8       **B.**    **All Claims Related to Actions Taken Prior to October 6, 2003 Are Barred By**

9           **The Applicable Statute of Limitations.**

10       The Code of Federal Regulations mandates that any matter relating to the identification,

11  evaluation or educational placement of a child with a disability or the provision of a FAPE be

12  raised at a due process hearing within a specified time from the date the claimant knew or should

13  have known about the alleged action that forms the basis of the complaint.  34 C.F.R.

14  §300.507(a)(2).  This rule has also been adopted by the California Education Code in section

15  56505(l).

16       Currently, and since October 9, 2006, the statute of limitations for IDEA claims is two

17  years.  However, prior to October 9, 2006, and at the time Plaintiff initiated his due process action,

18  the period was three years.  *See also,* Cal.Educ.Code §56505(n).  Thus, Plaintiff was limited to

19  asserting claims arising out of conduct subsequent to October 6, 2003.  [AR 2388 (n.3).]

20       **C.**    **The District Did not Fail to Assess Student Student's Behavioral Needs (Issue**

21           **1A)**

22       When a child's behavior impedes his learning, or that of others, the IEP team is required to

23  consider appropriate, "strategies, including positive behavioral interventions, strategies, and

24  supports to address that behavior."  20 U.S.C. §1414(d)(3)(B)(i); 34 C.F.R. §300.346(a)(2)(i);

25  Cal.Educ.Code §56341.1(b)(1).  To determine the appropriate strategies and interventions, school

26  districts may conduct a specific assessment known as a Functional Behavioral Assessment

27  ("FBA").  However, if the District can adequately identify appropriate strategies and supports to

28  address behavior that impedes a child's learning, the assessment is not required.  Only when

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    maladaptive behavior results in serious interference, such as disciplinary removals, must a school

2    district conduct an FBA. 20 U.S.C. § 1415(k)(1)(D); 34 C.F.R. §300.520(B)(1)(i).

3                    **1.    *The 2003-2004 School Year (Second Grade).***

4            ALJ Johnson held that Plaintiff exhibited serious, worsening maladaptive behaviors during

5    his second grade year which should have triggered an FBA by the District.  [AR 2442 (¶25.)]  The

6    ALJ fashioned a remedy and the District does not appeal this finding.

7                    **2.    *The 2004-2005 School Year (Third Grade).***

8            During the third grade, Plaintiff's maladaptive behaviors improved and his behavioral

9    needs centered on adult supervision for the completion of classroom work.  [AR 2396 (¶¶30, 32);

10   3172.]  Thus, under the criteria discussed above, the ALJ correctly concluded that the criteria for

11   an FBA no longer existed in the third grade year.  [AR 2396-2397 (¶¶32, 35.)]  Further, although

12   not obligated to, the District offered Plaintiff an FBA at the May 25, 2005 IEP.  [AR 1151:4-15;

13   2397 (¶33).]

14           In offering the FBA, the District failed to provide Mother with the assessment plan within

15   statutory time requirements.  However, because the FBA was not legally required at this point in

16   time, the ALJ correctly concluded that  the procedural violation did not result in a substantive

17   denial of FAPE.  [AR 2397 (¶35).]   A procedural violation only amounts to a denial of FAPE

18   where it impedes the student's right to a FAPE or causes a deprivation of educational benefits.  20

19   U.S.C. §1415(f)(3)(E); Cal.Educ.Code §56505(f)

20                   **3.    *The 2005-2006 and 2006-2007 School Years (Fourth and Fifth Grades).***

21           ALJ Johnson concluded that, once the District performed the FBA at the beginning of the

22   fourth grade, there was no need for further behavioral assessments during the fourth and fifth

23   grade years.  [AR 2442 (¶27).]  Additionally, Plaintiff's behavior in the fourth and fifth grades

24   continued to be devoid of serious maladaptive and disruptive behaviors.  [AR 1548:24-1549:4;

25   2398 (¶¶36, 38) ("Student made significant progress in eliminating and reducing maladaptive

26   behaviors.").]  Instead, Plaintiff continued to exhibit problems with motivation and completing

27   work which his BSP's addressed.  [AR 2398 (¶¶36, 38); 3172; 3269.]  Finally, for both years, there

28   was no evidence presented at hearing that either Plaintiff's Mother or teachers requested a

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

1  behavioral assessment during this time period.  [AR 2398 (¶¶37-38); *see also* Cal.Educ.Code

2  §56381(a)(1) [assessments shall be performed every three years unless waived or at request of

3  parents or school district personnel.]  Thus, the ALJ properly concluded that the District did not

4  fail to assess Plaintiff's behavior during these school years.

5  **D.  The District Did Not Fail to Assess Student's Communication, Sensory and**

6  **Motor, Attention Reading and Academic, Auditory Processing and Social**

7  **Skills Needs (Issue 1C)**

8  The IDEA and California Education Code require that school districts perform assessments

9  of all students with a suspected disability in all areas of suspected disability.  20 U.S.C. §

10  1414(a)(2) and (3); Cal.Educ.Code §§56320(e) and (f).  Once an assessment is conducted, and not

11  more frequently than once a year, a student must be reassessed when a District determines that the

12  education program or related services are not meeting the student's needs.  Cal.Educ.Code

13  §56381(a)(1).  Moreover, while the California Education Code supports reassessments every three

14  years, the district and parents can agree to forego reassessment if no additional data is needed to

15  determine a pupil's eligibility or meet his needs.  Cal.Educ.Code § 56381(d); 34 C.F.R.

16  §300.533(c).  Finally, assessments may also be conducted more frequently than every three years

17  if the IEP team believes that the functional performance warrants it or if the student's parents or

18  teacher requests it.  Cal.Educ.Code § 56381(a)(1).  Parents must consent to all assessments.

19  Cal.Educ.Code §56381(a)(2).

20  **1.  *Communication Needs – Second, Fourth and Fifth Grade School Years***

21  Plaintiff's 2002 triennial review included an assessment in the area of speech and

22  language.  [AR 3442-3477.]  Plaintiff was provided two to three communication goals and speech

23  and language services in his March 20, 2002, March 26, 2003 and May 5, 2004 IEP's.  [AR 3333-

24  3336; 3357-3359; 3370-3371; 3373.]

25  In Dr. Nunno's 2004 assessment, he raised no criticism of the District's previous

26  assessment in communication.  [AR 3425-3435.]  The District then conducted a triennial

27

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

1  reassessment in March 2005 and also considered the findings of Dr. Nunno.[5]  [AR 1352:10-17;

2  1353:6-1355:22; 3436-3439.]  Plaintiff pointed to no evidence at hearing which suggested that an

3  additional communication assessment was required during the other school years. Moreover,

4  although she disputed the manner in which the District was addressing Plaintiff's communication

5  needs, Mother never requested reassessment.  [AR 1816:18-1817:3; 2401 (¶¶ 46-47).]

6              **2.      *Sensory and Motor Needs - Second, Fourth and Fifth Grade School Years***

7              Plaintiff's 2002 triennial review included an assessment in the area of sensory and motor

8  skills.  [AR 2401 (¶50); 3442-3477.]  In June 2004, the District received the private assessment of

9  Dr. Nunno which reported balance/coordination problems, together with a need for services.  [AR

10 2401 (¶51); 3432-3433; 3435.]  The District then performed a new OT assessment in February

11 2005 and thereafter provided OT services to address Plaintiff's deficits.  [AR 2401-2402 (¶52);

12 3167, 3171; 3415-3420.]  The ALJ found the 2005 OT assessment to be deficient and ordered a

13 new comprehensive OT assessment of Plaintiff.  [AR 2401-2402 (¶52).]  However, the ALJ found

14 that Plaintiff had introduced no evidence to support a finding that the District failed to assess

15 Plaintiff in the area of sensory and motor needs based either on a change in circumstances or a

16 parent request.  Thus, no additional remedy is warranted.

17             **3.      *Attention, Reading, and Academic Needs - Third, Fourth and Fifth Grade***

18                      ***School Years***

19             The District's original comprehensive assessment covered the issues of attention, reading

20 and academics.  [AR 3442-3468.]  Thereafter, the District consistently addressed Plaintiff's needs

21 in this area through IEP goals, supports and modifications.  [AR 2402 (¶54); 3096; 3158-3162,

22 3168; 3250; 3252-3255; 3320; 3330-3331, 3337, 3354-3355.]

23             The ALJ also properly disregarded Dr. Nunno's conclusion that Plaintiff had a reading

24 disorder as it was not backed up in any meaningful way.  [AR 2402 (¶54).]  This conclusion was

25 _____

26 [5] ALJ Johnson determined that the assessment which resulted in reduced speech and language
27 services for fourth grade was inappropriate and Mother was reimbursed for the equivalent amount
   of hours paid to a private therapist.  The District does not appeal this determination.

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California  90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  contradicted by the statements that "[A.B.] reads well and with comprehension" and "is doing well

2  academically." [AR 3433; 3435.] Dr. Nunno also concluded that Plaintiff did not have a

3  diagnosis of ADHD. [AR 34273428.] Thus Plaintiff presented no evidence, such as a change

4  in Plaintiff's performance or needs, which showed that a reassessment in the areas of attention,

5  reading or academics was warranted. [AR 2042 (¶54).]

6              **4.    *Auditory Processing Needs - Fourth and Firth Grade School Years***

7              Plaintiff's private assessor, Dr. Nunno, concluded that Plaintiff's "auditory

8  processing/sequential processing is relatively weak and problematic." [AR 3432] Considering

9  this assessment, the District performed its own auditory processing assessment of Plaintiff in

10  March 2005, which confirmed a deficit. [AR 1131:21-1132:18; 2408-2409; 2832-2835; 3158

11  (¶82).] Plaintiff presented no evidence that this assessment was deficient or that an additional

12  auditory processing assessment should have been conducted at another time. [AR 2408-2409

13  (¶¶81-84).]

14              **5.    *Social Skills Needs – All Years***

15              The District initially assessed Plaintiff in the area of social skills as part of his 2002

16  triennial assessment. [AR 2403 (¶60); 3442-3468.] The District then addressed Plaintiff's social

17  skills deficits in the subsequent IEP's, including social skills goals and objectives. [AR 2403

18  (¶61); 3096; 3163-3164; 3332; 3356.] The IEP team and Plaintiff's teachers also considered

19  additional information and materials from Mother. [AR 1018:17-1020:5; 3341.] Plaintiff adduced

20  no evidence at hearing to show that facts warranted a reassessment or that she had asked the

21  District to perform one. [AR 2404 (¶¶62-63.]

22       **E.    The District Conducted an Appropriate Auditory Processing Assessment of**

23              **Plaintiff (Issue 2)**

24              Plaintiff was administered an assessment by District special education teacher Ashley

25  Emling, who thereafter issued a report dated March 7, 2005. [AR 1131:21-1132:18; 2408-2409;

26  2832-2835.] The results of the assessment showed some difficulty with auditory information and,

27  when taken together with Plaintiff's private assessors report, the IEP team concluded that he had a

28  deficit. [AR 2835; 3158.]

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

1   Dr. Guterman, a neuropsychologist who privately assessed Plaintiff in 2005, challenged

2   the appropriateness of the District's assessment, pointing to a typographical error and noting that

3   Ms. Emling did not mention the discrepancy between Plaintiff's score and his cognitive ability

4   scores.[6]  [AR 518:16-519:4; 543:4-8; 2877-2878.]  ALJ Johnson properly found these criticisms to

5   be insignificant.  [AR 2409 (¶83).]  Here, the ALJ's credibility findings should be given due

6   deference.  *Amanda J. v. Clark County Sch. Dist.,* 267 F.2d 877, 889 (9th Cir. 2001) [the

7   administrative hearing officer "who receives live testimony is in the best position to determine

8   issues of credibility"); *see, also, Zoltanski v. F.A.A.,* 372 F.3d 1195, 1201 (10th Cir. 2004) ["[an

9   administrative] law judge is in the best position to observe the demeanor of witnesses at a hearing,

10  and, as a result, the [ALJ's] credibility findings deserve special deference"].  Plaintiff presented no

11  other evidence to challenge the validity of the assessment.

12  **F.     The District Developed Requisite Annual Goals in the Areas of**

13  **Communication, Sensory and Motor, Attention, Reading, Academics,**

14  **Auditory Processing and Social Skills (Issue 4A)**

15  The IDEA requires that an IEP include a "statement of measurable annual goals" which

16  allows the "child to be involved in and make progress in the general education curriculum and

17  meet each of the child's other educational needs that result from the child's disability." 20 U.S.C.

18  § 1414(d)(1)(A)(i)(II); *see also* Cal.Educ.Code § 56345(a)(2).  Further, the goals must be

19  measurable and include specific short-term objectives, or benchmarks, towards which the student

20  can work.  Finally, the IEP should accurately and completely describe the student's current

21  performance in all areas of his education that are affected by his disability.  Often this is done

22  through a discussion of "baseline data" which can be established through a combination of

23  assessment data and observational information regarding the student's performance in the

24  classroom.  *See, e.g. French v. Omaha Public Schools,* 766 F.Supp. 765, 794-796 (Neb. 1991);

25  _____

26  [6] Under federal regulations and applicable California law, a specific learning disability, which is a

27  category for eligibility, can be established by showing, in part, that a student's cognitive abilities
    and performance are greatly discrepant. 34 C.F.R. § 300.541; Cal. Educ. Code § 56337(b).

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1 | *B.B. v. Hawaii Dept. of Educ.,* 483 F.Supp. 1042, 1047 (D. Hawai'i 2006).

2 | In her decision, ALJ Johnson held that the 2005 goals in the area of communication were

3 | inadequate. Specifically, she found that goals 6 and 7, which called for improvement in receptive

4 | language and pragmatic skills to a more age appropriate level, were not sufficiently measurable

5 | because they omitted the requisite baseline data. [AR (¶¶ 114, 116); 3165-3166.]

6 | However, despite this finding, ALJ Johnson held that Plaintiff was not denied a FAPE

7 | because he did not suffer a loss of educational benefit, due to the efforts made by the District, with

8 | the assistance of Mother, to ensure Plaintiff's progress. [AR 2444 (¶37).]; *see also,* 20 U.S.C.

9 | §1415(f)(3)(E); Cal. Educ. Code § 56505(f) [a procedural violation amounts to a denial of FAPE

10 | only where it impedes student's right to a FAPE or causes a deprivation of educational benefits.]

11 | By contrast, ALJ Johnson properly determined that the 2004 and 2006 goals were "in

12 | compliance with the law, in that they were measurable, designed to meet Student's needs related

13 | to his disability, and were designed to enable Plaintiff to be involved in and make progress in the

14 | general education curriculum. [AR 2444 (¶¶ 36, 38); 3252-3257; 3330-3335.] Plaintiff failed to

15 | adduce any evidence which supported a finding that the goals were inadequate. [AR 2416 (¶116).]

16 | **G.    The District provided Plaintiff with Appropriate DIS, Services and Supports**

17 | **of Social Skills Training, Speech and Language Therapy, Behavioral Support,**

18 | **A Trained Aide, Occupational Therapy, Music Therapy and Academic Skills**

19 | **Intervention (Issue 4B)**

20 | In providing a "basic floor of opportunity" under the IDEA, Districts are required to

21 | include access to specialized instruction and services that are individually designed for the student

22 | and provide educational benefit. *Rowley* at 201. The term "related services," referred to as

23 | designated instruction and services ("DIS") in California, includes transportation and such

24 | developmental, corrective, and "other supportive services… as may be required to assist a child

25 | with a disability to benefit from special education…." 20 U.S.C. § 1401(26); Cal. Educ. Code

26 | §56363(a).

27 | On this issue, the ALJ found that the District had failed to provide appropriate services in

28 | three areas – speech and language during the 2005-2006 school year, behavior support in 2004 and

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    a full time aide for five months during 2003-2004.  [AR 2445 (¶¶ 40-42).]  In all instances, the

2    ALJ awarded Plaintiff compensatory relief and the District does not appeal this ruling.

3        In all other areas, however, there was no evidence presented to show that the District had

4    failed to provide appropriate services to meet Plaintiff's unique needs.  [AR 2445-2446 (¶¶ 39

5    [social skills], 43 [OT], 44 [music therapy], 45 [academics]).]  For example, some of the myriad

6    services provided to Plaintiff included inclusion teachers, paraprofessionals, speech and language

7    therapy, and occupational therapy.  [AR 2419 (¶¶128-130); 2420 (¶135); 2422 (¶144-145); 2423

8    (¶147); 2843-2844; 2848; 3098; 3127; 3129; 3167-3168; 3171; 3258-3259; 3268; 3336-3340;

9    3359-3362.]  Since the third grade, Plaintiff has progressed either at or above grade level.  He

10   consistently "performed competently and made educational progress . . . ."  [1034:15-1035:8;

11   1138:12-24; AR 2424 (¶154).]  After second grade, his maladaptive behaviors had improved and

12   BSP's were in place to support and promote his improvement.  [AR 2396 (¶30, 32); 3172; 3269.]

13   Thus, other than as noted by ALJ Johnson, the various IEP's provided proper and sufficient

14   services to meet Plaintiff's unique needs and allow him to benefit from his education.

15   **H.    The District Made a Clear Written Offer of Placement For Plaintiff's Speech**

16        **and Language Therapy and Integrated Play Groups in Second Grade and for**

17        **ESY's 2004, 2005 and 2006 (Issue 4C)**

18        As a final procedural complaint, Plaintiff asserted that the District failed to make a clear

19   written offer of placement for speech and language therapy, play groups, and ESY programs.  A

20   school district must make a formal written offer in the student's IEP that clearly identifies the

21   proposed special education program and related services. *Union Sch. Dist. v. Smith,* 15 F.3d 1519,

22   1526 (9th Cir. 1994); 20 U.S.C. §1415(b)(3)(A).

23        The requirement of a formal, written offer creates a clear record that will do much
24        to eliminate troublesome factual disputes many years later about when placements
         were offered, what placements were offered, and what additional educational
25        assistance was offered to supplement a placement, if any.

26   *Id*.  Formal written offers include the documentation of offers in the student's IEP.  *N.R. ex rel.*

     *B.R. v. San Ramon Valley Unified Sch. Dist.,* 2007 WL 726232, *16 (N.D.Cal. January 25, 2007),
27
     *citing Union Sch. Dist.,* 15 F.3d at 1526.  In each instance raised by Plaintiff, ALJ Johnson
28

1    concluded that the District made the written offer or its failure to do so was harmless error as

2    Mother was fully aware of the terms the offer intended.

                    **1.    *Speech and Language and Integrated Play Groups.***

4            The ALJ concluded that these issues were barred by the applicable statute of limitations as

5    the offers were made in March 2003 and must be evaluated as of the time they were made.  [AR

6    2426 (¶¶ 165-166).]  However, should the Court review the merits of these claims, the District

7    contends that the record shows it made a clear written offer in the March 26, 2003 IEP for speech

8    and language therapy and integrated play groups.

9            The 2003 IEP called for ninety (90) minutes per week of speech therapy, delivered through

10   a combination of direct service and consultation services both in the classroom and out.  [AR

11   3359.]  Further, this range of services was deemed appropriate by the IEP team, which included

12   the District's speech and language pathologist, Floria Fung.  Ms. Fung had specific qualifications

13   to address the speech and language needs of children with autism and was retained by Plaintiff's

14   mother to work with him privately at home.  [AR 113:7-14; 223:14-225-15; 273:1-22; 362:8-

15   363:8.].  Thus, the ALJ could have appropriately concluded that a clear written offer for speech

16   and language was made in the 2003 IEP.

17           Similarly, while Plaintiff's mother requested formal integrated play groups, as a form of

18   social skills therapy, in the second grade, the IEP team did not include this in the IEP.  [AR 89:2-

19   15; 886:12-18.]  Providing no expert testimony that Plaintiff required formal play groups, Mother

20   simply testified that she "wanted the school to provide the kind of interventions to help him to

21   relate to his classmates, to interact with other children in his school, especially in the classroom or

22   in the playground or in the cafeteria."  [AR 886:14-18.]  And, in fact, the IEP provided a "social

23   interaction" goal where he would be "given outdoor and indoor play opportunities [to] use socially

24   and age-appropriate behaviors to interact with peers."  [AR 3356.]  It also included a

25   communication goal that included improving his social language skills when interacting with his

26   peers.  [AR 3358.]  Finally, Plaintiff's teachers in subsequent years worked on Plaintiff's social

27   skills, even incorporating suggestions from Plaintiff's private therapist.  [AR 1011:2-12; 1018:17-

28   1020:5; 1110:22-1111:7; 1164:16-20.]  As long as a school district provides a student with a

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California  90048
Main: 323-330-6300 • Fax: 323-330-6311

1    FAPE, it can select the methodology for its program and services.  *Rowley,* 458 U.S. at 208.  Thus,

2    the ALJ appropriately concluded that the District did not fail to make a clear written offer for

3    integrated play groups as this service was not necessary.

4                    **2.    *The ESY Programs***

5          Students receiving special education and related services may be entitled to receive a

6    program for the "extended school year" (ESY), identified as the time period between the ending

7    and beginning of the regular school term.  34 C.F.R. § 300.106(b)(1)(i).[7]  ESY services are

8    necessary only if the IEP team finds, on an individual basis, that these services are necessary to

9    provide a FAPE.  34 C.F.R. § 300.106(a)(2).[8]  "ESY Services are only necessary to a FAPE when

10   the benefits a disabled child gains during a regular school year will be significantly jeopardized if

11   he is not provided with an educational program during the summer months."  *J.H. v. Henrico*

12   *County School Board,* 326 F.3d 560 (4th Cir. 2003).  The content of ESY services are governed by

13   the necessity to prevent skills or benefits already accrued from the prior year from facing

14   significant jeopardy due to regression or lack of retention. *McQueen v. Colorado Springs School*

15   *District No. 11,* 419 F.Supp.2d 1303, 1308-1310 (D. Colo. 2006), *reversed and remanded on other*

16   *grounds*.  Thus, while there is no requirement that the ESY program be identical to the school year

17   program, the program should include whatever is necessary to provide the student with a FAPE.

18                    (a)    ESY 2004.

19         For ESY 2004 , the District offered Plaintiff a placement in a special education day class.

20   [AR 3336.]  District witnesses testified that Plaintiff offered this available program to best provide

21   Plaintiff consistency in his educational program. [AR 1245:5-1246:4; 1247:2-1247:8; 1248:21-

22   1249:10; 1253:316; 1270:10- 01272:7; AR 2426 (¶ 168); 3336.]  Further, the District did not run a

23   general education summer school at that time.[9]  [AR 01133:14-16.]  While the specifics of the

24

25   _____

     [7] Formerly 34 C.F.R. § 300.309(b)(1)(i).  The regulations discussed in this section were
26   renumbered effective August 14, 2006.

27   [8] Formerly 34 C.F.R. § 300.309(a)(2).

28   [9] Because an ESY program need not be identical to the school year program, the ALJ properly
     (footnote continued)

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  program were not documented in the IEP, they were discussed at the team meeting and Mother

2  testified that she understood the terms of the offer.  [AR 131:6-132:19; 829:13-840:15; 1270:10-

3  17.]  Mother then plainly rejected the offer, both at the IEP and later in correspondence, advising

4  that she would be sending Plaintiff to Quest Therapeutic camp.  [AR 134:16-135:13; 1133:17-

5  1134:2; 2824; 3325.]  Thus, based on the determination that Mother understood the offer being

6  made by the District, ALJ Johnson correctly concluded that the District did not deny FAPE by

7  failing to record the programmatic details of Plaintiff's 2004 ESY offer in the IEP.  [AR 02426 (¶

8  168-170); *see also,* 20 U.S.C. §1415(f)(3)(E); Cal. Educ. Code § 56505(f) [a procedural violation

9  alone cannot amount to a denial of FAPE without deprivation of educational benefit.]

10                    (b)    ESY 2005.

11       The initial annual IEP in March 2005 again provided that Plaintiff would be entitled to an

12  ESY program but without indicating any specifics.  [AR 3167.]  However, in the subsequent, May

13  25, 2005, IEP meeting, the District noted that the ESY "placement [would be] in a 4 hour a day, 5

14  days a week for 4 weeks . . . at Lafayette Elem. in a special day class for 3rd grade."  [AR 3271-

15  3272.]  The offer went on to clarify that there was no general education summer school option

16  and, therefore, all special education students who normally attend a general education classroom

17  would be placed in a special day class at the appropriate grade level.  [AR 3272.]  Additional

18  specifics about the services and supports that would be provided were also noted.  Thus, a formal

19  written offer for Plaintiff's 2005 ESY program was made by the District.  [AR 2427 (¶173).][10]

20                    (c)    ESY 2006.

21       The March 2006 IEP indicated that Plaintiff would be provided an ESY program but

22  omitted any details.  [AR 3258.]  As with previous years, the District's offer was for a special

23  

24  _____

25  held that the District was not required to offer Plaintiff a general education summer school class,
   where one did not exist, simply because this was his placement during the regular school year.
26  [AR 02426 (¶ 167).]

27  [10] Again, Mother exercised her option to reject the offer and enrolled Plaintiff at Quest Camp.
   [AR 192:14-21; 3203.]

28  

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  education classroom, which was explained to Mother at the IEP.  Mother rejected the offer in

2  correspondence.  [AR 2900-2901]  The District then confirmed its offer in writing in a letter to

3  Mother.  [AR 3196.]  Again, as Mother understood the offer made at the IEP, and it was

4  confirmed prior to the ESY term was set to begin, the failure to document the offer in writing at

5  the original IEP, did not deprive Plaintiff a FAPE.   [AR 2428 (¶177).]

6  **I.      The District Did Not Fail To Provide Prior Written Notice of Refusals to**

7  **Assess or to Initiate or Change Placement (Issue 4D)**

8  A school district is required to provide "prior written notice" to the parents of a special education

9  student whenever it proposes to initiate a change or refuses to initiate a change to the

10 identification, evaluation or educational placement of the child or the provision of FAPE to the

11 child.  (20 U.S.C. §1415(b)(3); Cal.Educ.Code §56500.4.)  The notice must provide the following:

12    (A) a description of the action proposed or refused by the agency;
      (B) an explanation of why the agency proposes or refuses to take the action and a
13    description of each evaluation procedure, assessment, record, or report the agency used as
      a basis for the proposed or refused action;
14    (C) a statement that the parents of a child with a disability have protection under the
      procedural safeguards of this subchapter and, if this notice is not an initial referral for
15    evaluation, the means by which a copy of a description of the procedural safeguards can be
      obtained;
16    (D) sources for parents to contact to obtain assistance in understanding the provisions of
      this subchapter;
17    (E) a description of other options considered by the IEP Team and the reason why those
      options were rejected; and
18    (F) a description of the factors that are relevant to the agency's proposal or refusal.

19 20 U.S.C. §1415(c)(1).

20       Importantly, ALJ Johnson noted that Plaintiff failed to specifically identify which

21 particular "refusals" were at issue in this case.  [AR 2428 (¶179)] Therefore, he District will only

22 briefly touch on this issues here and more fully respond to Plaintiff's allegations on this subject as

23 presented in his motion for summary judgment.

24       **1.    *ESY Placements at Quest Camp***

25       Parent provided written notice of Student's placement at Quest Camp for the summers of

26 2004, 2005, and 2006.  [AR 2824; 2900-2901; 3203.]  Because Mother discussed Plaintiff's ESY

27 placement each year at the IEP team meeting, and the District's offer was documented, the ALJ

28 concluded that further written refusal was not necessary.  [AR 2446-2447 (¶49-50.)]  However for

1   2005 and 2006, Mother also advised of additional serviced to be provided during the ESY period

2   and her intent to seek reimbursement.  These items were not discussed at the IEP meeting and,

3   therefore, written refusal should have occurred.  [AR 2447 (¶50).]  However, given that Plaintiff

4   was not entitled to those services to receive FAPE, the ALJ properly held that the procedural

5   violation alone was harmless error.  20 U.S.C. §1415(f)(3)(E); Cal. Educ. Code § 56505(f).

6              **2.    *2005 Request for a Neuropsychological Assessment***

7          During Plaintiff's May 6, 2005, IEP, Mother requested a neuro-psychological evaluation.

8   [AR 3278.]  The District responded, in writing, that it would be provide an assessment plan for a

9   comprehensive psycho-educational evaluation instead.  The letter also cited Mother's procedural

10  rights.  [AR 3199-3200.]  Thus, ALJ Johnson correctly concluded that the District provided

11  adequate prior written notice of its refusal for a neuropsychological assessment.  [AR 187.]

12

13  **V.    PLAINTIFF OBTAINED AN ADEQUATE AND APPROPRIATE REMEDY IN**

14        **THE DUE PROCESS PROCEEDING**

15         As part of the due process proceeding, Plaintiff sought approximately $120,000 in

16  reimbursement for privately procured services and related transportation.  Further, because

17  Plaintiff prevailed on some issues, the ALJ awarded reimbursement which was appropriate and

18  necessary to remedy the specific denials of FAPE which had occurred.  However, the additional

19  remedies were not warranted and the District requests that this Court uphold the ALJ's order.

20        **A.    <u>The Legal Standard for Parental Reimbursement and Fashioning Relief for</u>**

21             **<u>Denials of FAPE.</u>**

22          Parents may be entitled to reimbursement for the costs of private placement or educational

23  services that they have procured for their child when the school district has failed to make FAPE

24  available to the student in a timely manner prior to the enrollment and/or provision of private

25  services, and the private placement or services were appropriate.  *Sch. Comm. of Burlington v.*

26  *Dep't of Educ. of Mass.*, 471 U.S. 359, 369-371, 105 S.Ct. 1996, 85 L.Ed.2d (1985); 20 U.S.C. §

27  1412(a)(10)(C).  While parents are not held to the same standard of appropriateness as school

28  districts, they must demonstrate that "the education provided by the private school is reasonably

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    calculated to enable the child to receive educational benefits." *Florence County Sch. Dist. v.*

2    *Carter*, 510 U.S. 7, 11, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).  Reimbursement may be reduced

3    or denied entirely if the parents fail to provide proper notice of their intent to place their child in a

4    private school and/or provide private educational services.  20 U.S.C. § 1412(a)(10)(C)(iii); 34

5    C.F.R.§ 300.148(d); Cal. Educ. Code § 56176.  Such notice must be provided at the most recent

6    IEP team meeting that the parents attended prior to the removal of the child from the public school

7    or by written notice ten business days prior to the removal of the child.  *Id*.

8       Furthermore, there is no mandate that a court must order reimbursement after finding that

9    FAPE was not made available; rather, the use of the permissive term "may" suggests that the

10   decision is within a court's discretion.

11      [W]e note that once a court holds that the public placement violated IDEA, it is
         authorized to "grant such relief as the court determines is appropriate."  20 U.S.C. §
12       1415(e)(2).  Under this provision, "equitable considerations" are relevant in
         fashioning relief," *Burlington*, 471 U.S. at 374, and the court enjoys "broad
13       discretion" in doing so.  *Id*. at 369.  Courts fashioning equitable discretionary relief
         under IDEA must consider all relevant factors including the appropriate and
14       reasonable level of reimbursement that should be required.  Total reimbursement
         will not be appropriate if the court determines that the cost of private education was
15       unreasonable.

16   *Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 11, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

17      In this case, Mother provided a myriad of private services to Petitioner without the

18   required notice to the District.  These services far exceeded the legal standard articulated in

19   *Rowley* and were clearly provided as maximum interventions to help Plaintiff excel.  [AR 350:10-

20   351:6.]  While parent's wishes are understandable, IDEA does not require states to develop IEP's

21   that "maximize the potential of handicapped children."  *Rowley*, 458 U.S. at 189; *Walczak v.*

22   *Florida Union Free Sch. Dist.*, 142 F.3d 119 (2d Cir. 1998); *Kerkham v. McKenzie,* 862 F.2d 884,

23   886 (D.C. Cir. 1988) ("proof that loving parents can craft a better program than a state offers does

24   not, alone, entitle them to prevail under the Act").

25              **1.    *Plaintiff Was Entitled to Reimbursement for One Summer Only of Quest***

26                      ***Therapeutic Camp Due to the District's Untimely Behavioral Assessment.***

27      ALJ Johnson carefully analyzed whether reimbursement was necessary to remedy the

28   instances where she held that the District had denied FAPE.  This included the failure to provide

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    Plaintiff with a functional behavioral assessment during his second grade year when his classroom

2    behaviors appeared to be worsening.  [AR 2442 (¶25.)]  Thus, the ALJ found it appropriate for the

3    District to reimburse Plaintiff's mother for sending him to Quest Camp in the summer of 2004

4    because: (a) the District failed to assess Student's behavior needs in spring 2004; and (b) the

5    District failed to conduct an FBA to find effective modifications to Student's BSP until the fall of

6    2005.  [AR 2392 (¶12); 2393 (¶ 16-17); 2394 (¶22); 2395-2396 (¶ 24-26); 2432 (¶196).]

7        Quest Camp is a behavioral program which included therapies, activities, and a behavioral

8    contract that encouraged positive behavior from Plaintiff.  Moreover, ALJ Johnson noted that the

9    Summer 2004 program effected a material, significant reduction in Plaintiff's negative behaviors

10    and Plaintiff "had undergone a dramatic improvement" when Student he returned to school that

11    Fall.  [AR 1652:4-1655:15; 2432 (¶¶194-196); 2827-02829.]

12        The ALJ also confirmed that Parent provided adequate notification to the District of her

13    intent to place Student at Quest Camp, prior to his enrollment, as required for reimbursement. [AR

14    2429 (¶181); AR 2824].  Because this written notice was given on June 9, 2004, more than 10

15    days prior to Student's first day at Quest Camp on June 21, 2004 the District was given proper

16    notice of Parents' intent to place Student at Quest Camp for summer 2004.  20 U.S.C. §

17    1412(a)(10)(C)(iii); 34 C.F.R. § 300.148(d); Cal. Educ. Code § 56176.

18        However, Plaintiff is not entitled to reimbursement for the 2005 or 2006 Quest summer

19    programs or the after-school program in which he participated.  [781: 11-19; 2346:20-2347:9;

20    2355:22-2356:2]  For Plaintiff's third, fourth and fifth grade years, and related ESY's, Plaintiff

21    failed to show that the District did not meet his behavioral and social skill needs to enable him to

22    obtain educational benefit.  [AR 2433 (¶198)].  Thus, the Quest Camp behavioral program was not

23    necessary to ensure that Plaintiff received a FAPE and reimbursement was appropriately denied.

24    [AR 2433 (¶198)].

25          **2.**    ***Plaintiff Was Entitled to Reimbursement for Seventeen (17) Hours of***

26            ***Private Speech and Language Therapy***

27        ALJ Johnson held that the District had denied Plaintiff FAPE when it reduced his speech

28    and language therapy services from his March 23, 2005 IEP through March 2006 from 90 minutes

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

1   per week to approximately 60 minutes per week.  [AR 02420 (¶ 135); AR 02421 (¶ 136-137); AR

2   3167; 3327].  Accordingly, she awarded reimbursement for 17.5 hours of therapy, the total

3   reduction, with private therapist, Floria Fung.  [AR 2421 (¶137); 2433 (¶199); AR 3167; 3327.]

4           During the relevant time period, Ms. Fung provided Plaintiff with extensive private speech

5   and language services.  However, in order to compensate Plaintiff for the specific, measurable

6   denial of FAPE at issue, Judge Johnson reasonably awarded reimbursement for just 17.5 hours.  In

7   doing so, the ALJ was well within her broad discretion to reduce the amount of total

8   reimbursement being claimed by Plaintiff, to cover the limited deficit of hours for the time period

9   in question, and no more, based on equitable considerations.

10          **3.      *Plaintiff Is Not Entitled to Reimbursement for Social and Play Skills*

11                   *Therapy***

12          Plaintiff sought reimbursement for the costs of social skills therapy provided by a private

13  therapist, Dominique Baudry, from September 2004 to December 2005.  The ALJ found that

14  Plaintiffs were not entitled to such reimbursement because Plaintiffs failed to establish that the

15  District's second, third and fourth grade educational programs during those school years were

16  insufficient to meet his social skills needs, such that additional services were required for Student

17  to obtain educational benefit.  [AR 2434 (¶204); (AR 2403-2404 (¶¶59-63); AR 2411-2413 (¶ 99-

18  104); AR 2415-2418 (¶¶110-123); AR 2418-2420 (¶¶126-135)].

19          Here, the ALJ correctly applied the standard for parental reimbursement by denying

20  parental reimbursement for private services aimed at social skills when such services were

21  obtained during a time period when FAPE was provided with regard to Student's social skills

22  needs.

23          **4.      *Plaintiff Is Not Entitled to Reimbursement for Ben Kaufman's Behavior*

24                   *Consultation***

25          Plaintiff also sought reimbursement for a behavioral consultation in spring 2004, with Ben

26  Kaufman, a behaviorist to which Plaintiff's mother was referred by Ms. Wong, Plaintiff's second

27  grade inclusion teacher.  Specifically, Mother asked for the referral to address behavioral problems

28  at home and she agreed to provide the referral with her understanding that the District was not

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    responsible for providing home therapy services.  [AR 2434 (¶205); 1424: 8-17; 1424:8-1425:5.]

2    Mother met with Mr. Kaufman one time, at her home for one consultation, and paid him $60.  [AR

3    153: 22-25; 154: 17-29; 157: 1-8; 2434 (¶206) 2975.]

4          At hearing, Plaintiff's mother asserted that Mr. Kaufman was sent by the District.

5    However, the ALJ found her to be not credible in this assertion, as her attitude and demeanor

6    during this testimony was hesitant and imprecise.  [AR 153: 9-21; 154: 9-16; 2434 (¶206).]

7    Further, by contrast, the ALJ found Ms. Wong's testimony regarding her explanation to Parent to

8    be persuasive.  [AR 2434 (¶206).][11]

9          ALJ Johnson concluded that Mr. Kaufman's consultation services were always intended

10   and understood to be purely private services to address Student's behaviors at home and not in any

11   educational setting.  Accordingly, the ALJ properly found that Plaintiff had failed to establish a

12   legal basis for reimbursement.  [AR 2434 (¶206).]

13                    **5.     *Plaintiff Was Not Entitled To Reimbursement for Academic Services***

14                             ***Received from Lindamood-Bell***

15         Plaintiff received private services from Lindamood-Bell in 2005 and 2006 for academic

16   skill intervention.  [AR 685; 2958; 2424-2425 (¶¶155-162); 2435 (¶211).]  However, during this

17   time, Student was performing academically at grade level in fourth and fifth grade. [AR 2424

18   (¶¶154-157); 2435 (¶211); 2863; 3250.]  Thus, the ALJ concluded that Student had failed to

19   establish that the District's program during this time period was inappropriate or denied him

20   educational benefit, warranting reimbursement.  [AR 2435 (¶211).]  ALJ Johnson correctly

21   applied the standard for parental reimbursement by denying reimbursement for private services

22   aimed at academics when such services were obtained during a time period when the District

23   provided a FAPE with regard to Student's academic needs.

24

25   _____

26   [11] This Court should give due deference to ALJ's assessment of the quality of the testimony of
     these witnesses and their relative credibility.  *Amanda J. v. Clark County Sch. Dist.,* 267 F.2d at
27   889; *Zoltanski v. F.A.A.,* 372 F.3d at 1201.

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

### 6. *Plaintiff Was Not Entitled to Reimbursement for Music Therapy*

Plaintiff sought reimbursement for several years of music therapy, privately obtained from Susan Rancer to address sensory, motor and processing skills such as attention, directionality, following directions, hand-eye coordination, motor planning and visual tracking [AR 118:21-119:3; 787:17-788:25; 2341:14-223342:3; 2346:9-19; 2351:7-17; 2355:10-16; 2423 (¶151); 2435 ¶ 212]. However, ALJ Johnson held that these needs were specifically and adequately addressed by the District's in Plaintiff's IEP's. [AR 2423 (¶152); 3302; 3307 3320; 3323; 3241; 3255; 3258; 3335; 3337; 3365; 3369; 3372]. Furthermore, the ALJ found that the District's programs addressed Student's additional weaknesses regarding attention span, focus, and following directions. [AR 2423 (¶152); 3241; 3255; 3258; 3263; 3265; 3269; 3272; 3302; 3307; 3320; 3323; 3335; 3337; 03365.] Finally, the ALJ found that the District was entitled to address these needs using its choice of methodologies and did not deny Plaintiff FAPE by specifically failing to provide music therapy. [AR 02435-02436 ¶ 212; *see also, Rowley,* 458 U.S. at 208 (school districts can select methodology to provide FAPE).] Thus, there being no evidence that the District's program was inappropriate in addressing Plaintiff's needs, the ALJ correctly concluded that no reimbursement was warranted. [AR 2423 (¶152); 2436 (¶212)].

### 7. *Plaintiff Was Not Entitled to Reimbursement for Interactive Metronome Occupational Therapy*

Plaintiff sought reimbursement for several years of interactive metronome occupational therapy, privately obtained from Lora Harris. [AR 120:1-6; 789:10-790:23; 2352:4-8; 2355:17-21; 2436 ¶ 213-214; AR 2448 (¶ 4)]. Specifically, interactive metronome therapy involves a computer-based program to address rhythm, time, and sequencing, and to improve gross motor skills, reading, transitions, and reciprocal social cues. [AR 935:4-10; 2436 (¶213).] As with the music therapy, the ALJ found that the District's IEP addressed the skills at issue, without the need for the additional, privately obtained services. [AR 2436 (¶213); 3228; 3244; 3250; 3252; 3257; 3263; 3267; 3285; 3288; 3291; 3295; 3298; 3301-3302; 3332; 3334; 3346; 3349; 3356; 3358; 3369; 3371.] In fact, the ALJ found that Plaintiff had failed to establish a need for *any* direct occupational therapy services. [AR 2423 (¶149).]

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    The District acknowledges that ALJ Johnson held the District's 2005 OT assessment to be

2    inappropriate. [AR 02436 ¶ 214; AR 2408-2409 ¶ 80-84]. However, this does not amount to

3    proof that Plaintiff needed interactive metronome therapy to address his unique needs. [AR 2436

4    (¶214).] The ALJ remedied the issue by ordering the District to conduct a new, comprehensive

5    OT assessment. [AR 2423 ¶ 149].

6        Here, the ALJ's denial of reimbursement for interactive metronome therapy and order for

7    the District to conduct a new OT assessment was an appropriate use of the ALJ's broad discretion

8    to fashion an equitable remedy for the District's failure to conduct an appropriate OT assessment.

9    Under *Carter* and *Burlington*, there is no absolute requirement that reimbursement must be

10   awarded when a school district has denied FAPE to a student. Rather, reimbursement "may" be

11   awarded when a school district has denied FAPE to a student, and the determination of whether

12   such reimbursement shall, in fact, be awarded is an equitable determination left to the ALJ.

13       **B.**    **The ALJ Applied the Correct Standard As to When a Parent is Entitled to an**

14       **Independent Educational Evaluation at Public Expense.**

15       Parents of special education students have the right to an independent educational

16   evaluation ("IEE"), or assessment, subject to conditions set forth in the Federal Regulations. *See,*

17   34 C.F.R. §300.502; Cal.Educ.Code §56329. Specifically, the right to an IEE is triggered when

18   the parent disagrees with an assessment completed by the school district. Further, "[i]f a parent

19   requests an [IEE] . . . at public expense, the public agency must, without unnecessary delay, either

20   . . . (i) file a due process complaint to request a hearing to show that its evaluation is appropriate;

21   or (ii) ensure that an [IEE] . . . is provided at public expense . . . ." 34 C.F.R. §300.502(b)(2).

22   Finally, the IEE must be consistent with all laws applicable to the District's assessment, including

23   location, content and the qualifications of the examiners. 34 C.F.R. § 300.502(e)

24       Here, Plaintiffs sought reimbursement for the three privately obtained IEE's: (1) a

25   neuropsychological evaluation by Dr. Nunno; (2) an occupational therapy evaluation by Tiffany

26   Martin; and (3) a neuropsychological assessment by Dr. Tina Guterman. Based on the law cited

27   above, in combination with the ALJ's broad discretion to fashion an appropriate equitable remedy,

28   ALJ Johnson ordered the District to reimburse Mother for the cost of Dr. Nunno's evaluation only.

1    The District contends that this was a proper determination which should be upheld by this Court.

2    **1.    *The District Is Not Required to Reimburse Plaintiff for His Private***

3    ***Occupational Therapy Evaluation***

4    Plaintiff sought reimbursement for the costs of a privately obtained occupational therapy

5    assessment conducted by Tiffany Martin in October 2005.  [AR 2352:20-22.]  However, Plaintiff

6    never complained about the District's assessment so that it could offer an IEE or file for due

7    process, as required by the Federal Regulations.  34 C.F.R. § 300.502; [AR 765;23-25; 1114:20-

8    25; 1115:1-2; 2434(¶207).]  Thus, the ALJ properly held that Plaintiff did not establish a right to

9    an IEE by Ms. Martin.  [AR 2435 (¶208)].  Rather, to remedy the District's inappropriate OT

10    assessment of 2005, the ALJ property ordered the District to conduct its own comprehensive OT

11    assessment.[12]

12    **2.    *The District Is Not Required to Reimburse Plaintiff for The***

13    ***Neuropsychological Assessment by Dr. Tina Guterman***

14    Plaintiffs sought reimbursement for the private neuropsychological evaluation of Student

15    that Parent obtained from Dr. Guterman in June 2005.  [AT 2347:16-17.]  The ALJ noted that the

16    District did not conduct a psychological assessment of Student in spring 2005 because Dr. Nunno

17    had conducted a comprehensive neuropsychological assessment in April 2004  [AR 1475:9-24;

18    2435 (¶209); 3421; 3425.]  The ALJ further found that, while it denied Parent's request to conduct

19    a neuropsychological assessment in May 2005, the District did agree to conduct a psycho-

20    educational assessment in fall 2005.  [AR 2435 (¶209); 2399 (¶¶40-41); 3199].

21    The District also had no prior knowledge of Dr. Guterman's assessment  until it was

22    presented in connection with the due process hearing.  [AR 764:16-18; 2435 (¶ 210).]  The ALJ

23    therefore found that Plaintiff was not entitled to reimbursement.   [AR 2435 (¶210).]

24

25    _____

26    [12] Plaintiff appears to contest the appropriateness of this remedy via his statement that "Neither

27    party sought assessments as a remedy."  (Plaintiff's Complaint at 8:5.)  However, the ALJ was
well within her discretion to fashion equitable relief in ordering such assessment *sua sponte*.

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

1  **VI.    CONCLUSION**

2          ALJ Johnson thoroughly and carefully considered all of the testimony and documentary

3  evidence on a myriad of issues spanning several years of Plaintiff's education.  The decision found

4  certain errors by the District for which Plaintiff was appropriately compensated.  However, as to

5  all issues on which the District prevailed, it requests that this Court affirm Judge Johnson's

6  decision as set forth in this motion.

7

8  DATED: April 16, 2008                         FAGEN FRIEDMAN & FULFROST, LLP

9

10

11                                         By:   /s/ Kimberly A. Smith
                                                 Kimberly A. Smith
12                                               Attorneys for Defendant San Francisco Unified
                                                 School District

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT