1  Roberta S. Savage (SBN 202940)
   221 G Street, Suite 207
2  Davis, CA 95616
   tel (530) 753-4497
3  fax (530) 753-4498

4

5

6

   Attorney for
7  A.B.

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

   A.B., a minor, By and Through          CASE NO.  07-4738 PJH
11 W.F.B.,  His Guardian Ad Litem,
                                          PLAINTIFF'S OPPOSITION TO
12                                        DEFENDANT'S MOTION FOR
              Plaintiff,                  SUMMARY JUDGMENT AND
13                                        MEMORANDUM OF POINTS AND
   v.                                     AUTHORITIES IN SUPPORT THEREOF
14
   SAN FRANCISCO UNIFIED                  Date:   June 25, 2008
15 SCHOOL DISTRICT,                       Time:   9:00 a.m.
              Defendant.                  Ctrm:   3
16 _____/

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

I. ALJ's Determination on the Statute of Limitations was in Error Because a Denial of FAPE is a Continuing Violation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. AB's Mother Complied with IDEA's Notice Requirements . . . . . . . . . . . . . . . . . . . . . . . 2

  A. Notice of Supplemental Services is not Necessary for a Public School Student . . 3

  B. The District Failed to Appropriately Respond When AB's Mother Gave Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. SFUSD's IEPs or Communications do not Contain Sufficient Prior Written Notice as Required by the IDEA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

  A. SFUSD Provided Insufficient Notice During AB's Second Grade Year . . . . . . . . 7

  B. SFUSD Provided Insufficient Notice During AB's Third Grade Year . . . . . . . . . 7

  C. SFUSD Provided Insufficient Notice During AB's Fourth Grade Year . . . . . . . . 9

IV. Reimbursement for Private Services is Appropriate Because SFUSD was Uncooperative and the Services were Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

  A. SFUSD was Uncooperative Evidenced by Its Myriad Procedural Violations and Failure to Respond to AB's Mother . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

  B. AB's Supplemental Programs were Supported by Evaluations . . . . . . . . . . . . . 11

    1. Dr. Nunno's Assessment Supports Quest Therapeutic Camps, Social Skills Therapy, Music Therapy, and Speech and Language Therapy . . . . . . . . 11

    2. Dr. Guterman's Assessment Supports Lindamood-Bell, Social Skills Therapy, Speech and Language Therapy, Quest Therapeutic Camps, Interactive Metronome and Music Therapy . . . . . . . . . . . . . . . . . . . . . . 14

  C. AB's Behavior Related Services were Reasonable . . . . . . . . . . . . . . . . . . . . . . 16

  D. AB's ESY Services were Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

  E. AB's Mother Acted Reasonably in Obtaining Supplemental Services . . . . . . . 18

  F. Full Reimbursement is Appropriate in AB's Situation Because SFUSD was Uncooperative and His Mother Acted Reasonably . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

2

TABLE OF AUTHORITIES

3

**Cases**

4

*Florence County Sch. Dist. Four v. Carter* 510 U.S. 7, 13-14, 114 S.Ct. 361, 365 (1993) .   10,13

5

*Forest Grove Sch. Dist. v. T.A.*, slip opinion 4537-60, 4553 (9th Cir. 4/28/08) . . . . . . . . . . . 3, 10

6

*Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 206-207 (1982) . . . . . . . . . . . . . 2

7

*Katherine G. v. Kentfield Sch. Dist & Marin Cnty Office of Educ.*, 261 F. Supp..2d 1159 (N.D.Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8

*S.B. v Pomona Unified School District*, 108 L.R.P. 22952 (C.D. Cal. 2008) . . . . . . . . . . . . . . . 1

9

*Schaffer v. Weast*, 546 U.S. 49 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10

*School Committee of Burlington v. Department of Educ.* 471 U.S. 359, 369-71 (1996) . . . . 9, 10

11

**Statutes**

12

20 U.S.C.§ 1400 (d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

13

20 U.S.C. § 1412 (a)(10)(C)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

14

20 U.S.C. § 1412 (a)(10(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15

20 U.S.C. § 1415 (b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16

20 U.S.C. § 1415 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17

20 U.S.C. § 1415 (i)(2)(C)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18

19

20

21

22

23

24

25

26

27

28

1  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S

2  MOTION FOR SUMMARY JUDGMENT

3      AB incorporates his April 16, 2008 Motion for Summary Judgment into this Opposition to

4  the SFUSD's Motion for Summary Judgment, to avoid duplicating his arguments. AB submits this

5  Opposition to supplement the arguments and facts previously presented to the Court. As such, AB

6  requests that his Motion for Summary Judgment be granted and that the Court deny Defendant's

7  Motion for Summary Judgment.

8  I.  **ALJ's Determination on the Statute of Limitations was in Error Because a Denial of FAPE is a Continuing Violation**

9

10      The ALJ wrongly found that AB's procedural challenges to the operative IEP for the 2003-

11  2004 school year were barred because the IEP was created outside of the three year statute of

12  limitations. [2412 ¶ 98, 2419 ¶ 127, 2425 ¶ 163-2426 ¶ 166.]  These findings are in error because

13  they fail to consider that by their nature a denial of FAPE is a continuing violation.

14      In *S.B. v Pomona Unified School District* [108 L.R.P. 22952 (C.D. Cal. 2008)], the district

15  court did not address the issue of the statute of limitations, but the opinion provides insight into why

16  the statute of limitations should be applied as requested by AB. In that case, the district court found

17  a denial of FAPE based upon the failure to have a regular education teacher attend the original IEP.

18  *Id.* at pg. 8. The court reasoned that the violation continued to exist until that district remedied the

19  violation or held an entirely new IEP. *Id.* at 11-12. The application of the statute of limitations, as

20  requested by AB is grounded in similar reasoning. A procedural violation that results in a denial of

21  FAPE continues to exist until the procedural violation is remedied. Here, AB did not receive a new

22  IEP until the Spring of 2004 making at least some of his 2003 claims timely.

23      AB's Second Grade IEP was developed in March 2003. [3351-65.] That IEP continued to

24  be the operative IEP until his annual review was held in March 2004. [3095-129, 3326-44.][1] Like

25  his later IEPs, the 2003 IEP was critically flawed: goals were immeasurable, speech services and

26

27  [1]There are two copies of the Spring 2004 IEPs included in evidence. AB's copy includes the notes from the March 16, 2004 IEP. 3095-129.

28

1   social skills interventions were vaguely written.  These violations could have been cured by holding

2   an IEP team meeting to remedy them.  Because they were not, the flaws continued to exist

3   throughout the entire year.

4       AB does not suggest that he should obtain a remedy for the period of March 2003 through

5   October 5, 2003, as his due process hearing was not filed until October 6, 2006.  Rather, he should

6   be entitled to a finding that the IEP was procedurally flawed, which rose to the level of a denial of

7   FAPE from October 6, 2003 through the creation of the next annual IEP.  He is therefore entitled to

8   a remedy for that period of time.  The ALJ's finding that AB cannot challenge the 2003-2004

9   procedural violations because the IEP was created prior to October 6, 2003 severely limits AB's

10  rights to a procedurally and substantively appropriate IEP a school year that predominantly occurred

11  within the statute of limitations.  That result would be inconsistent with the purpose and intent of the

12  IDEA which is to ensure that each child with a disability receives a substantively and procedurally

13  appropriate IEP for purposes of a FAPE.  20 U.S.C.§ 1400 (d); *Hendrick Hudson Dist. Bd. of Educ.*

14  *v. Rowley*, 458 U.S. 176, 206-207 (1982).

15  II.    **AB's Mother Complied with IDEA's Notice Requirements**

16      The District repeatedly states that AB's mother did not provide the District with notice of the

17  supplemental services that she was providing him. [*Defendant's Motion for Summary Judgment*, pg.

18  6:2-4; 7:1-4; 7:27-8:2; 8:10-13.]  The statements suggest that a notice requirement exists in this

19  situation where a parent supplements their child's public school program.  Such a requirement does

20  not exist.  The IDEA requires notice only when a parent removes a child from public school:

21      (iii) Limitation on reimbursement The cost of reimbursement described in clause (ii)
        may be reduced or denied—

22

23      (I) if—

            (aa) at the most recent IEP meeting that the parents attended prior to
24          removal of the child from the public school, the parents did not
            inform the IEP Team that they were rejecting the placement proposed
25          by the public agency to provide a free appropriate public education to
            their child, including stating their concerns and their intent to enroll
            their child in a private school at public expense; or

26

27          (bb) 10 business days (including any holidays that occur on a business
            day) prior to the removal of the child from the public school, the
28          parents did not give written notice to the public agency of the

information described in item (aa);
20 U.S.C. § 1412 (a)(10)( C)(iii).

As AB remained a full-time public school student during the school years, AB's mother was not required to give notice of the supplemental programs. Nonetheless, AB's mother did inform SFUSD staff of the various services he was receiving.

A.    *Notice of Supplemental Services is not Necessary for a Public School Student*

The Ninth Circuit recently concluded that the parental notice provision should be narrowly construed to the strict language of the statute. In *Forest Grove USD*, the Ninth Court found that the ten-day notice provision only applied to students who had previously received special education students and were subsequently withdrawn from the public school and unilaterally placed in a private school. Forest Grove Sch. Dist. v. T.A., slip opinion 4537-60, 4553 (9th Cir. 4/28/08). In *Forest Grove*, the Court found tuition reimbursement appropriate where the family had first removed the child from a public school prior to the student being eligible for special education services. *Id*. Thus, even though the child had been removed from public school, because the circumstances were different from those expressly outlined in the statute, the parental notice requirement did not apply. The notice provision was narrowly construed to be inapplicable to the student's situation in *Forest Grove. Id.*

Similarly in this case, AB's circumstances diverge from that described in the statute. He was unilaterally removed from public school during ESY only. [2824, 2900-01, 3203.] For those periods his mother provided the requisite statutory notice.  SFUSD is suggesting that this Court make findings beyond the IDEA that AB was required to provide a formal written notice for his supplemental school year services even though he remained enrolled in a public school program during every school year that is at issue.  The statute does not require notice in that situation; therefore neither should SFUSD, the ALJ or this Court.

Although his mother did not provide the District with a formal notice of services, she kept AB's teachers informed of the supplemental services he received.  She provided SFUSD with Dr. Nunno's report identifying service providers Floria Fung and Susan Rancer.  [2804, 2892, 3425.] Ms. Blood-Walker was aware of social skills therapist, Dominique Baudry's involvement as noted

1  in her notes of her conversation with AB's mother. [2995.] AB's mother also discussed the services

2  with SFUSD staff in either verbal or written communication [1528:14-1532:21, 1587:17-1588:3,

3  2804, 2892, 3224, 3211-13, 3206-10, 3424] and Ms. Fung actually participated in one IEP team

4  meeting. [3278 (IEP notes referencing private speech therapist).] Had SFUSD been interested in

5  learning about the private services AB was receiving, it had sufficient information to inquire about

6  them.  By not inquiring SFUSD confirmed its lack of interest and formal written notice would not

7  have changed SFUSD's actions in response. [*See supra*, Section.2.B.]

8        Although AB's mother did not specifically state that she intended to seek reimbursement for

9  the costs of these programs and services, this notice is not legally required in order to obtain

10  reimbursement.  *See* <u>Katherine G. v. Kentfield Sch. Dist & Marin Cnty Office of Educ.</u>, 261 F.

11  Supp..2d 1159 (N.D.Cal. 2003) (awarding partial reimbursement for private school services that

12  parent supplemented public school student's program with during 1999-2000 school year without

13  parent requesting tuition reimbursement previously or parental objection to IEP at time drafted).

14  Moreover, when she did provide required notice for AB's ESY services, SFUSD did not properly

15  respond. [2446 ¶49-2447 ¶ 50.] Again, formal notice would not have changed how SFUSD

16  responded.  Since AB's mother (1) gave formal notice when required for ESY, (2) no notice was

17  required for supplemental school year services, (3) AB's mother gave informal notice, and (4)

18  SFUSD demonstrated the futility of any additional notice, the notion that AB was required to give

19  formal notice of supplemental services should be rejected.

20        B.    *The District Failed to Appropriately Respond When AB's Mother Gave Notice*

21        SFUSD's lack of an appropriate response to her formal  notice of ESY services or

22  assessments was a denial of FAPE in and of itself.  SFUSD repeatedly failed to provide prior written

23  notice about the services or its alternative offer.  In fact, the ALJ found that SFUSD failed  to

24  provide appropriate notice for most of the ESY services AB's mother put them on notice of between

25  2004 and 2006. [2446 ¶49-2447 ¶ 50.] SFUSD also failed to provide appropriate notice of its

26  rejection of Dr. Nunno's recommendations [3224] or its refusal to conduct the psycho-educational

27  evaluation after agreeing to conduct one.

28

1    Additionally, SFUSD did not respond as it should have to the informal notice about services

2    AB's mother provided.  SFUSD failed to contact most of AB's ESY service providers or assessors

3    despite knowing of their involvement in AB's program. [1147:24-1148:3, 2824, 2827-30] Two of

4    AB's private providers had contact with SFUSD, Ms. Baudry and Ms. Fung.  Ms. Baudry had some

5    communications with AB's classroom teacher and aide. [991:24-998:6, 1018:17-1021:23, 1056:24-

6    1057:4][2].  Ms. Harris had some communications with AB's aide. [944:11-945:10]  Ms. Fung was

7    called during one of AB's Spring 2005 IEPs to discuss proposed goals. [3278]  SFUSD received Dr.

8    Nunno's assessment, was aware that Dr. Guterman was attempting to observe AB, was given

9    paperwork from Quest Therapeutic Camps and was put on notice every summer of the services AB

10   would receive.  Nonetheless SFUSD did not actively seek out information from anyone about AB.

11   SFUSD was  indifferent to AB's supplemental services.  Further notice would have been fruitless.

12   Reimbursement for AB's supplemental services is equitable whether or not his mother

13   provided the formal notice.

14   III.   **SFUSD's IEPs or Communications do not Contain Sufficient Prior Written Notice as
15          Required by the IDEA**

16   The IDEA requires that a district provide a parent with prior written notice when a school

17   district makes a change or refuses a change in a student's services or program.  Prior written notice

18   is required whenever the local educational agency

19   (A) proposes to initiate or change; or

20   (B) refuses to initiate or change, the identification, evaluation, or educational placement
     of the child, or the provision of a free appropriate public education to the child.
21

22   20 U.S.C. § 1415 (b)(3).

23   When this provision is triggered, the content of the prior written notice includes a description

24   of the action, an explanation of the school district's position, the basis of the school district's

25   position and other essential due process related information:

26

27   [2]Ms. Emling testified that although she knew Dominique Baudry was consulting with AB's
     mother she did not seek a release of information to speak with her. [1160:24-1161:5]
28   A.B. v. San Francisco Unified School District, Case No.C 07-4738 PJH
     Plaintiff's Opposition to Defendant's Motion for Summary Judgment
     Page 5 of 19

The notice required by subsection (b)(3) shall include—

    (A) a description of the action proposed or refused by the agency;

    (B) an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;

    (C) a statement that the parents of a child with a disability have protection under the procedural safeguards of this subchapter and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;

    (D) sources for parents to contact to obtain assistance in understanding the provisions of this subchapter;

    (E) a description of other options considered by the IEP Team and the reason why those options were rejected; and

    (F) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415 (c)

    This notice is necessary to ensure the school district informs parents of the reasoning and basis for a school district's actions. This is also one of the provision cited by the United States Supreme Court in *Schaffer v. Weast* [546 U.S. 49 (2005)] that justified placing the burden of proof on a parent when challenging an IEP. Where that notice is not properly provided, a procedural violation exists because a parent is at a loss to meet her burden of proof without it. For example, since SFUSD never informed AB's mother of the bases for rejecting Lindamood Bell Learning Processes services, she did not learn until Dr. Mills testimony that AB's academic achievement skills were not impacted enough in order to justify additional service. [1924:20-1925:19, 1948:7-1951:4, 1931:4-20.] The school district's failure to provide this fundamental information seriously infringes on a parent's ability to participate in the development of their child's program. A failure to provide prior written notice is a denial of FAPE.

    The ALJ in this case found that SFUSD had provided some but not all of the required prior written notices. [2428-31.] The missing notices that were found were deemed harmless. [2428-31.] These findings are in error because the lack of notice seriously infringed on AB's mother's ability to meaningfully participate in the IEP process.

A.B. v. San Francisco Unified School District, Case No.C 07-4738 PJH
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Page 6 of 19

A.    *SFUSD Provided Insufficient Notice During AB's Second Grade Year*

In AB's Second Grade year, his mother gave SFUSD written notice of the ESY services she would provide him [2824], she had repeatedly requested that SFUSD conduct a functional analysis assessment [2395 ¶ 25] and she provided SFUSD with a copy of Dr. Nunno's assessment as part of her input into the development of AB's IEP. [3129.] SFUSD failed to provide appropriate prior written notice regarding the refusal to change AB's ESY services, the refusal to conduct a functional analysis assessment or to incorporate Dr. Nunno's recommendations into AB's IEP. The ALJ found that if a procedural violation existed, it was harmless. [2446 ¶ 49 - 2447 ¶50.]

During his Second Grade year AB's IEPs failed to provide the very basic information necessary to have been considered prior written notice. The IEPs do not include any reason for refusing the services, evaluations that support the conclusion, alternatives considered or factors considered in reaching the conclusion. [3095-129.] The only request that arguably has some of the necessary information is the request for the functional analysis assessment as the IEP states that the team will do a behavior plan instead. [3126.]

Since the ALJ relied on the denial of ESY services during AB's Second Grade year as a reason to excuse a complete response in subsequent years, the failure to include the necessary prior written notice in Second Grade is even more significant. [2430 ¶ 185, 2446 ¶49.]  SFUSD denied AB a FAPE by failing to provide appropriate prior written notice in Second Grade.

B.    *SFUSD Provided Insufficient Notice During AB's Third Grade Year*

The ALJ wrongly found that in 2005, although SFUSD provided sufficient prior written notice in denying the request for Lindamood-Bell Services it did not rise to the level of a denial of FAPE. [2430 ¶ 185] On May 18, 2005 AB's mother gave notice that she would provide him with summer services. [3203] In Ms. Sodhi's May 27, 2005 letter in response to the notice, she fails to identify the evaluations or reports that were the basis for the refusal to fund AB's Lindamood-Bell services, the other services considered and rejected by the IEP team, relevant factors to the agency's refusal, or the procedural safeguards. [2868] Ms. Sodhi's letter also does not address the other requested summer services, namely Quest Therapeutic Camps, and speech and language therapy with

1  Floria Fung. [2868, 3203] Therefore, Ms. Sodhi's "notice" does not come close to meeting the IDEA

2  requirements and this denied AB a FAPE by not giving his mother all necessary information in order

3  to make an informed decision about AB's services.

4      It was during Third Grade that AB's mother also requested a neuropsychological assessment

5  of AB. [3270-83, 3279]   In denying the request, SFUSD indicated that it would conduct a

6  comprehensive psycho-educational assessment. [3199-200][3]   At that time, SFUSD determined that

7  a psycho-educational assessment would "provide optimal information regarding [AB]'s cognitive,

8  processing and educational functioning." [3199].   SFUSD failed to then follow up with the

9  evaluation or provide prior written notice stating why that particular assessment was no longer

10 necessary.   The ALJ wrongly found  harmless SFUSD's failure to conduct an agreed upon

11 assessment. [2399 ¶42.] If the assessment was intended to provide "optimal information" about AB

12 in the areas of "cognitive, processing and educational functioning,"how then can the failure to

13 conduct that assessment or give notice as to why it is later not conducted, harmless?

14      The ALJ wrongly found that Ms. Sodhi's letter constituted sufficient prior written notice of

15 SFUSD's refusal to conduct a neuropsychological assessment. [2430 ¶ 187.] Ms. Sodhi's June 14,

16 2005 letter, even if paired with the Spring 2005 IEPs, does not constitute sufficient prior written

17 notice for the refusal to conduct a neuropsychological assessment. [3199-200, 3270-318.] The

18 documents as a whole fail to identify the rationale for refusing a neuropsychological assessment.

19 Rather, Ms. Sodhi's letter acknowledges the request and then indicates that SFUSD will conduct a

20 different type of comprehensive assessment. [3199-200.] To compound the violation, SFUSD never

21 conducted the psycho-educational assessment as agreed upon. [2399 ¶ 42.]   The handwritten notes

22 from the IEP team meetings also do not state the basis for the refusal or what evaluations are

23 considered in reaching the conclusion that a psycho-educational versus a neuropsychological

24 assessment was warranted. [3271-72, 3278-79, 3308-10.]

25      SFUSD failed to provide sufficient prior written notice of their refusal to fund AB's summer

26 

27 [3]Ms. Sodhi's letter also states that the issue of a neuropsychological assessment was not part of
   the agenda for the May 25, 2005 IEP. [3199.]  This is contradicted by the handwritten notes from
28 the prior IEP. [3279.]

1   services, the refusal to conduct a neuropsychological assessment and the refusal to conduct the

2   agreed upon psycho-educational assessment.  This seriously infringed on his mother's ability to

3   participate in the IEP process and as such, is a denial of FAPE.

4          C.      *SFUSD Provided Insufficient Notice During AB's Fourth Grade Year*

5          During AB's Fourth Grade his mother, again, put SFUSD on notice that she intended to

6   provide him with private ESY services. [2900-01.]  The same deficiencies that were evident in the

7   prior years, continued in this year.  The ALJ continued to find these errors harmless because she

8   concluded that it did not injure AB or infringe upon his mother's rights. [2430 ¶ 185.]  SFUSD's

9   response to the notice of private services did not comply with the prior written notice requirements,

10  even when paired with the contents of his March 2006 IEP. [3195, 3246-69.] The same information

11  that was missing in the past continued to exist during this period of time, namely, no statement of

12  factors considered in denying the request, no identification of the evaluations used to support the

13  denial, and no statement of alternatives considered.

14         Each failure to comply with the prior written notice requirements is a denial of FAPE.  It is

15  the cumulation of these, plus other violations that justifies a more substantial remedy to AB.

16  IV.    **Reimbursement for Private Services is Appropriate Because SFUSD was Uncooperative
        and the Services were Reasonable**

17

18         When a district fails to provide a FAPE to a student with a disability, the student is entitled

19  to relief that is "appropriate" in light of the purposes of the IDEA.  *School Committee of Burlington*

20  *v. Department of Educ.,* 471 U.S. 359, 369-71 (1996) ; 20 U.S.C. § 1415(i)(2)(C)(3). SFUSD denied

21  AB a FAPE from Second through Fifth Grades by failing to properly assess him, failing to develop

22  appropriate annual goals, failure to provide prior written notice, failing to make clear written offers

23  of placement and services and failing to provide him with an appropriate program. [*See Plaintiff's*

24  *Motion for Summary Judgment, Sections*, III.E., III. F., III.C., III.A.3, III. D & III.G., *respectively.*]

25  The totality of the violations rise to a denial of FAPE for each individual year, and all years in the

26  aggregate.  An appropriate remedy must be crafted for the pervasive violations of the IDEA.

27         Parents may be entitled to reimbursement for the costs of placement or services they have

28

procured for their child when the school district has failed to provide a FAPE. AB's private placement and services were appropriate under the IDEA, replacing services that SFUSD failed to provide. 20 U.S.C. § 1412(a)(10(C); *Burlington, supra,* 471 U.S. at 369-71. Parents may receive reimbursement for their unilateral placement if the placement met the child's needs and provided the child with educational benefit. *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 13-14, 114 S.Ct. 361, 365 (1993). Factors that the Ninth Circuit has stated should be considered in determining reimbursement are notice, "'the existence of other, more suitable placements, the effort expended by the parent[s] in securing alternative placements[,] and the general cooperative or uncooperative position of the school district." *Forest Grove Sch. Dist.* slip opinion at 4556.

SFUSD argues extensively that the ALJ provided an adequate remedy for the violations that she found. [*Defendant's Motion for Summary Judgment*, pg. 22-30.] If SFUSD were correct, then school districts would be able to violate the procedural safeguards of the IDEA with little more than a slap on the wrist. The IDEA is a statute that is designed to protect students, such as AB, from school districts by outlining very clear protections. When a district violates those protections, as SFUSD did, then reimbursement for private services is an appropriate remedy.

A.    *SFUSD was Uncooperative Evidenced by Its Myriad Procedural Violations and Failure to Respond to AB's Mother*

SFUSD's conduct in AB's case is wrought with violations of the IDEA and failures to respond to his mother's requests. The remedy ordered by the ALJ does not reflect the severity of the violations nor SFUSD's uncooperative behavior. When considering SFUSD's behavior an award of full reimbursement is reasonable.

The ALJ awarded reimbursement for Dr. Nunno's assessment as she found that SFUSD had failed to address AB's behaviors during Second Grade. [2433 ¶ 201- 2434 ¶ 203.] Dr. Nunno's report was presented to SFUSD in June 2004, prior to its issuance AB's mother informed SFUSD at an IEP team meeting of Dr. Nunno's findings, and AB's mother sought services from SFUSD consistent with those services in Fall 2004. [3224.] SFUSD never held an IEP team meeting to explain why it would not follow Dr. Nunno's recommendations, nor did it provide AB's mother with

1  any written notice of why it would not follow his recommendations.  Additionally, Ashley Emling,

2  AB's full inclusion teacher, did not seek a release of information to discuss Dr. Nunno's report with

3  him [1160:21-23] and Dr. Mills testified that she did not recall reviewing Dr. Nunno's report until

4  shortly before the hearing, nearly 2.5 years from the time it was received by SFUSD. [*See Plaintiff's*

5  *Motion for Summary Judgment*, pg. 3, fn. 5.]

6       The series of events that unfolded at the time AB's mother presented Dr. Nunno's assessment

7  to SFUSD shows that SFUSD was uninterested in modifying AB's program consistent with Dr.

8  Nunno's recommendations.  SFUSD's lack of action or cooperative behavior with AB's mother and

9  refusal to allow her meaningful participation weighs in favor of reimbursing her for services

10 consistent with his report.

11      Although AB's mother admittedly did not provide SFUSD with written ten-day notice

12 consistent with the unilateral private placement requirement during the regular school year, said

13 notice was not necessary.  SFUSD was on notice of AB's summer services [2824, 2900-01, 3203];

14 SFUSD staff knew he was receiving supplemental services [1528:14-1532:21, 1587:17-1588:3,

15 2804, 2892, 2995, 3224, 3211-13, 3206-10, 3424]; and SFUSD made minimal attempts to obtain

16 information from AB's outside providers that they were aware of. [1160:21-1161:5.]  There is no

17 evidence that SFUSD sought to communicate with Quest Therapeutic Camp, Dr. Nunno, Dr.

18 Guterman, Ms. Fung [speech and language therapist], Ms. Harris [interactive metronome

19 implementor], Lindamood-Bell Learning Processes or Ms. Rancer [music therapist] or that AB's

20 mother prevented any communication from occurring.

21      B.    *AB's Supplemental Programs were Supported by Evaluations*

22      Since SFUSD took no steps to act on Dr. Nunno's recommendations and AB's mother did,

23 she should be reimbursed for services consistent with his report.

24            1.    Dr. Nunno's Assessment Supports Quest Therapeutic Camps, Social Skills
                   Therapy, Music Therapy, and Speech and Language Therapy

25

26      The ALJ endorsed Dr. Nunno's report when she ordered SFUSD to reimburse AB's mother

27 for it in light of its failure to appropriately respond to AB's challenging behaviors. [2433 ¶201- 2434

28

¶ 203.] Yet, the ALJ did not fashion a remedy for AB consistent with Dr. Nunno's report.  To the extent that Dr. Nunno's report offers guidance as to what programs should have been provided to AB, it is a useful measure for determining whether AB's mother acted reasonably in choosing AB's supplemental services.

In May/June 2004, Dr. Nunno recommended the following services for AB:

- behavior plan provided by behavior therapist in conjunction with aide
- 45 minutes per day of speech and language therapy
- 30-40 minutes, 3 days per week of occupational therapy
- social program for the summer

[3434-35.]

AB's mother provided him with behavioral support through Quest Therapeutic Camps [2975], Floria Fung's speech and language therapy [2978], music therapy with Susan Rancer [2979], and social skills therapy with Dominique Baudry [2982].

The ALJ found that AB benefitted from Quest Therapeutic Camps. [2431 ¶191- 2433 ¶198.] Further evidence of the benefits AB obtained at Quest Therapeutic Camps is detailed in Dr. Robert Fields' testimony and the letters he wrote about AB's progress in his programs. [1641:16-1642:9, 1643:19-1644:12, 1646:2-1651:2, 1651:7-1655:15, 1662:2-1665:9, 1669:6-1671:5, 1673:5-1673:20, 1674:12-1675:4, 2972-74, 2984-86.] AB's mother continued to provide AB with Quest Therapeutic Camps each summer and during the 2004-2005 and 2006-2007 after school programs.

The ALJ awarded 17.5 hours of reimbursement for Ms. Fung's services. [2433 ¶ 199.] Ms. Fung, a SFUSD employed speech and language therapist, worked with AB until the Spring of 2006. [2987.]  Some of her notes of her work with AB are included within the Administrative Record. [114:5-116:4, 230:15-231:5, 2996-3087.] The notes reflect that she worked on the following skills with AB during his Second, Third and Fourth Grade years:

| | |
|---|---|
| **Reading/Reading Comprehension**: | 2996-97, 3000, 3008, 3022, 3024, 3027, 3031, 3033, 3040, 3051, 3056 |
| **Pragmatics**: | 3013-14, 3016, 3020, 3024, 3026, 3059 |
| **Social/Class Behavior/Interactions**: | 2999, 3003, 3006, 3018-19, 3021-23, 3028, 3033, 3036, 3038, 3041-45, 3047, 3049, 3050, 3052, 3056, 3058, 3061 |

1    These were areas of need for AB. SFUSD did not challenge the fact that AB benefitted from her

2    intervention, rather it claimed the services were unnecessary to provide a FAPE. SFUSD cannot now

3    claim that AB did not benefit from Ms. Fung's services.

4        In awarding reimbursement, the services do not have to rise to the level of FAPE in order to

5    compensate the family for their expenses. *Florence County Sch. Dist. Four v. Carter* 510 U.S. 7, 13-

6    14, 114 S.Ct. 361, 365 (1993) . Therefore, AB should be awarded the additional 564.5 hours[4] of Ms.

7    Fung's services which is in addition to the 17.5 hours already awarded. [2433 ¶ 199.]

8        The ALJ found that AB did not require music therapy or social skills with Dominique Baudry

9    to obtain a FAPE. [2423 ¶ 152, 2420 ¶ 131.] This finding is not relevant to the analysis of awarding

10   reimbursement. The issues that are analyzed are: 1) did the district provide FAPE; 2) if not, did the

11   parent provide services that addressed the child's areas of needs; and 3) if so, did the child benefit

12   from the services. *Florence County Sch. Dist. Four,* 510 U.S. at 13-14, 114 S.Ct. at 365.   AB

13   provided facts supporting all three requirements. SFUSD denied AB a FAPE; AB's mother provided

14   services; AB benefitted from the services including interactive metronome, social skills therapy,

15   music therapy, Quest Therapeutic Camps, Lindamood-Bell Learning Processes, and speech therapy

16   services.

17       Susan Rancer testified about the areas addressed in her music therapy with AB.[5] AB's music

18   therapy goals included skills to help him at school by improving the underlying skills necessary for

19   transferring information from the blackboard to his paper, increasing his attention, and appropriate

20   verbalizations. [2865.]

21       Dominique Baudry testified about the areas addressed in her social skills therapy with AB.

22   Ms. Baudry worked with AB in improving his interactions with peers, understanding what others

23   think, understanding social relationships, and improving his classroom behaviors. [2861-62.] She

24

25   [4]The total hours of speech therapy may seem high, but when Dr. Nunno's recommendation for
26   speech therapy is calculated to a 195 hours of speech and language therapy per 52 week year.

27   [5]The parties have uncovered that the morning session from March 2, 2007, specifically Ms.
     Rancer's and Ms. Baudry's testimony, is currently missing from the Administrative Record. The
28   parties are in the process of determining how to obtain a written transcript of that testimony.

observed improvements in his ability to interact with peers and understand and execute appropriate behaviors in a group setting. [2861-62.] AB benefitted from her therapy.

Given the fact that AB was denied a FAPE during his Second through Fifth Grades, the private services provided by his mother addressed his educational needs, and he benefitted from those services, his mother should be reimbursed for the costs she incurred that are consistent with Dr. Nunno's evaluation.

2.    Dr. Guterman's Assessment Supports Lindamood-Bell, Social Skills Therapy, Speech and Language Therapy, Quest Therapeutic Camps, Interactive Metronome and Music Therapy

The ALJ found Dr. Guterman credible in her critique of SFUSD's speech and language and occupational therapy assessments. [2407 ¶¶ 74-75, 2408 ¶ 79.] Just as with Dr. Nunno's report, it is a useful guide to determining whether AB's supplemental programs should be reimbursed.  In June 2005 Dr. Guterman recommended that AB obtain the following services and assessments:

- behavioral program
- active social skills facilitation
- home behavioral program
- comprehensive speech and language evaluation
- comprehensive sensory integration assessment
- multi-sensory immersion for reading as has been provided [Lindamood-Bell was identified at hearing 618:19-619:6]
- assistive technology assessment

[2890-91.]

SFUSD did not provide these services.  Rather, AB's mother continued to provide him with behavioral support through Quest Therapeutic Camps [2975], Floria Fung's speech and language therapy [2978], music therapy with Susan Rancer [2979], Lindamood Bell Learning Processes intervention [2980-81], social skills therapy with Dominique Baudry [2982] and interactive metronome therapy with Julia and Lora Harris [2983].

Dr. Guterman's assessment in and of itself should also be reimbursed.  The ALJ found that SFUSD agreed to conduct a psycho-educational assessment of AB in June 2005 and then never conducted the assessment. [*See Plaintiff's Motion for Summary Judgment*, Section III..E.2.] This procedural violation is sufficient justification for reimbursing AB's mother for the neuropsychological assessment she funded when SFUSD failed to do a psycho-educational

1    assessment.[6]

2          In addition to being reimbursed for Dr. Guterman's evaluation, AB's mother should be

3    reimbursed for the services that she provided AB consistent with the services recommended by Dr.

4    Guterman. In considering this remedy, the Court should again consider SFUSD's behavior up to that

5    point. First, AB's mother provided a copy of Dr. Nunno's report the year before. SFUSD made no

6    changes based upon those recommendations. SFUSD did not even contact Dr. Nunno to discuss his

7    recommendations.[7]  The ALJ found that SFUSD had not appropriately assessed AB in the areas of

8    occupational therapy or speech and language therapy during his triennial reevaluation in the Spring

9    2005. [2443 ¶¶29, 31.] The annual goals SFUSD prepared for his second, third and fourth grade year

10    were not measurable. [*See Plaintiff's Motion for Summary Judgement*, Section III..F.]

11          Dr. Guterman's recommendations are further support for reimbursing AB's mother for all

12    services through Quest Therapeutic Camps, social skills therapy with Dominique Baudry, music

13    therapy with Susan Rancer, and speech and language therapy with Floria Fung, as discussed above.

14    In addition, Dr. Guterman's report supports reimbursement for Lindamood-Bell Learning Processes

15    and the interactive metronome therapy.

16          The Lindamood-Bell Learning Processes program, Visualizing and Verbalizing, that AB

17    participated in was a multi-sensory program that helps improve skills in "making predictions,

18    inferences, extensions...and using those mental images to extend and picture what's going to happen

19    next." [659:15-670:3, 683:1-13, 2943-47.]  This was recommended to address AB's "Expressive

20    Language & Critical Thinking" skills. [670:9-682: 23, 2943.][8] After completing the initial

21

22    [6]SFUSD did have notice that Dr. Guterman wanted to observe AB at school, yet there was no
      evidence that they ever sought information from his mother about her contact with AB. [3199-
23    200.] This is further evidence of SFUSD's indifference towards any private provider or
      evaluator.
24

25    [7]Dr. Nunno did not testify at the hearing because he had been diagnosed with brain cancer.
      [631:13-15].

26    [8]According to the Lindamood-Bell testing, AB scored below the 1st percentile on the test that
27    assessed his expressive language and critical thinking. [2944] This score was in dramatic contrast
      to his higher scores in word recognition, spelling, answering multiple choice questions and
28    fluency. [2944-46]

1   recommendation of Visualizing and Verbalizing therapy, AB's testing showed gains across the board

2   on the standardized test that assessed his expressive language and critical thinking. [683:14-693:5,

3   2958-71, specifically 2959.] Clearly AB benefitted from the Visualizing and Verbalizing

4   intervention. His mother should be reimbursed for the costs of providing AB Lindamood Bell's

5   Visualizing and Verbalizing program.

6         Lora Harris testified that Interactive Metronome[9] therapy addresses "your internal rhythm and

7   timing." [931:3-934:20.] This helps "improve your sequencing, which helps with gross motor skills,

8   reading, self-regulation,...attention and focus, transitioning, social cues." [935:7-10.]  It helps

9   students by working on "foundations for sequencing" [938:13-17] which in turns assists in reading

10  and mathematics. [938:13-20.]  Ms. Harris specifically testified that AB benefitted from Interactive

11  Metronome by improving his attention, focus, eye contact and being a better listener. [939:9-945:10,

12  2905-10.]  It was reported to Ms. Harris by AB's aide and his mother that AB was demonstrating

13  behaviors in class and at home that suggested he was benefitting from her therapy. [944:11-945:10.]

14  Interactive Metronome addressed some of AB's areas of need and he benefitted from the therapy.

15  His mother should be reimbursed for those costs.

16         C.    *AB's Behavior Related Services were Reasonable*

17        The ALJ found significant violations in the area of behavior that repeatedly occurred

18  throughout the entirety of AB's school years, namely that SFUSD failed to properly assess AB's

19  behavior by either not assessing him or by conducting an inappropriate assessment of him.[10]  [2442

20  ¶¶ 25-27, 2444 ¶ 34.] This is specific evidence of SFUSD's uncooperative actions in addressing

21  AB's behavioral needs.

22

23  [9]The Administrative Record includes four articles about Interactive Metronome, establishing it's
    therapeutic value for children with issues similar to AB. [2911-15, 2916-30, 2931-38, 2939-42.]

24  [10]Although the ALJ found that the failure to conduct an appropriate behavioral assessment of AB
25  in Fourth Grade was harmless because a behavioral assessment was unnecessary, the teacher
    reporting that is included in Ms. Blood-Walker's assessment suggests that the finding is in error.
26  [3402-11.] The teacher rating scale that was conducted as part of Ms. Blood-Walker's assessment
    showed AB having continued difficulty with arguing, his temper, defiance and distraction.
27  [3407.]  It also stated he interrupted, was easily upset and disobeyed or broke rules. [3408.]
    Communication problems and social skills deficits were also identified by his teacher at that time
28  as well. [3409-10.]

SFUSD's uncooperative actions is further support that the services received through Quest Therapeutic Camp, social skills therapy with Dominique Baudry and speech and language therapy with Floria Fung should have been reimbursed in full. The benefits of Quest Therapeutic Camps has already been discussed as it relates to AB's behavior. [*See supra*, Section IV.B.1.] The behavioral benefits to Ms. Baudry's therapy include improved ability to initiate with others and participate in a group activities. [2861-62.] The behavioral benefit to Ms. Fung's therapy is shown in her notes where she addressed following skills with AB:

- Discussing "visitor to the classroom" [3056]
- Behaviors to "Pay Attention to" [3059]
- "How to Greet Someone, Make someone Happy, Learning to play fair" [3021]
- Discussion regarding AB's angry behavior [3028]
- Discussion about "a) why is not a good idea to play by himself" [3033]

AB's mother should be reimbursed for Ms. Fung's services based upon Dr. Nunno's recommendation and SFUSD's uncooperative actions.

D.    *AB's ESY Services were Reasonable*

As discussed in Plaintiff's Motion for Summary Judgment, Section III.D., SFUSD denied AB a FAPE during the ESY periods by their pairing of their violations for failing to make a clear written offer of placement and failing to provide Prior Written Notice. This is further evidence of SFUSD's uncooperative behavior because year after year they failed to provide even the most basic of information to AB's mother concerning her decision to provide AB with private ESY services.

In this situation, AB's mother should be reimbursed for all services she notified SFUSD that she would provide during the ESY sessions. [2824, 3203, 2900-01.] Reimbursement is appropriate because SFUSD denied AB a FAPE, she gave notice of her unilateral removal of him from school, and SFUSD improperly denied the reimbursement and did not seek further information from her about the services. Further support for reimbursing AB's mother for the services she provided AB are found in Dr. Nunno's report and Dr. Guterman's report, as discussed above. Quest Therapeutic Camp was a reasonable service for AB because it addressed his need for facilitated social interactions in order to monitor and adjust his behavior. [2972-74.] His mother spent substantial

1   time transporting AB to and from Quest Therapeutic Camp [San Francisco to Alamo, California]

2   every day during the 2004, 2005 and 2006 eight week summer program, as well as, during the after

3   school programs in his Third and Fifth Grades. [2975.]

4       E.      *AB's Mother Acted Reasonably in Obtaining Supplemental Services*

5       AB's mother dedicated her life to obtaining appropriate services for AB. [3469-71,

6   specifically 3470-71.] When faced with an uncooperative school district, AB's mother responded

7   as most parents would - she sought private assessments and services to help her son deal with his

8   significant challenges.  The ALJ found that in Second Grade SFUSD failed to act appropriately to

9   address AB's increasingly problematic behaviors at school. [2390 ¶ 3-2395 ¶ 26.] AB's mother

10  obtained Dr. Nunno's assessment at the end of AB's Second Grade year as she worried that SFUSD

11  would recommend a more restrictive placement. [2394 ¶ 21.] After receiving Dr. Nunno's

12  assessment in June 2004 and receiving two specific requests in the Fall 2004 to revise AB's IEP,

13  SFUSD did nothing. [2830, 3224] In 2004, SFUSD provided no written response to AB's mother's

14  notice of privately funding summer services.  AB's mother could not rely on SFUSD to act as they

15  had shown her a pattern of not responding.

16      Instead of waiting for SFUSD to act, when its pattern was not to act, AB's mother sought out

17  private services to address AB's deficits.  She drove him throughout San Francisco and the East Bay

18  area in order to obtain them. [2975.]  She sought services that were consistent with private

19  assessments and recommendations. [*See supra*, Section IV. B.]  She acted reasonably in her efforts

20  to assist her son while facing an uncooperative school district.  She should be reimbursed for the

21  private services she obtained when faced with an uncooperative school district.

22  //

23

24

25

26

27

28

F.    *Full Reimbursement is Appropriate in AB's Situation Because SFUSD was Uncooperative and His Mother Acted Reasonably*

In sum, AB's mother should be reimbursed, in addition to the reimbursements ordered by the ALJ, as follows:

| Service | Amount | Administrative Record Citation |
|---|---|---|
| Quest Therapeutic Camp | $10,603.91 plus transportation | 2975 |
| Speech Therapy | $56,450.00 | 2975-78 |
| Music Therapy | $7,490.00 plus transportation | 2975, 2979 |
| Lindamood-Bell Learning Processes | $23,259.00 | 2975, 2980-81 |
| Interactive Metronome | $4,150.00 | 2975, 2983 |
| Social Skills Therapy | $4,920.00 | 2975, 2982 |
| Tina Guterman | $3,900.00 | 2975 |
| **Total Services** | $110,772.91 | |

These reimbursements are warranted given the significant and pervasive procedural violations that were committed by SFUSD over the course of four years.

CONCLUSION

AB requests that the Court deny SFUSD's Motion for Summary Judgment and entered Judgment in his favor by granting his Motion for Summary Judgment.

Respectfully Submitted,

ROBERTA S. SAVAGE

Attorney for Plaintiff A.B.

Dated: May 14, 2008          By: _____

Roberta S. Savage