United States District Court

For the Northern District of California

1
2
3          UNITED STATES DISTRICT COURT
4          NORTHERN DISTRICT OF CALIFORNIA
5
6
7   A.B., a minor, by and through
    W.F.B., his Guardian Ad Litem,
8
                Plaintiff,              No. C 07-4738 PJH
9
        v.                             **ORDER RE MOTIONS FOR**
10                                      **SUMMARY JUDGMENT**
    SAN FRANCISCO UNIFIED SCHOOL
11  DISTRICT,
12              Defendant.
    _____/
13
14       The parties' cross-motions for summary judgment came on for hearing on July 23,

15  2008 before this court.  Plaintiff, minor A.B. acting through W.F.B., his guardian ad litem

16  ("plaintiff" or "A.B."), appeared through his counsel, Roberta S. Savage.  Defendant San

17  Francisco Unified School District ("defendant" or "District") appeared through its counsel,

18  Kimberly A. Smith.  Having read all the papers submitted and carefully considered the

19  relevant legal authority, the court hereby GRANTS defendant's motion for summary

20  judgment, and DENIES plaintiff's motion for summary judgment, for the reasons stated at

21  the hearing, and as follows.

22                          **BACKGROUND**

23       This case arises under the Individuals with Disabilities Education Act ("IDEA"), which

24  requires school districts to provide qualifying disabled children with a "free appropriate

25  public education" ("FAPE").  See 20 U.S.C. § 1412(1).  Plaintiff, who is now twelve years

26  old, is "autistic-like," and has been treated as eligible for special education and related

27  services since preschool.  See Administrative Record ("AR") at 2389.  During the time

28  period in question, covering the second through fifth grades, A.B. resided within the

province of defendant San Francisco Unified School District, and attended Alamo

Elementary School.  AR 3351-65.  Plaintiff now brings suit against the District, alleging that

he was denied a free appropriate public education, in violation of the IDEA.

A.      Background Facts

        The pertinent facts are set forth in chronological order by school year:

        Kindergarten (2001-02).  During his kindergarten year, plaintiff was placed in a

general education classroom pursuant to an individualized education plan ("IEP") that

included a behavior support plan ("BSP") to address plaintiff's temper tantrums.  AR 2391.

In February 2002, the District performed a triennial assessment of plaintiff, which included a

psycho-educational assessment and a speech and language assessment.  AR 2400-2406;

3442-3468.

        First Grade (2002-03).  Plaintiff's IEP team met for his annual IEP review on March

26, 2003.  At the meeting, he received a new IEP with a new BSP, this time that addressed

plaintiff's refusal to do school work, in addition to plaintiff's tantrums.  AR 2391; 3351-3365.

        Second Grade (2003-04).  In second grade, plaintiff's primary teacher was Dorothy

Williams.  Plaintiff also received assistance from special education teacher Michelle Wong.

AR 409-412; 1419; 2391.  During this school year, the District grew concerned that

plaintiff's negative behaviors were escalating.  To that end, in February 2004, the IEP team

revised plaintiff's BSP and agreed to have a behaviorist observe plaintiff and further revise

his BSP.  AR 2391-92; 2794-2797.  The IEP team convened again on March 16, 2004,

during which plaintiff's mother presented the District with a document titled ""Mother's

Thoughts and Suggestions," which the team stated it would review, and then reconvene to

discuss.  AR 2394; 1095-98; 3099-3103.

        Subsequently, in April 2004, plaintiff's mother had plaintiff assessed by a private

neuropsychologist, Dr. Vincent Nunno.  AR 2394; 3425-3435.  On May 5, 2004, the IEP

team reconvened to finalize plaintiff's IEP.  At the meeting, the District recommended that

plaintiff be transferred to a special day class for disabled students from the general

2

United States District Court
For the Northern District of California

1  education classroom.  AR 1413; 3341-42.  Plaintiff's mother expressed concerns with this

2  proposal.  AR 3341-42.  Finally, the District offered plaintiff a summer special education

3  classroom.  AR 1245-53; 1270-72.

4      The IEP team again reconvened on May 18, 2004, at which point plaintiff's mother

5  advised the District of the results of Dr. Nunno's earlier assessment.  The IEP team agreed

6  to make no change in placement.  AR 3129.  Plaintiff's mother also advised the team that

7  plaintiff would be attending Quest Camp for the summer (a private camp).  AR 2394.

8  During the entire 2003-04 year, in fact, plaintiff had been receiving private speech and

9  language therapy, as well as private music therapy.  AR 2341-42.  Plaintiff did not,

10  however, give the District any notice of these services, or seek reimbursement for the

11  services, until plaintiff's filing of a request for due process.  Plaintiff's mother did, however,

12  advise the District of her plans to seek reimbursement for the screening costs, program

13  costs, and transportation costs related to Quest Camp, on June 9, 2004.  AR 2824.

14      Third Grade (2004-05).  Plaintiff's IEP team met on March 23, 2005, in order to

15  conduct plaintiff's triennial IEP (under the IDEA, triennial assessments must be made, in

16  addition to the yearly IEP assessments).  The IEP team noted goals and objectives in the

17  areas of social perspective taking, communication, and pragmatics.  The IEP team also

18  drafted, but did not originally include, goals in the areas of reading comprehension, writing

19  and organization, focus, and math.  AR 3157-3175; 3191.  Plaintiff's mother submitted a

20  response to the IEP which requested the addition of other goals, all of which were included

21  by the District in a revised IEP that was sent to plaintiff's mother on April 4, 2005.  AR

22  3191.

23      Subsequently, the IEP team reconvened on May 6, 2005, at which plaintiff's mother

24  made several requests and provided a list of questions.  AR 3184-90.  The team agreed to

25  reconvene on May 25, 2005, in order to discuss the goals and objectives, designated

26  instruction and services ("DIS") and the need for a functional behavior assessment ("FBA").

27  AR 3186.  On May 25, when the team reconvened, plaintiff's mother provided a different list

28

3

1   of questions.  AR 3271-77.  The team then agreed that all the goals and objectives

2   discussed at the March 23, 2005 IEP should be included, and the team offered plaintiff an

3   extended school year ("ESY") program for 4 hours a day, 4 days a week, in a special day

4   class.  AR 3271-72.

5           On May 18, 2005, plaintiff's mother sent a letter to the District giving notice that

6   plaintiff had been placed at Quest Camp from June 27 to August 19, 2005, in an after

7   school program from May 25 through June 24, 2005, and in private speech therapy from

8   May-August 2005.  She also notified the District that she would seek reimbursement for

9   these services (as in second grade, plaintiff was receiving private speech and language

10  therapy, private music therapy, private play therapy, and also participated in the Quest

11  Camp program, throughout the entire third grade year).  AR 3203, 2345-2347.

12          Fourth Grade (2005-06).  The District completed a FBA of plaintiff on November 21,

13  2005.  AR 3387-3341.  On March 9, 2006, the IEP team convened for plaintiff's annual

14  review.  AR 3249-3269.  The IEP that was drafted identified plaintiff's present levels of

15  performance, and included short-term objectives in the areas of comprehension and

16  analysis of text, writing-organization and focus, math, attention, pragmatics, and interaction

17  skills.  The IEP also provided that plaintiff would continue in a general education classroom

18  with an aide and would receive various consultation services, speech and language

19  services, and other supports and modifications, to assist plaintiff in attaining his goals and

20  progressing in the general curriculum.  AR 3258-3259.  The IEP also included a BSP which

21  indicated occasional interfering behaviors, and included strategies for reinforcing improving

22  behaviors.  AR 2398; 3252-3269.

23          On May 2, 2006, the IEP team convened and modified plaintiff's IEP and BSP in

24  regards to plaintiff's speech and language services, and also provided that plaintiff could

25  have an extra set of classroom textbooks for home preparation.  AR 3246-3248.

26          On June 8, 2006, plaintiff's mother wrote to the District, letting the District know that

27  plaintiff had been placed at Quest Camp from June 26 to August 18, 2006, had been

28

4

placed at Lindamood Bell for June and August, and would be given private music therapy from June through August.  Plaintiff's mother also indicated that she would seek reimbursement from the District.  AR 2900-01.

Finally, and as with prior years, plaintiff was also enrolled in numerous private therapies throughout the fourth grade school year.  AR 2345-2347.

Fifth Grade (2006-07).  Plaintiff entered the fifth grade with all preexisting IEPs in place.  Since plaintiff filed for a request for a due process hearing during his fifth grade year, no updates to the IEP occurred during this time.  Plaintiff continued, however, to receive private services from Lindamood Bell and Quest Camp during this time, as well as to participate in private music and metronome therapy.  AR 2355-2356.  The District was not notified of these placements.

B.    The ALJ Decision

Plaintiff filed his original request for a due process hearing on October 6, 2006.  He then filed an amended request for a due process hearing on November 22, 2006.  AR 2387.  The due process hearing occurred over a nine-day period beginning February 27, 2007, and ending April 12, 2007.  AR 2387.  The Administrative Law Judge ("ALJ"), Deidre Johnson, considered numerous issues, including the following issues, at the hearing:[1]

1.    Did District fail to assess Student in all areas related to his suspected disability of autistic-like behavior for the 2003-04 school year (second grade), the 2004-05 school year (third grade), the 2005-06 school year (fourth grade), and the 2006-07 school year (fifth grade) as follows:

A.    Failure to assess Student's behavior needs (all years), including failure to conduct a functional behavior analysis assessment for the 2003-2004 and 2004-2005 school years?...

C.    Failure to assess Student's communication, sensory and motor needs (all years except the 2004-2005 school years), attention, reading, and academic weakness needs (all years except the 2003-2004 school

_____

[1]    Not every issue considered by the ALJ is included in the recitation below, and certain questions and subsections are omitted.  This is because the District is not appealing those issues on which the ALJ held in plaintiff's favor.  Accordingly, only those issues on which plaintiff lost before the ALJ, are relevant for purposes of this motion.

year), auditory processing needs (all years except the 2003-2004 and the 2004-2005 school years), and social skills needs (all years)?

2. [Was] District's functional behavior assessment for the 2005-2006 school year appropriate and timely?

. . .

4. Did District deny Student a free appropriate public education (FAPE) for the 2003-2004 school year (second grade), the 2004-05 school year (third grade), the 2005-06 school year (fourth grade), and the 2006-07 school year (fifth grade), by failing to provide him with appropriate education and related services to address his unique needs related to autism, as follows:

A. Failure to develop requisite annual goals in the following areas of need: communication, sensory and motor, attention, reading, academic weakness, auditory processing, and social skills (all years)?

B. Failure to offer or provide an IEP that included appropriate designated instruction, services and supports, as follows: social skills training, speech and language therapy, behavior support, a trained aide, occupational therapy, and music therapy )all years), and academic skills intervention (all years except 2003-2004)?

C. Failure to make a clear written offer of placement for speech and language therapy (2003-2004 school year), and the 2004, 2005, and 2006 extended school years (ESY)?

D. Failure to provide prior written notice of District's refusals to initiate assessments or to initiate or make changes to Student's placement in response to Parent's requests (all years)?

AR 2388-89.

The ALJ issued a sixty-one page decision on June 18, 2007. AR 2387-2448. The ALJ found in plaintiff's favor with respect to some issues, and found that the District did not conduct certain assessments that it should have, and that some assessments were done improperly. The ALJ ultimately ordered reimbursement of approximately $8925, plus additional costs, in connection with certain of plaintiff's paid private assessments and programs.

The ALJ found in the District's favor, however, on the issue whether any significant denial of FAPE had occurred. The ALJ evaluated each alleged violation individually, and found that many were harmless, and led to no denial of any educational opportunity.

United States District Court

For the Northern District of California

1    It is with these findings in the District's favor that plaintiff now takes issue.  Plaintiff

2  seeks reversal of the ALJ's decision in these areas, as well as reimbursement for

3  educational expenses and related costs that are still outstanding.  As noted above,

4  defendant does not seek review of any of the findings in plaintiff's favor, but rather limits its

5  motion to a request that the court affirm the ALJ's findings that were made in the District's

6  favor.

7                                    **DISCUSSION**

8  A.     Legal Standards

9          1.      Summary Judgment

10    Summary judgment shall be granted if "the pleadings, depositions, answers to

11  interrogatories, and admissions on file, together with the affidavits, if any, show that there is

12  no genuine issue as to any material fact and that the moving party is entitled to judgment

13  as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of

14  the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to

15  a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

16  verdict for the nonmoving party.  Id.  The court must view the facts in the light most

17  favorable to the non-moving party and give it the benefit of all reasonable inferences to be

18  drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

19  587 (1986).

20          2.      IDEA Claims

21    The IDEA requires school districts to provide disabled children with a "free

22  appropriate public education" ("FAPE").  20 U.S.C. § 1412(1).  The education provided

23  must be "reasonably calculated to enable the child to receive educational benefits."  Bd. of

24  Educ. of Hendrick Hudson Central Sch. Dist. Westchester County v. Rowley, 458 U.S. 176,

25  207 (1982).  To that end, the IDEA requires school districts to create an "individualized

26  education program" (IEP) for each disabled child.  Id.  Generally, an IEP must contain: a

27  statement of the child's present levels of educational performance; a statement of

28

7

United States District Court

For the Northern District of California

1   measurable annual goals; a statement of the extent to which a child will not participate in a

2   regular classroom with nondisabled children; a statement of that special education and

3   related services to be provided; a statement of measurable annual goals; and a statement

4   of how the child's progress toward the annual goals will be measured.  See id. at §

5   1414(d)(1)(A)(I); Cal. Educ. Code § 56345.

6       The IDEA also authorizes parents challenging their child's IEP to request an

7   "impartial due process hearing."  See 20 U.S.C. § 1415(f).  The party that has requested

8   the hearing bears the burden of proof at the hearing.  See Schaffer v. Weast, 126 S.Ct.

9   528, 537 (2005).

10      A party aggrieved by the findings and decision made in a state administrative due

11  process hearing has the right to bring an original civil action in a state court of competent

12  jurisdiction or in federal district court in order to secure review of the disputed findings and

13  decisions.  See 20 U.S.C. § 1415(i)(2).  The party challenging the decision bears the

14  burden of persuasion on its claim.  See Clyde K. v. Puyallup Sch. Dist. No. 3, 35 F.3d 1396,

15  1399 (9th Cir. 2004).  In reviewing the administrative decision, the district court "shall

16  receive the records of the administrative proceedings; shall hear additional evidence at the

17  request of a party; and basing its decision on the preponderance of the evidence, shall

18  grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(B).

19      Judicial review of state administrative proceedings under the IDEA is less deferential

20  than the review of other agency actions.  See Ojai Unified School District v. Jackson, 4

21  F.3d 1467, 1471 (9th Cir. 1993).  However, "because Congress intended states to have the

22  primary responsibility for formulating each individual child's education, [courts] must defer

23  to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of

24  the states' administrative bodies."  Amanda J. Ex rel. Annette J. v. Clark County Sch. Dist.,

25  267 F.3d 877, 888 (9th Cir. 2001).  This review requires the district court to carefully

26  consider the administrative agency's findings.  See Susan N. v. Wilson Sch. Dist., 70 F.3d

27  751, 758 (3d. Cir. 1995).  "The amount of deference accorded the hearing officer's findings

28

8

1   increases where they are thorough and careful." Capistrano Unified Sch. Dist. v.

2   Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).  After such consideration, "the court is free

3   to accept or reject the findings in part or in whole." Susan N., 70 F.3d at 758.  When the

4   court has before it all the evidence regarding the disputed issues, it may make a final

5   judgment in what "is not a true summary judgment procedure [but] a bench trial based on a

6   stipulated record." Ojai, 4 F.3d at 1472.

7   B.   Preliminary Issues

8         The overriding issue raised by the parties' cross-motions is whether the ALJ

9   improperly decided that the District did not deny plaintiff a FAPE from second through fifth

10  grades in connection with certain claims that the ALJ ruled upon, and if so, whether

11  plaintiff's mother should be reimbursed for the private services she provided for plaintiff

12  during that time.  Resolution of this larger issue depends, in turn, on resolution of the

13  parties' disputes regarding the various sub-issues addressed and decided by the ALJ.

14        Preliminarily, the parties raise several issues going to the ALJ's consideration of

15  procedural requirements and standards.

16        1.   Whether the ALJ Misapplied the Statute of Limitations

17        Plaintiff preliminarily takes issue with the ALJ's application of a three year statute of

18  limitations that barred consideration of any alleged violations occurring prior to October 6,

19  2003.  Specifically, plaintiff contends that the ALJ's application of a three year limitations

20  statute resulted in the improper refusal to consider (1) whether the District's offer of

21  integrated playgroups in the March 2003 IEP violated the IDEA; (2) whether the District's

22  offer of speech and language therapy in the March 2003 IEP violated the IDEA; and (3)

23  whether the annual goals listed on the March 2003 IEP were measurable, as required by

24  the IDEA.

25        The ALJ, as plaintiff points out, held that each of plaintiff's three alleged violations

26  required an examination of the underlying IEP "as of the time [the IEP] was adopted" – i.e.,

27  in March 2003.  See AR 2412, ¶ 98 (whether "annual goals complied with the law should be

28

9

United States District Court

For the Northern District of California

1   examined as of the time that they were adopted by the IEP team in March 2003"); id. at

2   2426, ¶ 165 (whether District's offer of speech and language therapy was clear "must be

3   evaluated at the time it was made" in March 2003); id. at 2426, ¶ 166 (whether District

4   made a clear offer of integrated play groups "must be evaluated at the time it was made" in

5   March 2003).  However, since the March 2003 IEP fell outside the IDEA's three year

6   statute of limitations (with a limitations deadline of October 6, 2003), the ALJ also held that

7   the merits of each of these purported violations could not generally be litigated in the

8   administrative proceedings before it.  See id.

9        Preliminarily, neither party actually disputes the ALJ's application of a three year

10  statute of limitations – to be triggered from the filing of plaintiff's administrative claim – per

11  se.  See Cal. Educ. Code § 56505(l), eff. October 7, 2005 to October 8, 2006 (amended by

12  Cal. Educ. Code § 56505(l), eff. October 9, 2006).  Nor do they dispute that, when the three

13  year statute of limitations is applied in this case, it operates to bar any claims arising out of

14  conduct occurring prior to October 6, 2003.

15       Rather, plaintiff's contention appears to be that, in applying the three year limitations

16  period so that it excluded plaintiff's claims surrounding the written offers and goals listed on

17  the March 2003 IEP, the ALJ improperly "characterized" the statute of limitations by

18  "presum[ing] a bright line rule that the date the IEP is signed is automatically the date of

19  discovery for a procedural violation."  See Pl. Mot. Summ. Judg. at 8:18-20.  Plaintiff points

20  out that in many cases, it is impossible to discover procedural violations in connection with

21  an IEP as of the date the IEP was signed.  In view of this, plaintiff contends that the only

22  question in applying the statute of limitations is whether an IDEA claim relates to an IEP

23  plan that was operative at any point within the three year statute of limitations.  In other

24  words, as long as some portion of plaintiff's March 2003 IEP was operative and in effect

25  after October 6, 2003, plaintiff contends that the court should consider any alleged

26  violations stemming from the March 2003 IEP, even though the IEP was technically

27  adopted outside the statute of limitations period.

28

United States District Court

For the Northern District of California

1    The court, however, rejects this argument for two reasons.  First, as applied here,

2    plaintiff offers no authoritative legal support for the expansive proposition that IDEA claims

3    relating to offers of placement or the inclusion of annual goals in an IEP should be

4    actionable even though made outside the limitations period, simply because some part of

5    the IEP was operative within the limitations period.[2]

6    Second, plaintiff overlooks the fact that the ALJ *did*, in fact, expressly distinguish

7    between claims based on the stated goals or clarity of offers made in the March 2003 IEP,

8    and any claims under the IDEA that the District should have known or discovered while

9    *implementing* the March 2003 IEP goals or offers at any point *after* October 6, 2003.  The

10   ALJ expressly noted that, while the former claims were properly deemed to fall outside the

11   limitations period, the latter can properly state a basis for a claim under the IDEA, as the

12   District is still obligated to re-examine the propriety of any goals or offers made in the

13   underlying IEP when circumstances require it – the underlying IEP date notwithstanding.

14   See AR 2412, ¶ 98 (District would have been obligated to re-examine March 2003 annual

15   goals after October 6, 2003 if "new changes, incidents, or information that called into

16   question the appropriateness of the goals in place" came to light); id. at 2426, ¶ (clarity of

17   offers made at time of March 2003 IEP are "separate issues" from "whether District should

18   have re-examined Student's [skills and services] during second grade").

19   Plaintiff's lack of concrete legal authority and the ALJ's recognition that

20   implementation of an IEP can still raise actionable claims where the IEP itself was executed

21   outside the limitations period, belie plaintiff's argument that the ALJ committed error by

22   improperly characterizing the statute of limitations.  Rather, the court concludes that the

23   ALJ correctly acknowledged that actionable conduct may be *based* on an earlier IEP that

24   falls outside the statute of limitations, but that in this case, the conduct complained of is not

---

[2]    To the contrary, plaintiff's reliance on S.B. v. Pomona Unified Sch. Dist., 2008 WL 1766953 (C.D Cal. 2008) is completely inapposite, as even plaintiff concedes that this case "did not address the issue of the statute of limitations."  See Pl. Opp. Summ. Judg. at 1:14-16.

United States District Court

For the Northern District of California

1    actionable since the conduct complained of by plaintiff – i.e., the validity and notice given

2    by the District with respect to the offers for integrated play and speech and language

3    therapy, and the validity of the annual goals stated on the March 2003 IEP – falls outside

4    the limitations period.  And as defendant has correctly noted, plaintiff's three alleged claims

5    require the court to focus on the adequacy of the IEP at the time it was offered.  See

6    Adams v. State of Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999).

7         In sum, the court finds that the ALJ correctly concluded that the statute of limitations

8    precludes from consideration plaintiff's claims relating to the District's offers and goals in

9    the March 2003 IEP.  Plaintiff's motion for summary judgment as to this issue is therefore

10   DENIED.  The District's cross-motion for summary judgment on the issue is GRANTED.

11        2.    Whether Plaintiff's Mother was Denied Meaningful Participation Such that

12              Denial of FAPE Occurred

13        Plaintiff asserts that the ALJ erred when she found that no denial of a FAPE existed

14   on the basis of his mother's lack of meaningful participation in the IEP process.

15   Specifically, plaintiff contends that the District failed to respond to plaintiff's mother's

16   numerous oral and written requests for services, and requests for information about

17   programs, assessments, goals and objectives.  Plaintiff cites to several examples in the

18   record that purportedly demonstrate that the District prevented plaintiff's mother from

19   meaningfully participating in the IEP process.  See, e.g., AR 2781-90; 2830-1; 2836-60;

20   2892-3; 3095-129; 3206-26; 3231.

21        The ALJ addressed the issue of plaintiff's mother's meaningful participation in the

22   IEP process in a footnote on page 42 of the ALJ's decision.  See AR 2428.  The ALJ noted

23   therein that plaintiff's claim that his mother was denied meaningful participation (1) was

24   false and unsupported by the evidence in the record, and (2) was outside the scope of

25   plaintiff's claims at any rate, since plaintiff never raised the issue as a claim in his

26   complaint.  Id.

27        There is no evidence in the record that directly contradicts the ALJ's ruling in this

28

12

United States District Court

For the Northern District of California

1   regard.  Indeed, even the evidence that plaintiff relies on in support of a purported lack of

2   meaningful participation, all demonstrates the *opposite* – i.e., that plaintiff's mother *was*

3   meaningfully participating in the IEP process.  The record is replete, for example, with the

4   mother's requests and observations, many of which were included as addendums to the

5   IEPs that were adopted by the District.  See, e.g., AR 2781; 2853; 3097; 3099.  The record

6   also demonstrates that the District received the mother's suggestions, and intended to

7   "review [the] suggestions and then call a team meeting."  AR 3097.  Defendant,

8   furthermore, has pointed to other examples of plaintiff's mother's participation in the IEP

9   process, and even of some instances in which plaintiff's mother's suggestions were

10  considered and implemented.  See, e.g., AR 165, 107, 450-452, 478-79, 759, 813-15.

11      Plaintiff's mother may not have received IEPs that were drafted to her satisfaction.

12  However, this does not mean that she was denied the opportunity to participate in the

13  process.  While she is entitled to the latter, she is not guaranteed the former.  See, e.g.,

14  Amanda J. v. Clark County Sch. Dist., 267 F.3d 877 (9th Cir. 2001)(it is procedural flaws

15  that infringe on parent's *participation* in the IEP process that constitute a denial of FAPE).

16  All that is required under the IDEA is that parents have the opportunity to participate in the

17  decision making process.  See 20 U.S.C. § 1415(f)(3)(E)(ii)(II)("denial of FAPE occurs only

18  if procedural violations of IDEA "significantly impeded the parents' opportunity to participate

19  in the decisionmaking process regarding the provision of a free appropriate public

20  education to the parents' child").  And here, the record demonstrates numerous occasions

21  on which plaintiff's mother seized the opportunity to participate in the IEP process in a

22  meaningful way.  This is so, even if her recommendations were not always taken into

23  account or if a response to her requests was not always forthcoming.  See, e.g., AR 178,

24  180-82 (mother's hearing testimony asserting that District failed to respond to mother's

25  letters); but cf. AR 188 (acknowledging that District responded to some of mother's

26  communications, if not all).

27      Moreover, the ALJ also noted that plaintiff's claims below did not even raise a

28

13

United States District Court

For the Northern District of California

1   challenge to the mother's participation in the IEP proceedings.  Accordingly, and although

2   not raised by the parties here, the ALJ's finding that plaintiff's attempt "to insert a claim for

3   denial of parental participation as a separate IDEA violation fails," was not improper.

4          In sum, plaintiff's claim that the ALJ should have found a denial of a FAPE based on

5   the District having prevented the mother's lack of meaningful participation in the process, is

6   unpersuasive.  The court accordingly DENIES plaintiff's motion for summary judgment on

7   this issue.

8          3.      Harmless Error/Loss of Educational Benefits Theory

9          Plaintiff also takes issue with the ALJ's application of the harmless error standard.

10  Under the IDEA, not every procedural violation of the statute results in a denial of a FAPE.

11  Rather, only those procedural violations that result in a loss of educational opportunity or a

12  deprivation of educational benefits, or that seriously infringe on the parents' opportunity to

13  participate in the IEP process, result in a denial of a FAPE.  See, e.g., R.B., ex rel. F.B.v.

14  Napa Valley Unified Sch. Dist., 496 F.3d 932, 938 (9th Cir. 2007).  Here, asserts plaintiff,

15  the ALJ correctly concluded on no less than 17 occasions that the District committed

16  procedural violations, but incorrectly concluded that nearly half of these violations were

17  harmless.  See Pl. Reply Summ. Judg. at 3:3-7.  According to plaintiff, the ALJ erred by

18  refusing to take into account the cumulative effect of the procedural violations committed by

19  the District, which supported a denial of a FAPE, even if the violations individually did not.

20  Similarly, and related to this issue, plaintiff also takes issue with the ALJ's conclusion that

21  plaintiff failed to demonstrate a loss of educational opportunity or benefits such that a denial

22  of FAPE was evident.

23         As to plaintiff's first argument, it fails to persuade.  While defendant correctly notes

24  that the law requires the ALJ and this court to examine each alleged violation for a loss of

25  educational opportunity or benefits or infringement of parental rights before determining

26  that a denial of FAPE has occurred, plaintiff has not offered a single citation to case law

27  that suggests that such an analysis should be made based on the cumulative effect of any

28

14

United States District Court

For the Northern District of California

1    violations.  While plaintiff asserts that such precedent exists in the criminal law arena, the

2    court declines to import a criminal law standard to the instant case without more, in view of

3    the unique standards and laws applicable in the IDEA arena.

4         With respect to the related issue raised by plaintiff – i.e., the ALJ's finding that

5    plaintiff had not met his burden in demonstrating a loss of educational benefits or

6    opportunities in connection with any of the District's procedural violations – the ALJ

7    correctly noted that this standard had to be met before denial of a FAPE could be found.

8    And as explained more fully below, plaintiff fails to demonstrate that this standard has been

9    met.  Moreover, to the extent plaintiff argues that any loss in educational benefits or

10   opportunities resulting from procedural violations were difficult to quantify in this case

11   because of his mother's insistence on outside supplementation for plaintiff's education, the

12   purpose of plaintiff's argument is not wholly clear.  If plaintiff is asserting that the ALJ was

13   required to quantify the educational benefit provided plaintiff by the mother's supplementary

14   services and somehow discount these benefits in order to determine the loss in plaintiff's

15   educational benefits purportedly occasioned by the District's education plan, plaintiff offers

16   no legal authority supportive of this contention.  Thus, to the extent plaintiff is arguing that,

17   as a matter of law, it was error to take any supplemental services into account in ultimately

18   determining that plaintiff did not suffer any loss in educational benefits, the court rejects the

19   argument.

20        In sum, therefore, to the extent plaintiff seeks a finding that the ALJ improperly

21   applied the harmless error standard, as well as a finding that the ALJ improperly analyzed

22   whether a loss of educational opportunity occurred sufficient to give rise to a denial of a

23   FAPE, the court DENIES plaintiff's motion.

24   C.   The Alleged Procedural Violations Giving Rise to Denial of a FAPE

25        This issue focuses on the heart of the parties' arguments – i.e., whether the ALJ

26   correctly found that the District did not deny plaintiff a FAPE from the second through fifth

27   grade years, based on plaintiff's allegations of myriad procedural violations.  Each of

28

plaintiff's alleged violations, and the ALJ's decision thereon, is analyzed in turn below.[3]

1.   District's failure to provide prior written notice for refusals to initiate
     assessments, changes in placement, and make changes in response to
     mother's requests

"Prior written notice" is required under the IDEA whenever a school district proposes, or refuses to initiate or change, the identification, evaluation, educational placement, or the provision of a FAPE.  See 20 U.S.C. § 1415(b)(3).  A school district's written proposal or refusal to do so must include a description of the action proposed or refused by the district, an explanation for the proposal or refusal, a description of other options considered by the IEP team, the reason why they were rejected, and a description of factors relevant to the district's decision, among other things.  See id. at § 1415(c)(1).  Failure to provide prior written notice is a procedural violation of the IDEA.  See, e.g., Union Sch. Dist. v. Smith, 15 F.3d 1519, 1526 (9th Cir. 1994).

Plaintiff asserts that the ALJ incorrectly found that the District provided sufficient prior written notice of its refusals to initiate or change plaintiff's current placement with respect to the provision of ESY Quest Camp programs for 2004, 2005 and 2006, and the provision of  neuropsychological assessments and an FBA in 2005.  While plaintiff acknowledges that the ALJ found that *in*sufficient written prior notice had been given of the District's refusal to initiate or change plaintiff's placement in connection with other ESY programs for 2004-06, plaintiff contends that the ALJ wrongly held these errors harmless.

a.   the ALJ's rulings

In considering the District's alleged failure to provide prior written notice with respect to the District's purported refusals to make changes in plaintiff's placement or to conduct certain assessments requested by plaintiff's mother, the ALJ preliminarily noted that plaintiff's complaint failed to properly identify at the outset the particular "refusals" that plaintiff was challenging on prior written notice grounds.  Id.  See AR 2428.  Nonetheless,

---

[3]     As noted previously, the only issues decided by the ALJ that are before the court are those on which the ALJ ruled in the District's favor.

16

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    certain alleged refusals became clear during the hearing, including:  the District's alleged

2    refusal to fund plaintiff's Quest Camp services for all 2004-06 summers; the District's failure

3    to provide written notice every time plaintiff's mother submitted 'requests for services and

4    questions regarding [plaintiff's] program;' the District's denial of plaintiff's mother's 2004

5    requests for urgent positive behavioral intervention; the District's denial of plaintiff's

6    mother's 2004 request for a behavioral assessment; and the District's denial of plaintiff's

7    mother's 2004 and 2005 requests for a comprehensive neuropsychological assessment in

8    the second and third grades.  See AR 2428-29.

9         Having narrowed down the refusals at issue, the ALJ then made findings with

10   respect to each.  All, with the exception of the second noted above, are now at issue before

11   the court.  First, the ALJ found that, with respect to the District's purported failure to provide

12   written notice regarding plaintiff's summer ESY programs – specifically, plaintiff's

13   placement in the summer Quest Camps – the District provided sufficient notice of refusal in

14   writing at the 2004, 2005, and 2006 spring IEP meetings.  AR 2429-30.  At the 2004 IEP

15   meeting, for example, written notes of the meeting reflected that plaintiff's mother "shared"

16   her summer plans for student with the District, and while the District failed to understand

17   that the mother was proposing alternative services, the District's refusal to change

18   placement was made in the written placement offer for ESY at a public school, and the IEP

19   contained all required elements for prior written notice.  AR 2429.  As such, the ALJ found

20   that an additional response to the letters sent by plaintiff's mother in June 2004 notifying

21   the District of placement in the Quest Camp and requesting reimbursement, was

22   unnecessary (since a refusal had already been conveyed).  Similarly, for 2005 and 2006,

23   the ALJ found that the District's refusal to change placement for the summer from a public

24   school to the Quest Camp was indicated in the spring IEPs, and satisfied the District's prior

25   written notice requirement, such that no additional refusal was necessary by the District in

26   response to the mother's May 2005 and June 2006 letters again notifying the District of

27   placement in Quest, and requesting reimbursement.  AR 2429-30.

28

United States District Court

For the Northern District of California

1    The ALJ did note, however, that in each of the letters sent by plaintiff's mother to the

2  District in June 2004, May 2005, and June 2006, the mother also gave notice of plaintiff's

3  enrollment in additional private services and therapy programs (e.g., social skills programs,

4  speech and language therapy, Lindamood Bell, music therapy, etc.) which had *not* been

5  addressed by the District in the preceding IEPs.  Accordingly, the ALJ found that the District

6  *did* commit a procedural violation in failing to give prior written notice of the District's

7  refusals with respect to these programs.  <u>See</u> AR 2429-30.  The ALJ found the errors

8  harmless, however, as plaintiff failed to establish that the violation resulted in a loss of

9  educational benefits or services.  <u>Id</u>.

10    Second, the ALJ found that the District failed to provide prior written notice of its

11  refusals to assess plaintiff's behavioral issues in 2004.  AR 2430.  The ALJ noted that the

12  District delayed responding to the mother's earlier requests for behavioral assessments

13  until the May 18, 2004 IEP meeting.  Although the District did send a letter stating they

14  were going to defer a functional behavior assessment, it was not a prior written notice of

15  refusal because it did not contain all required elements of prior written notice.  <u>Id</u>.  While the

16  District did issue a BSP in May 2004, which was a written response to the mother's request

17  for positive behavioral intervention, the response did not explain why nothing further was

18  offered, and so did not constitute effective prior written notice.  AR 2430.  The ALJ held that

19  these refusals to provide prior written notice in response to the mother's requests for

20  behavioral assessments and intervention rose to the level of a denial of FAPE and ordered

21  reimbursement of the costs of plaintiff's placement in the summer 2004 Quest Camp as a

22  result.  <u>See</u> AR 2430.

23    Finally, with respect to plaintiff's claim that, in 2005, the District failed to provide prior

24  written notice of its refusal to conduct a neuropsychological assessment and an FBA, the

25  ALJ found that the District had satisfactorily provided prior written notice of its refusals to do

26  both.  Specifically, the ALJ found that the District's Autism Content Specialist, Ms. Sodhi,

27  had mailed a letter to plaintiff's mother on June 14, 2005, setting forth the District's refusal

28

to conduct a neuropsychological assessment, and confirming the District's agreement to

conduct an FBA and psycho-educational assessment.  AR 2340-41.  The letters met all the

requirements for notice.  Id.

> b.     whether the ALJ was correct

In connection with the District's purported failure to provide prior written notice of its

refusals regarding ESY services, plaintiff asserts that something more than simply a written

offer of placement regarding the special day classes (made in connection with plaintiff's

IEPs) was required in order to constitute a sufficient notice of the District's refusal to send

plaintiff to Quest Camp.  Instead, plaintiff contends that the District was required to tell

plaintiff's mother that it would not pay for the summer services she contracted for, and to

give the reasons why.  With respect to the FBA and neuropsychological assessments,

plaintiff takes issue with the ALJ's findings regarding the spring 2005 failure to assess only,

contending that Ms. Sodhi's letter refusing to conduct a neuropsychological assessment

and confirming the agreement to conduct an FBA and psycho educational assessment, did

not rise to the level of prior written notice.

As to the former, the ALJ properly considered the language of the IEPs issued in the

spring of 2004, 2005, and 2006, and noted that the District's consideration of the mother's

plans for the summer, and the District's decision to offer special day classes instead – all in

written form – constituted a valid written notice of the District's refusal to make the Quest

Camp placements.  In view of this, it was reasonable for the ALJ to find that the mother's

subsequent letters stating that she had "carefully reviewed" the District's proposal, but was

unilaterally placing plaintiff in Quest Camp, required no further documentation or notice.

Moreover, the ALJ was also reasonable in finding that this holding did *not* extend to

plaintiff's mother's request for private services and therapies in addition to the Camp Quest

program, since the written IEPs never mentioned these additional therapies and services

(unlike the mention of the special day school option).  As such, plaintiff's argument that the

ALJ improperly decided that prior written notice of refusal regarding Quest Camp had been

United States District Court
For the Northern District of California

1   given, is unavailing.

2        Plaintiff does not, moreover, point to any evidence suggesting that the District's

3   failure to provide written notice of refusal in connection with his mother's request for

4   additional summer therapies and programs, actually resulted in a loss of educational

5   benefits to him.  For instance, there is no evidence of reduced test scores in the areas

6   targeted by those private services and therapies.  Accordingly, the ALJ's decision that no

7   denial of FAPE resulted with respect to the ESY or additional therapies and services for the

8   three summer years, must also be upheld.

9        Second, and as to plaintiff's argument that the ALJ incorrectly found that the District

10  provided prior written notice of its refusal to conduct a neuropsychological assessment and

11  FBA in spring 2005, plaintiff again presents no evidence showing how the ALJ committed

12  error.  Indeed, plaintiff's only grounds for asserting that the ALJ was wrong is that after

13  sending Ms. Sodhi's letter to plaintiff, the District "failed to then follow up with the evaluation

14  of provide prior written notice stating why that particular assessment was no longer

15  necessary."  See Opp. to Def. MSJ at 8:8-10.  However, this is not a claim that the District

16  failed to provide prior written notice – rather, it is a claim by plaintiff that the District failed to

17  properly conduct an *assessment* of plaintiff's neuropsychological state.

18        Moreover, it should be noted that while plaintiff attempts for the first time in his

19  opposition to defendant's summary judgment motion to raise entirely new grounds to

20  support his claim that the District failed to provide prior written notice, none of these

21  grounds were considered by the ALJ.  As noted above, the ALJ was limited only to those

22  issues that plaintiff raised during testimony, and those issues were limited to the ESY,

23  behavioral, and neuropsychological issues noted above.  Accordingly, these are the only

24  issues that the court considers here.

25        In sum, the court finds the ALJ's decision on this matter correct and well-reasoned,

26  and worthy of deference.  Defendant's motion for summary judgment as to this issue is

27  accordingly GRANTED.  Plaintiff's cross-motion as to the same issue is DENIED.

28

2.    <u>District's failure to make a clear offer of placement for services during ESY and not providing prior written notice</u>[4]

A student's IEP must contain a clear written offer of placement.  The offer must include a statement of the special education and related services and supplementary aids and services, including program modification or supports.  <u>See Union Sch. Dist. v. Smith</u>, 15 F.3d 1519, 1526 (9th Cir. 1994); see also 20 U.S.C. § 1415(b)(3)(A).  The offer must also include a statement of the anticipated frequency, location and duration, as well as sufficient information so that the level of the district's commitment of resources is clear, although the offer may be stated in a range if a range of services meets the student's needs.  <u>Id</u>.

Plaintiff seeks summary judgment on grounds that the ALJ incorrectly determined that no denial of a FAPE occurred with respect to the District's offers of placement in connection with ESY services for the summers of 2004, 2005, and 2006.  The District seeks summary judgment affirming the ALJ's decision as to this issue.

a.    the ALJ's decision

The ALJ considered and ruled on plaintiff's allegations that the District failed to make a clear written offer of placement for speech and language therapy, integrated play groups, and ESY programs.  As indicated above in connection with the statute of limitations argument, the ALJ properly declined to consider the merits of plaintiff's allegations with respect to the offers of speech and language therapy, and integrated play groups, since those offers came in March 2003 and are therefore outside the statute of limitations.  As for the ESY services, however, the ALJ found that the District's offer of ESY services was sufficiently clear for the 2004 and 2005 years, but not for the 2006 year.

Specifically, with respect to 2004, the ALJ noted that the District's May 5, 2004 written IEP offered an SDC placement for plaintiff at Starr King Elementary School, since

---

[4]    This issue is related to the foregoing issue.  Indeed, it is difficult to tell this issue apart from the foregoing in the parties' papers, particularly since plaintiff routinely refers to the two issues together.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  the District did not operate general education summer school.  See AR 2426.  The offer

2  was carefully explained to plaintiff's mother, who wrote a letter indicating that she had

3  "carefully considered" the District's offer, but had decided on unilateral placement of plaintiff

4  at Quest Camp instead.  AR 2426-27.

5       With respect to 2005, the ALJ found that the District stated in its May 25, 2005 IEP in

6  writing that an offer was being made for "placement in a 4 hour a day, 5 days a week, for 4

7  weeks of ESY" at Lafayette Elementary.  Again, the District noted that there was no general

8  education summer school for 3rd grade level students.  AR 2427.  The offer was also

9  explained verbally to plaintiff's mother, who indicated in a subsequent letter to the District

10  that she had "carefully considered" the offer, but had again opted for unilateral placement in

11  Quest Camp for the summer.  AR 2427.

12      Finally, with respect to 2006, the ALJ found that the District's written offer at the

13  March 2006 IEP meeting failed to clearly state what ESY services were being offered.

14  While the District's Autism Content Specialist, Ms. Sodhi, wrote a letter in June 2006

15  offering services in a clear and sufficient fashion, this offer was made 3 months after the

16  IEP and failed to meet the requirements of the IDEA.  AR 2428.  Nonetheless, no denial of

17  a FAPE occurred because the evidence demonstrated that plaintiff's mother understood

18  and considered the ESY services offer for 2006 nonetheless.  Id.

19          b.      whether the ALJ erred

20      Beginning with the 2004 offer of ESY services, the District concedes from the outset

21  that the ALJ erred in one respect – the ALJ incorrectly stated in paragraph 168 of its factual

22  findings that the District made an offer of ESY services in the form of an SDA placement at

23  Starr King Elementary, in 2004.  AR 2425.  In reality, however, this statement refers to the

24  following school year's offer of placement, not the 2004 ESY offer.  Nonetheless, the

25  District contends that the ALJ's error was harmless, because the rest of the ALJ's

26  conclusion – that the District carefully explained its offer to plaintiff's mother, and that the

27  mother sent a letter saying she had "carefully reviewed" the offer but decided to decline it –

28

United States District Court

For the Northern District of California

1  remains correct.  Plaintiff, by contrast, contends that this error creates an ambiguity that

2  demonstrates that the District failed to make a clear written offer of placement for the 2004

3  ESY.

4       On this issue, plaintiff is correct.  The IDEA requires a clear written offer that sets

5  forth a sufficiently specific statement of what the actual offered services will be.  Here, while

6  the District has conceded that the ALJ erred, and looked to the wrong written offer in

7  concluding that the 2004 ESY offer had been clearly written, the District is unable to point

8  to evidence that nonetheless demonstrates that a sufficiently explicit offer was made.

9  Indeed, as the District acknowledges, the spring 2004 IEP did not document "the specifics

10 of the program."  AR 3336; Def. Mot. Summ. Judg. at 19:23-20:1.  Rather, the District

11 seeks to rely on the fact that the ESY services were verbally explained to plaintiff's mother,

12 who understood the offer and then rejected it.  AR 131-32; 829-40; 1270.  However, a

13 verbal communication of an offer is not sufficient to satisfy the District's obligation to make

14 a clear written offer.  Accordingly, the court finds that the ALJ erred in this conclusion, and

15 that the District did not make a clear written offer to plaintiff's mother for 2004 ESY

16 services.  The court finds the error was harmless, however, as the District *does* correctly

17 note that notwithstanding the District's failure to make a proper offer, the mother

18 understood the offer enough to subsequently reject it.  AR 134-35; 1133-34; 2824; 3325.

19      With respect to the 2005 ESY offer, however, the ALJ correctly noted that the

20 District's offer of ESY services was clear, and sufficiently detailed to satisfy the IDEA's

21 requirements.  AR 3271-72.  Indeed, the May 2005 IEP expressly states the details of

22 plaintiff's ESY services, and the fact that no general education services were being offered

23 by the District as an alternative.  Id.  Moreover, plaintiff's mother subsequently wrote to the

24 District stating she had carefully considered the ESY placement, and chose to place

25 plaintiff in Quest Camp.  AR 3203.  In sum, therefore, the ALJ's decision on this point is

26 entitled to deference.

27      Finally, with respect to the 2006 ESY offer, the ALJ was again justified in holding

28

23

United States District Court

For the Northern District of California

1   that the District's failure to make a clear written offer of placement was harmless error.  The

2   ALJ properly noted that plaintiff's mother did not receive a written offer of placement until a

3   confirming letter was sent to her almost three months after the initial verbal IEP offer, a

4   clear violation of the IDEA.  AR 3196.  However, for the same reasons noted above, the

5   mother's subsequent confirmation that she understood the initial ESY offer of placement,

6   and her decision to reject it, render the District's failure harmless error.  The ALJ's decision

7   on this point is thus entitled to deference.

8        In sum, the court hereby finds the ALJ's decision with respect to the District's failure

9   to make a clear offer of placement in connection with the 2004 ESY services erroneous, but

10  holds the error was harmless.  The court furthermore affirms the ALJ's decision with

11  respect to the District's purported failure to make a clear offer of placement in connection

12  with the 2005 and 2006 ESY services.  Thus, summary judgment is GRANTED in

13  defendant's favor, and is DENIED to plaintiff.

14        3.    District's failure to assess AB's educational needs

15       Plaintiff makes several claims that the District failed to assess plaintiff's educational

16  needs.  Plaintiff seeks judgment in his favor as to each claim that was decided unfavorably

17  against him by the ALJ, while the District seeks a ruling affirming the ALJ's decision.  Each

18  claim is considered in turn.

19            a.    failure to assess behavioral needs

20       Plaintiff asserts that the District failed to properly assess plaintiff's behavioral needs

21  in all four years, from the second through the fifth grades.  In considering this claim and the

22  evidence introduced at the hearing, the ALJ found that the District was legally required to,

23  but did not, conduct a functional behavioral assessment during plaintiff's second grade year

24  in the spring of 2004, despite knowledge of plaintiff's significant behavioral problems.  See

25  AR 2395.  To that end, the ALJ found that the District had denied plaintiff a FAPE during

26  the 2003-2004 school year, and ordered that the District reimburse plaintiff's mother for the

27  cost of the Quest Camp in summer 2004.  AR 2442.

28

1    With respect to following years, the ALJ found that the District similarly committed a

2    procedural violation during plaintiff's third grade by agreeing to conduct an FBA

3    assessment when requested by plaintiff's mother in May 2005, and subsequently delaying

4    any such assessment until the fall of 2005.  See AR 2397.  Unlike the prior finding, the ALJ

5    found this error to be harmless, however, in view of evidence demonstrating that, despite

6    exhibiting behavioral issues at the beginning of the 2004-05 school year, plaintiff's

7    maladaptive behaviors were mostly resolved by June 2005 and plaintiff's behaviors were

8    not serious enough by the District to conduct an FBA; rather, the District did so only

9    because plaintiff's mother requested it.  AR 2396-97; 2442.  Thus, no loss of educational

10   benefit was established as a result of the delay.  Finally, the ALJ found that the evidence

11   did not establish the District's failure to assess plaintiff's behavioral needs in either fourth

12   grade or fifth grade.  During both the fourth and fifth grades, plaintiff did not establish that

13   his mother had requested reassessment of his behavioral needs, nor did the evidence

14   establish that the District was required to reassess plaintiff's behavioral needs.  AR 2398;

15   2442.

16   Plaintiff primarily disagrees with the ALJ's conclusion that the District's delay in

17   conducting an FBA during plaintiff's third grade year was harmless error, and the ALJ's

18   conclusion that no FBA was warranted in the fourth and fifth grades.  Plaintiff asserts that

19   the BSPs that were in place during these years identified daily inappropriate behaviors by

20   plaintiff.  AR 3307, 3323.  Moreover, plaintiff argues that while the District attempted to

21   conduct an FBA in fall of 2005, the ALJ found the assessment to be "untimely, incomplete

22   and inappropriate," precisely because of plaintiff's disruptive classroom behavior.  AR 2411.

23   Thus, contends plaintiff, the behavioral problems noted during plaintiff's third through fifth

24   grades clearly warranted proper assessments.

25   Plaintiff's argument overlooks, in the first place, the difference between BSPs and

26   FBAs.  Whether plaintiff's BSPs indicated the presence of maladaptive behavioral

27   tendencies that required attention is distinct from whether the inappropriate behavior that

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    plaintiff was demonstrating was *sufficiently severe* that it required an FBA.  See, e.g., Cal

2    Code Regs., tit. 5 § 3001 (California law requires that a FAA or FBA be undertaken

3    whenever a student develops a "serious behavior problem," which is defined as a student's

4    actions exhibiting self-injurious, or assaultive tendencies, or a student's actions in causing

5    serious property damage or other pervasive and maladaptive tendencies).  Yet as to this

6    particular inquiry, plaintiff presents no evidence or legal authorities that demonstrate that

7    the level of severity justified an FBA.  Indeed, during the third grade, the ALJ notes that

8    plaintiff's maladaptive behaviors actually improved, and during the fourth and fifth grades,

9    plaintiff's behavior continued to be devoid of serious maladaptive and disruptive behaviors.

10   See AR 2397; 3307.  And while plaintiff contests the ALJ's finding in this regard, plaintiff

11   has failed to point to any evidence that suggests that plaintiff was exhibiting the type of

12   "serious behavior problem" sufficient to trigger a need for an FBA.  Thus, even though it

13   cannot be disputed that plaintiff continued to exhibit some maladaptive behaviors during the

14   third through fifth grades that were targeted in BSPs, the court is not persuaded that

15   plaintiff has sufficiently cast doubt on the ALJ's conclusion that no FBAs were warranted

16   based on the evidence presented.

17        Absent evidence of serious behavioral problems similar to those experienced by

18   plaintiff in the second grade, the ALJ's findings that no FBA was warranted in the third

19   through fifth grades (and that the District's delayed promise of an FBA in the third grade

20   was harmless error), the ALJ's conclusion that the District's alleged failure to assess

21   plaintiff in second through fifth grades did not cause denial of a FAPE, was reasonable.

22   Accordingly, the plaintiff's motion for summary judgment as to this issue is DENIED.  The

23   District's cross-motion on the same issue is GRANTED.

24              b.    District's failure to conduct neuropsychological or psycho-educational

25                    assessments

26        The ALJ found, and the parties do not dispute that the District failed to conduct a

27   neuropsychological or psycho-educational assessment, following plaintiff's mother's

28

United States District Court
For the Northern District of California

1    request to do so at the May 25, 2005 IEP meeting.  AR 2398-99.  As the ALJ noted, this

2    constitutes a procedural violation of the IDEA.  Id.  The ALJ concluded, however, that the

3    violation was harmless, since plaintiff could not identify a loss of educational opportunity or

4    benefit that resulted therefrom.  Plaintiff now asserts that the ALJ's conclusion was error,

5    since the District's failure to assess does, in fact, rise to the level of denial of a FAPE.

6         Despite his protestations to the contrary, however, plaintiff has not demonstrated

7    any denial of educational opportunity or benefit.  Plaintiff's mother had private

8    neuropsychological assessments of plaintiff completed by Dr. Nunno in 2004 and Dr.

9    Guterman in 2005.  Plaintiff now asserts that the District failed to consider Dr. Nunno's and

10   Dr. Gruterman's assessments and failed to conduct its own psychoeducational

11   assessment, the combination of which denied plaintiff educational benefits.  See Pl. Mor.

12   Summ. Judge. at 20:9-12.  However, plaintiff has pointed to no evidence in the record

13   affirmatively demonstrating that the District refused to consider Dr. Nunno's assessments.

14   To the contrary, plaintiff states that she "verbally reported on Dr. Nunno's assessment" at

15   the May 18, 2004 IEP team meeting, suggesting that the District *did* have the opportunity to

16   consider Dr. Nunno's assessment.  While plaintiff correctly asserts that there is no evidence

17   in the IEP resulting from the team meeting indicating that Dr. Nunno's recommendations

18   were in fact adopted, the fact that the District may not have adopted the recommendations

19   from a private outside report do not necessarily indicate – without more – the District's

20   failure to consider necessary assessments.  Moreover, as the District's witness Dr. Pamela

21   Mills testified, in view of Dr. Nunno's assessment in 2004 and Dr. Guterman's in 2005, it

22   would have been bad practice for the District to conduct its own assessment at or about the

23   same time at any rate.  See AR 1870; 1910-11; 1475-76.

24        On the whole, the totality of the evidence submitted and considered by the ALJ

25   supports the ALJ's decision that the District's procedural violations in connection with this

26   issue, did not constitute denial of a FAPE.  The ALJ's decision is therefore entitled to

27   deference in this respect.  The court accordingly DENIES plaintiff's motion for summary

28

27

1   judgment on this issue.[5]

2              c.    failure to properly assess speech, language, and social skills

3        Plaintiff asserts that the ALJ provided an inadequate remedy for the District's failure

4   to properly assess plaintiff's speech and language skills in 2005 during plaintiff's fourth

5   grade year, and incorrectly found that the District did not improperly fail to conduct social

6   skill assessments for the third through fifth grades.

7        The ALJ found that the District did not properly assess plaintiff's speech and

8   language skills in the fourth grade, and incorrectly reduced plaintiff's speech and language

9   therapy from 90 minutes per week to 60 minutes per week, based on an inappropriate

10  assessment.  AR 2401, 2406-07.  To that end, the ALJ ultimately concluded that this

11  constituted denial of a FAPE and ordered plaintiff's mother reimbursed for 17.5 hours of

12  private speech and language therapy.  AR 2420-21.  The ALJ also ordered a new

13  assessment to be conducted by the District, in order to determine plaintiff's present level of

14  skills and needs.  AR 2443.

15       With respect to plaintiff's social skills, the ALJ found that the District had been aware

16  of plaintiff's unique needs in the area of social skills at all times, and addressed them.  See

17  AR 2403.  The ALJ concluded that plaintiff's social skills needs had been adequately

18  addressed through IEP goals and objectives, and that the evidence established that there

19  was no need for any further social skills re-assessment (since the triennial social skills

20  assessment had already been conducted in 2002).  AR 2404; see also AR 1018-1020;

21  2403; 3096; 3163-64; 3332; 3341; 3356.

22       Beginning with plaintiff's speech and language therapy claims, plaintiff does not take

23  issue with the ALJ's conclusion that the District improperly assessed plaintiff, but rather

24

_____

25       [5]    The court notes that, while defendant has moved for summary judgment on the
    issue whether the District provided adequate prior written notice of its refusal of plaintiff's 2005
26  request for a neuropsychological assessment, see discussion at supra, defendant's moving
    papers do not seek summary judgment as to the propriety of the ALJ's decision on the issue
27  whether the District's failure to conduct neuropsychological or psycho-educational
    assessments constituted denial of a FAPE.
28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  with the remedy.  Instead of reimbursement for the reduced portion of speech and

2  language hours that plaintiff was forced to make up via private speech and language

3  therapy, plaintiff seeks general reimbursement for all the "speech and language services"

4  supplemented by plaintiff's mother.  Plaintiff presents no justification for this, however, nor

5  can the court find any.  The ALJ's decision was thorough and reasonable in concluding that

6  the District had failed to properly assess plaintiff's speech and language skills during the

7  fourth grade, and as a result had improperly reduced plaintiff's speech and language

8  therapy by one half hour per week, for the duration of plaintiff's fourth grade tenure.  By

9  reimbursing plaintiff's mother for 17.5 hours of private speech and language therapy, the

10 ALJ undertook to fashion a monetary remedy based on the actual duration of the violation

11 itself.

12      With respect to social skills assessments, plaintiff now contends that it was error for

13 the ALJ to conclude that social skills were properly assessed but language skills were not,

14 since testimony at the hearing demonstrated that the two are interrelated.  Accordingly,

15 plaintiff argues that denial of a FAPE occurred, such that plaintiff should be reimbursed for

16 the private social skills therapy supplemented by plaintiff's mother, in addition to the

17 supplemental speech and language therapy programs.

18      The problem with plaintiff's contention is that it contradicts the evidence.  For as the

19 District points out, there is extensive evidence that plaintiff's IEP team had the opportunity

20 to assess plaintiff's social skills, and to draft goals and objectives for plaintiff targeting his

21 social skills needs.  See AR 2403; 3096; 3163-64; 3332; 3341; 3356.  Plaintiff, by contrast,

22 has submitted no contrary evidence to dispute these facts.  Plaintiff's only argument is that

23 the District could not have known what plaintiff's needs were, or addressed them, without

24 an assessment.  However, plaintiff submits no legal authority that suggests that it is

25 inappropriate for the District to fashion an IEP based on present and current observations

26 of the student, or which more accurately would suggest that the District cannot fashion an

27 adequate IEP based on an already existing triennial review assessment and subsequent

28

United States District Court
For the Northern District of California

1    observation.

2         In sum, the court finds that it was reasonable for the District to have based its

3    continuing IEPs on present assessments of plaintiff's social skills, and to fashion

4    appropriate goals based on those observations.  Moreover, and significantly, plaintiff has

5    not submitted any evidence that any procedural violation resulted in denial of a FAPE.

6    Plaintiff presents no evidence of any test scores, or other tangible proof that demonstrates

7    that plaintiff somehow lost educational benefits because of the District's approach to

8    plaintiff's social skill development.

9         In sum, the ALJ's decision is entitled to deference on the issues whether (a) the ALJ

10   fashioned an appropriate remedy for the District's failure to properly assess plaintiff's

11   speech and language skills in 2005 during plaintiff's fourth grade year, and (b) the ALJ

12   properly found that the District did not improperly fail to conduct social skill assessments for

13   the third through fifth grades.  Plaintiff's motion for summary judgment as to these issues is

14   therefore DENIED, and defendant's cross-motion on the same issues is GRANTED.

15             d.    failure to assess occupational therapy/sensory motor skills

16        The ALJ found that the District's occupational therapy assessment of plaintiff in

17   February 2005 was deficient, because the assessment – which ordered occupational

18   therapy ("OT") consultation services – was incomplete, did not address plaintiff's sensory

19   integration deficits, used an unknown or inappropriate test, and failed to address plaintiff's

20   significantly variable scores on the test.  AR 2408.  The ALJ found, however, that although

21   plaintiff established that the assessment was inappropriate, plaintiff had not established

22   that the District was actually required to provide direct OT services for second through fifth

23   grades.  AR 2445.  As a result, the ALJ found that the District should have conducted

24   another OT assessment, and ordered that a renewed assessment be completed.  See id.

25   at 2445-46.

26        As with plaintiff's arguments regarding the District's purported failure to assess

27   plaintiff's speech and language skills, plaintiff takes issue with the ALJ's decision here not

28

United States District Court

For the Northern District of California

1   because the ALJ failed to find a procedural violation (which she did), but because plaintiff

2   disagrees with the remedy that the ALJ ordered to cure the violation.  The court, however,

3   is not persuaded.  Plaintiff has submitted no evidence suggesting that he suffered a loss of

4   OT services, the supplementation of which by plaintiff's mother would require

5   reimbursement.  Indeed, although flawed, the 2005 OT assessment resulted in the

6   provision of OT consultation services to plaintiff every subsequent year.  See AR 2843;

7   2848; 3250; 3268.  Furthermore, as the ALJ noted, plaintiff has not even submitted

8   evidence affirmatively establishing plaintiff's need for OT services, which might trigger the

9   need for reimbursement of supplemental OT services.  As a result, plaintiff has not

10  demonstrated that the ALJ was wrong in declining to award actual reimbursement for

11  plaintiff's supplemental OT therapy in response to the District's failure to properly assess

12  plaintiff's OT skills, particularly in view of the fact that plaintiff had not established a need

13  for OT therapy.

14          Plaintiff's motion for summary judgment on these grounds is accordingly DENIED.

15  Defendant's cross-motion as to the same issue is GRANTED.

16                  e.      failure to assess auditory processing needs

17          The ALJ found that the District conducted an auditory processing assessment as

18  part of plaintiff's spring 2005 triennial IEP assessment – a fact that plaintiff does not

19  dispute.  AR 2408.  The assessment found that plaintiff scored well below average in

20  auditory processing and needed adjustments in classroom information.  AR 2409.  This

21  assessment was consistent with Dr. Nunno's assessment.  Id.  The ALJ further found that,

22  as a result of the assessment, the District addressed plaintiff's needs through modifications

23  and supports to plaintiff's IEP.

24          Plaintiff here contends that the District's 2005 assessment of plaintiff's auditory

25  processing deficits was inappropriate, and that the ALJ incorrectly came to the opposite

26  conclusion.  All the evidence shows, however, that the ALJ's conclusion was reasonable

27  and accurate.  The evidence demonstrates that an auditory processing test was conducted,

28

31

United States District Court

For the Northern District of California

1    that it was consistent with Dr. Nunno's own testing (which the District received and

2    reviewed), and that it resulted in modifications to plaintiff's IEP.  See AR 2402-03; 2408-09;

3    3158; 3168; 156-67; 163-64; 1367-68; 1414-15.  Given these facts, it is unclear why

4    plaintiff argues against the ALJ's conclusion that the assessments were ultimately

5    appropriate.  To the extent plaintiff is contending that *additional* assessments should have

6    been done, plaintiff does not point to any evidence that there were any changes in plaintiff's

7    circumstances or behavior that would have placed the District on notice of the need to

8    conduct further assessments.

9         Accordingly, the ALJ's decision on this ground is entitled to deference by the court.

10   Plaintiff's request for summary judgment on the issue is DENIED, while defendant's cross-

11   motion is GRANTED.

12        4.    District's failure to develop appropriate goals

13        The IDEA requires that a student's annual IEP contain a statement of the student's

14   present levels of academic achievement and performance, including the manner in which

15   the student's disability affects his or her involvement and progress in the general education

16   curriculum.  See 20 U.S.C. § 1414(d)(1)(A)(I); Cal. Educ. Code § 56345(a)(1)(A).  The

17   goals set forth in an annual IEP must be based on a discussion of the student's current

18   performance, and include specific short-term objectives or benchmarks towards which the

19   student can work.

20        Plaintiff contends that his annual goals from second grade through fifth grade were

21   neither based on measurable baselines, nor measurably appropriate in and of themselves.

22   The ALJ found, however, that all goals provided adequate baseline information and were

23   measurable, with the exception of the behavioral goals in the second grade and the

24   communications goals in the fourth grade (the ALJ also found that all second grade goals

25   were outside the statute of limitations, except for the just mentioned behavioral goals).  See

26   AR 2444.

27        After review of the annual goals listed on plaintiff's 2004, 2005, and 2006 IEPs, the

28

United States District Court

For the Northern District of California

1    court finds that the IEPs contain numerous measurable baseline goals, and clear and

2    attainable measurable short-term goals.  AR 3330-35; 3158-65; 3252-57.  Accordingly, the

3    ALJ's decision on this point was reasonable and justified, thereby warranting DENIAL of

4    plaintiff's motion for summary judgment as to this ground, and a GRANT of defendant's

5    cross-motion going to the same issue.

6          5.    District's failure to provide appropriate programs

7          Related to the above argument regarding the District's alleged failure to provide

8    appropriate annual IEP goals, plaintiff also asserts that the District failed to provide

9    appropriate programs that were reasonably calculated to enable plaintiff to receive an

10   educational benefit.  In sum, plaintiff contends that because the basic goals that would lead

11   to reasonably calculated services were not there (owing to the District's failure to properly

12   assess plaintiff), there were no appropriate programs that were offered to plaintiff at any

13   point from the second through fifth grades.  Plaintiff further contends that because the

14   assessments were faulty, it is impossible for plaintiff to demonstrate what the appropriate

15   programs should have been.

16         Plaintiff's arguments are puzzling.  First, for the same reasons that plaintiff's

17   arguments fail with respect to his allegations of inadequate annual goals, plaintiff's

18   argument that inadequate goals led to inadequate programs must also fail.  Second,

19   however, plaintiff has utterly failed to identify any alternative programs that he contends

20   *would* have been appropriate.  Yet, as defendant has correctly pointed out, it is plaintiff's

21   burden to show that the District failed to provide a FAPE.  Moreover, since it is plaintiff who

22   requests reimbursement, see below, it is plaintiff's burden to show that any alternative

23   private services were appropriate and necessary.  See, e.g., Sch. Comm. of Burlington v.

24   Dept of Educ. of Mass., 471 U.S. 359, 369-71 (1985).  In view of plaintiff's failure to

25   demonstrate which programs would have been appropriate, plaintiff falls far short of

26   surmounting his burden here.

27         In sum, therefore, the court must also DENY plaintiff's motion for summary judgment

28

United States District Court

For the Northern District of California

1    on grounds that the District failed to provide appropriate educational programs to plaintiff at

2    any point from the second through fifth grades.  As has been the case throughout, the

3    defendant's cross-motion on the same issue is GRANTED.

4    D.    Reimbursement

5          The ALJ decided to award plaintiff approximately $8,925.00 dollars as a remedy for

6    those procedural violations that the ALJ found constituted denial of a FAPE.  Specifically,

7    the ALJ sought to remedy:  the District's failure, during plaintiff's second grade year, to

8    assess, re-examine and support plaintiff's behavior needs and goals in spring 2004 (the

9    failure to conduct a functional behavioral assessment continued until the fall of 2005); and

10   the District's improper reduction of plaintiff's speech and language therapy services from

11   his March 23, 2005 IEP through March 2006 from 90 minutes to approximately 60 minutes

12   per week.

13         In order to remedy these violations, the ALJ awarded plaintiff reimbursement for: (a)

14   the cost of plaintiff's 2004 enrollment at Quest Camp, including the sum of $125.00 for

15   Quest Camp's 2004 screening evaluation, $3,885.00 in tuition for the 2004 summer

16   program, $3.00 per summer program day for bridge tolls, and round-trip mileage at 68

17   miles per summer program day in Quest camp at the District's mileage reimbursement rate;

18   (b) Dr. Nunno's April 2004 neuropsychological assessment, in the total sum of $3,165.00;

19   and (c) and the cost of 17.5 hours' of private speech and language therapy with therapist

20   Floria Fung, for compensatory speech and language services, in the sum total of

21   $1,750.00.  See AR 2442, 2445, 2447.

22         Plaintiff, however, contends that the ALJ should have awarded further

23   reimbursement, in view of the significant and pervasive procedural violations that were

24   committed by the District over the course of four years.  Specifically, plaintiff now seeks

25   reimbursement for the following, in addition to the reimbursements ordered by the ALJ:

26         •      $10,603.91 plus transportation costs for plaintiff's participation in Quest Camp

27         •      $56,450.00 for plaintiff's speech therapy

28

                                          34

- • $7,490.00 plus transportation costs for plaintiff's music therapy
- • $23,259.00 for Lindamood-Bell learning processes
- • $4,150.00 for interactive metronome therapy
- • $4,920.00 for social skills therapy
- • $3,900.00 for Dr. Guterman's assessment of plaintiff's therapy needs[6]

See Pl. Opp. Summ. Judg. at 19:3-15.  In support of these added costs, plaintiff argues that the court should take into account the District's uncooperative behavior in working with plaintiff's mother, the myriad procedural violations that occurred, the fact that all requested services and therapies were reasonable, and the fact that the evaluations of Dr. Nunno and Dr. Gruterman supported the need for the private services and therapies. Ultimately, however, these arguments are unpersuasive.

Preliminarily, the Ninth Circuit has held that parents have an equitable right to reimbursement for the cost of compensatory education where, as is the case here in the instances noted above, a school district has failed to provide a free appropriate public education. See Burlington Sch. Comm. v. Massachusetts Dep't. of Educ., 471 U.S. 359, 370 (1985)(interpreting language in the Education of the Handicapped Act, IDEA's precursor).  Before awarding reimbursement, however, courts must generally ask: (1) whether the state provided services are inadequate; and (2) if so, whether the private services obtained by the parents are appropriate.  See id.  If both questions are answered in the affirmative, then the court may order "appropriate" relief pursuant to 20 U.S.C. § 1415(i)(2)(C), including reimbursement for expenditures made to obtain appropriate educational services.

With respect to the denials of a FAPE found by the ALJ, the ALJ expressly

---

[6]     Defendant also appears to seek a ruling in its favor on plaintiff's requests for reimbursement in connection with the behavioral consultation conducted by Ben Kaufman in spring 2004, and for an occupational therapy evaluation conducted by Tiffany Martin.  See Def. Mot. Summ. Judg. at 25:25-25:12; 28:24-28.  Plaintiff, however, submits no argument and makes no specific request in his papers regarding these evaluations.  Accordingly, the court concludes that plaintiff has made no such request, and a corresponding discussion as to the propriety of these evaluations is unnecessary.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    answered the former question in the affirmative, and in response to the latter found that

2    *some* of the private services procured by plaintiff's mother – the Quest summer program,

3    Dr. Nunno's neuropsychological assessment, and the private speech and language therapy

4    – were necessary and appropriate to remedy the loss of educational benefit suffered by

5    plaintiff due to the District's violations.  See AR 2421, 2432-33; see also AR 1652-55, 2827-

6    29, 3167, 3327.  The court agrees with this assessment and the decision to reimburse

7    plaintiff for these costs, as the reimbursement relief granted to plaintiff was reasonably

8    tailored to remedy the scope of the IDEA violations found by the ALJ.

9         With respect to the additional expenses for which plaintiff now seeks reimbursement,

10   however, plaintiff has not adequately demonstrated either that the District's services were

11   inadequate and denied plaintiff a FAPE, or that the private services procured by plaintiff's

12   mother were otherwise appropriate.  First, the same reasons that support the court's

13   conclusion that the ALJ did not err in finding that plaintiff had not demonstrated any other

14   denials of a FAPE, also prevent plaintiff from succeeding in his request for reimbursement

15   of additional services based on those purported denials.  Second, however, plaintiff has

16   failed to show that these additional services were appropriate.  Namely, plaintiff has failed

17   to submit evidence that demonstrates that the private placements in which plaintiff was

18   enrolled actually provided a FAPE that the District could not.  Without this proof, no

19   additional reimbursement is appropriate here.  See Burlington v. Dep't of Educ., 471 U.S. at

20   374.

21        Moreover, the court is also somewhat troubled by plaintiff's concession that his

22   mother "admittedly did not provide [the District] with written ten-day notice consistent with

23   the unilateral private placement requirement during the regular school year."  See Pl. Opp.

24   Summ. Judg. at 11:11-13.  Although defendant argues that statutory notice principles

25   apply, and bar plaintiff's request for additional reimbursements in light of his failure to notify

26   the District of private placements during the school year, the court finds that it is not wholly

27   clear whether the same statutory notice considerations that apply to placement of students

28

                                      36

United States District Court

For the Northern District of California

1   covered by IDEA in private schools, also applies to the provision of supplemental private

2   services to students covered by IDEA.  See, e.g., 20 U.S.C. § 1412(a)(10)(C)(iii)(i)

3   (reimbursement may be denied or reduced if the parents do not give the school district

4   notice of their intent to remove a child from public school before they do so).  Neither party

5   has cited a case that affirmatively holds as much.  To the extent, moreover, that plaintiff

6   relies on Forest Grove Sch. Dist. v. T.A., 523 F.3d 1078 (9th Cir. 2008), for the proposition

7   that the notice requirement does *not* apply to requests for reimbursement of private

8   services, this case is inapposite.  Forest Grove simply held that the statutory notice

9   requirements do not apply where a student has never received special education from a

10  school district.  Rather, equitable considerations are relevant in fashioning relief, and the

11  court enjoys broad discretion in so doing.  See 523 F.3d at 1084 ("equitable considerations

12  are relevant in fashioning relief").

13          Even assuming that statutory notice requirements do not apply here, however,

14  plaintiff's failure to provide adequate notice is nonetheless a relevant factor that the court

15  may consider.  See Forest Grove, 523 F.3d at 1089 (""notice to the school district is a

16  relevant equitable consideration").   And since it is undisputed that plaintiff's mother did not

17  give notice to the District with respect to the private school year placements that plaintiff

18  participated in, this factor further supports the court's decision to affirm the ALJ's

19  reimbursement findings.

20          In sum, the ALJ's decision to limit reimbursement to the areas delineated in the

21  ALJ's opinion was thorough, reasonable, and supported by the evidence.  The court

22  accordingly finds that the ALJ's decision in this regard is entitled to deference.  Defendant's

23  motion for summary judgment on the issue of reimbursement is therefore GRANTED, and

24  plaintiff's cross-motion for summary judgment is DENIED.

25  C.      Conclusion

26          For all the foregoing reasons, defendants' motion for summary judgment is

27  GRANTED, and plaintiff's cross-motion for summary judgment is DENIED.  Defendant shall

28

submit a proposed judgment due within ten days of this order.

**IT IS SO ORDERED.**

Dated: October 30, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge